## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

| | | |
|---|---|---|
| **LESLIE MAY GREENE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** <u>3:21-cv-00520</u> |
| | ) | |
| **THE PUTNAM COUNTY** | ) | |
| **COMMISSION,** | ) | |
| **MARK A. SORSAIA, individually as a** | ) | |
| **member of the Putnam County** | ) | |
| **Prosecutor's Office,** | ) | |
| **JENNIFER SCRAGG KARR,** | ) | |
| **individually as a member of the Putnam** | ) | |
| **County Prosecutor's Office,** | ) | |
| **ELIZABETH SUNYOG, individually as** | ) | |
| **a member of the Putnam County** | ) | |
| **Prosecutor's Office,** | ) | |
| **MARIAN SMITH, individually as a** | ) | |
| **member of the Putnam County** | ) | |
| **Prosecutor's Office,** | ) | |
| **TONY CRAIGO, individually as a** | ) | |
| **member of the Putnam County Sheriff's** | ) | |
| **Department,** | ) | |
| **JODI B. TYLER, individually as a** | ) | |
| **member of the Kanawha County** | ) | |
| **Prosecutor's Office,** | ) | |
| **MORGAN M. SWITZER, individually** | ) | |
| **as a member of the Kanawha County** | ) | |
| **Prosecutor's Office,** | ) | |
| **C.J. EASTRIDGE, individually as a** | ) | |
| **member of the West Virginia State** | ) | |
| **Police,** | ) | |
| **THE CITY OF HURRICANE,** | ) | |
| **JOSHUA LUCAS, individually as a** | ) | |
| **member of the City of Hurricane Police** | ) | |
| **Department, and** | ) | |
| **JAMES MARK MCCOY a/k/a MARK** | ) | |
| **MCOY, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW**, Plaintiff Leslie May Greene, by counsel, and for her Complaint states and alleges as follows:

## JURY DEMAND

1.      The Plaintiff hereby demands a trial by jury.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims.

3.      Plaintiff files this Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights.  Specifically, Plaintiff alleges that her rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated by Defendants when she was, *inter alia*, falsely arrested, falsely imprisoned, maliciously prosecuted, subjected to unlawful searches and seizures, and had the custody of her minor child unlawfully taken away.

4.      Venue is proper because some the above-named Defendants reside within the Southern District of West Virginia, Charleston Division, and because some of the incidents giving rise to this Complaint occurred within the Southern District of West Virginia, Charleston Division.

## PARTIES

5.      Plaintiff Leslie May Greene (hereinafter "Plaintiff") was at all times relevant hereto a resident of Putnam County, West Virginia.

6.      Defendant the Putnam County Commission (hereinafter, the "Putnam County Commission") is a municipality established under the laws of West Virginia and located in Putnam County, West Virginia.  The Putnam County Prosecutor's Office (including its agents and

employees) and the Putnam County Sheriff's Department (including its agents and employees) are subject to the authority, control, and discipline of the Putnam County Commission.

7.      Defendant Mark A. Sorsaia (hereinafter "Prosecutor Sorsaia") was at all times relevant hereto an agent and employee of the Putnam County Prosecutor's Office and was at all times relevant hereto acting under color of law and within the scope of his employment as the Putnam County Prosecuting Attorney.  Prosecutor Sorsaia, who upon information and belief resides in Putnam County, West Virginia, is sued only in his individual capacity.

8.      Defendant Jennifer Scragg Karr (hereinafter "Prosecutor Karr") was at all times relevant hereto an agent and employee of the Putnam County Prosecutor's Office and was at all times relevant hereto acting under color of law and within the scope of her employment as an Assistant Putnam County Prosecuting Attorney.  Prosecutor Karr, who upon information and belief resides in Putnam County, West Virginia, is sued only in her individual capacity.

9.      Defendant Elizabeth Sunyog (hereinafter "Prosecutor Sunyog") was at all times relevant hereto an agent and employee of the Putnam County Prosecutor's Office and was at all times relevant hereto acting under color of law and within the scope of her employment as an Assistant Putnam County Prosecuting Attorney.  Prosecutor Sunyog, who upon information and belief resides in Putnam County, West Virginia, is sued only in her individual capacity.

10.     Defendant Marion Smith (hereinafter "Victim Services Coordinator Smith") was at all times relevant hereto an agent and employee of the Putnam County Prosecutor's Office and was at all times relevant hereto acting under color of law and within the scope of her employment as a Putnam County Victim Services Coordinator.  Victim Services Coordinator Smith, who upon information and belief resides in Putnam County, West Virginia, is sued only in her individual capacity.

11.     Defendant Tony Craigo (hereinafter "Sargent Craigo") was at all times relevant hereto an agent and employee of the Putnam County Sheriff's Department and was at all times relevant hereto acting under color of law and within the scope of his employment as a Sargent in the Putnam County Sheriff's Department.  Sargent Craigo, who upon information and belief resides in Putnam County, West Virginia, is sued only in his individual capacity.

12.     Defendant Jodi B. Tyler (hereinafter "Prosecutor Tyler") was at all times relevant hereto an agent and employee of the Kanawha County Prosecutor's Office and was at all times relevant hereto acting under color of law and within the scope of her employment as an Assistant Kanawha County Prosecuting Attorney.  Prosecutor Tyler, who upon information and belief resides in Kanawha County, West Virginia, is sued only in her individual capacity.

13.     Defendant Morgan M. Switzer (hereinafter "Prosecutor Switzer") was at all times relevant hereto an agent and employee of the Kanawha County Prosecutor's Office and was at all times relevant hereto acting under color of law and within the scope of her employment as an Assistant Kanawha County Prosecuting Attorney.  Prosecutor Switzer, who upon information and belief resides in Kanawha County, West Virginia, is sued only in her individual capacity.

14.     Defendant C.J Eastridge (hereinafter "Trooper Eastridge") was at all times relevant hereto an agent and employee of the West Virginias State Police and was at all times relevant hereto acting under color of law and within the scope of his employment as a West Virginia State Police Trooper.  Trooper Eastridge, who upon information and belief resides in Putnam County, West Virginia, is sued only in his individual capacity.

15.     Defendant the City of Hurricane (hereinafter, the "City of Hurricane") is a municipality established under the laws of West Virginia and located in Putnam County, West Virginia.  The City of Hurricane Police Department (hereinafter, the "Hurricane PD"), including

its agents and employees, is subject to the authority, control, and discipline of the City of Hurricane.

16.     Defendant Joshua Lucas (hereinafter "Officer Lucas") was at all times relevant hereto an agent and employee of the Hurricane PD and was at all times relevant hereto acting under color of law and within the scope of his employment as Hurricane PD officer.  Officer Lucas, who upon information and belief resides in Putnam County, West Virginia, is sued only in his individual capacity.

17.     Defendant James Mark McCoy a/k/a Mark McCoy (hereinafter "Mr. McCoy") is a resident of Putnam County, West Virginia.

18.     Other than Mr. McCoy, Defendants are sued up to the limits of the insurance policy that provides liability coverage for their actions and omissions.

## FACTS

19.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

20.     Plaintiff and Mr. McCoy are the biological parents of a minor female child (hereinafter "B.G.").

21.     Mr. McCoy has a history of domestic violence toward Plaintiff and B.G.

22.     On October 17, 2016, Plaintiff obtained a Domestic Violence Protective Order against Mr. McCoy in Putnam County Magistrate Court (hereinafter, the "McCoy DVPO").

23.     The McCoy DVPO avers that Mr. McCoy punched holes in a wall six (6) inches from the head of B.G. and that he made threats of physical violence against both Plaintiff and B.G. in text messages to Plaintiff.  *See* McCoy DVPO, attached hereto as Exhibit 1.

24.     Pursuant to the McCoy DVPO, Mr. McCoy was prohibited from, *inter alia*, contacting Plaintiff, being at or near her home, or from being within one hundred (100) feet of Plaintiff.  *See id*.

25.     The McCoy DVPO was ordered to be in effect until April 17, 2017.  *See id*.

26.     On March 21, 2017, Mr. McCoy was arrested by Officer Lucas of the Hurricane PD for making multiple, harassing telephone calls to Plaintiff in violation of the McCoy DVPO. *See* Hurricane PD Arrest Records, attached hereto as Exhibit 2.

27.     After being released on bond, Mr. McCoy continued to make numerous, harassing telephone calls to Plaintiff, which resulting in him being arrested again by the Hurricane PD the next day, March 22, 2017, for violating the McCoy DVPO.  *See id*.

28.     Of note, the Hurricane PD Arrest Records indicate that the Hurricane PD received copies of the McCoy DVPO from the Putnam County Prosecuting Attorney's Office and the Putman County Magistrate Court's Office.  *See id*.

29.     Mr. McCoy was charged by the Putnam County Prosecuting Attorney's Office following both arrests [Case No. 17-M40M-746 and Case No. 17-M40M-775] (hereinafter, the "First McCoy Prosecution").

30.     Upon information and belief, Prosecutor Karr was in charge of the First McCoy Prosecution on behalf of the Putnam County Prosecutor's Office.

31.     The First McCoy Prosecution was adjudicated on April 11, 2017.

32.     Mr. McCoy was sentenced to thirty (30) days in jail for each violation, but one of the sentences was suspended in exchange for twelve (12) months of unsupervised probation, on the condition that Mr. McCoy complete a domestic battery class.

33.     Another express condition of Mr. McCoy's probation stemming from the First McCoy Prosecution, ostensibly agreed to by Prosecutor Karr and/or the Putnam County Prosecutor's Office, was that he "**SHALL NOT**…have any contact, direct or indirect, verbal or physical…with the victim: Leslie Greene" (hereinafter, the "McCoy Probation").  *See* Mcoy Probation Terms and Conditions, attached hereto as Exhibit 3.

34.     On April 14, 2017, the Family Court of Putnam County ordered that the McCoy DVPO be extended until December 20, 2017 (hereinafter, the "Family Court Order").  *See* Family Court Order, attached hereto as Exhibit 4.

35.     On June 22, 2017, Mr. McCoy came to Plaintiff's home uninvited in violation of the McCoy DVPO, the Family Court Order, and the McCoy Probation.

36.     On June 22, 2017, Plaintiff called the Hurricane PD and spoke to Officer Lucas about Mr. McCoy being at her residence in violation of the McCoy DVPO, the Family Court Order, and the McCoy Probation.  Officer Lucas refused to arrest Mr. McCoy or otherwise help Plaintiff.

37.     On June 22, 2017, Plaintiff called the Putnam County Prosecutor's Office and spoke with Prosecutor Karr regarding Mr. McCoy's repeated violations of the McCoy DVPO, the Family Court Order, and the McCoy Probation.  Prosecutor Karr refused to prosecute Mr. McCoy or pursue any charges against him.

38.     In or around the end of June 2017, Plaintiff presented to the Hurricane PD on multiple occasions and spoke with Officer Lucas and his superior, Chief Mike Mullins, about Mr. McCoy's repeated violations of the McCoy DVPO, the Family Court Order, and the McCoy Probation.  Plaintiff and her son even gave statements to the Hurricane PD.  Nevertheless, the Hurricane PD refused to arrest Mr. McCoy or otherwise help Plaintiff.

39.     On July 3, 2017, Plaintiff again called the Hurricane PD and spoke to Officer Lucas about Mr. McCoy's repeated violations of the McCoy DVPO, the Family Court Order, and the McCoy Probation.  Again, Officer Lucas refused to help.

40.     On July 3, 2017, Plaintiff presented to the Putnam County Prosecutor's Office and again spoke with Prosecutor Karr about Mr. McCoy's repeated violations of the McCoy DVPO, the Family Court Order, and the McCoy Probation.  Prosecutor Karr again refused to help.

41.     Under West Virginia law, when law enforcement has evidence of an individual (like Mr. McCoy) in willful violation of a protective order, law enforcement "shall immediately arrest" said individual.  *See* W. Va. Code § 48-27-1001(a) (emphasis added).

42.     Upon information and belief, Prosecutor Karr wrongfully believed that Plaintiff was voluntarily in contact with Mr. McCoy or otherwise unjustifiably doubted Plaintiff's credibility.

43.     However, even if Prosecutor Karr's erroneous presumption that Plaintiff was in voluntary contact with Mr. McCoy was true, Putnam County's own domestic violence protective order documentation expressly states that, "[h]aving 'permission' or a protected party's 'consent' is not a legal defense" to the violation of a domestic protective order.  *See* Ex. 1, p. 12 of 13.

44.     On November 4, 2017, Mr. McCoy forcibly entered Plaintiff's home in violation of the McCoy DVPO, the Family Court Order, and the McCoy Probation.

45.     While inside Plaintiff's property, Mr. McCoy tried to intimidate Plaintiff into giving him money.

46.     Due to Mr. McCoy's erratic behavior and potential for violence, Plaintiff did not immediately call law enforcement, but instead waited until Mr. McCoy stepped outside and then locked him out of the house.

47.     Fearful of Mr. McCoy, Plaintiff and B.G. tried to leave the premises in Plaintiff's vehicle.  However, in an apparent effort to prevent them from escaping, Mr. McCoy rammed his vehicle into Plaintiff's vehicle (with B.G. inside) multiple times (hereinafter, the "November 4th Incident").

48.     Following the November 4th Incident, in an obvious attempt to conceal evidence, Mr. McCoy had his vehicle towed to a relative's property in Barboursville, West Virginia, where it was hidden in a garage for approximately one (1) year.

49.     Upon information and belief, damage to Mr. McCoy's vehicle indicates that he crashed his vehicle into Plaintiff's, not the other way around.

50.     Sometime thereafter, Mr. McCoy presented to Officer Lucas at the Hurricane PD and filed false charges against Plaintiff stemming from the November 4th Incident.  These false charges included destruction of property, battery, false reporting, and child endangerment (hereinafter, the "Greene Misdemeanor Charges").

51.     The arrest warrant for Plaintiff on the Greene Misdemeanor Charges, based on a criminal complaint drafted by Officer Lucas, was signed by Putnam County Magistrate Court Judge Linda Hunt (hereinafter "Magistrate Hunt").

52.     On November 6, 2017, Plaintiff was arrested by the Hurricane PD on the Greene Misdemeanor Charges and released on bond.

53.     Plaintiff was arrested despite the fact Mr. McCoy's presence on her property during the November 4th incident violated the McCoy DVPO, the Family Court Order, and the McCoy Probation.  *See* Ex. 1, Ex. 3, and Ex. 4.

54.     Following her arrest, Plaintiff was fired from her job as a high school teacher with the Putnam County Board of Education.

55.    Charges were also brought against Mr. McCoy for violating the McCoy DVPO during the November 4th Incident (hereinafter, the "Second McCoy Prosecution").

56.    Upon information and belief, Mr. McCoy was driving on a suspended license during the November 4th Incident, however no charges were brought against him for that offense.

57.    On November 9, 2017, Mr. McCoy filed a false and misleading Petition for Emergency Protective Order in the Magistrate Court of Putnam County based on the false Greene Misdemeanor Charges, claiming that Plaintiff (with B.G.) rammed her vehicle into Mr. McCoy's on November 4, 2017 (hereinafter, the "Fraudulent McCoy Petition").  *See* Fraudulent McCoy Petition, attached hereto as Exhibit 5.

58.    In the Fraudulent McCoy Petition, Mr. McCoy failed to disclose that, at the time of the November 4th Incident, he was subject to the McCoy DVPO (in addition to the Family Court Order), which prohibited him from being on Plaintiff's property or within one hundred (100) feet of Plaintiff.  *See id*.

59.    In the Fraudulent McCoy Petition, Mr. McCoy also failed to inform the Court that he had previously been convicted (twice) for violating the McCoy DVPO and was on probation (the McCoy Probation) for these offenses during the November 4th Incident, the terms of which also prohibited him from having any contact with Plaintiff.  *See id*.

60.    Furthermore, in the Fraudulent McCoy Petition, Mr. McCoy falsely stated that he was granted custody of B.G. in Family Court, but that custody was "not finalized."  *See id*.

61.    Magistrate Hunt, to whom the Fraudulent McCoy Petition was presented, evidently failed to check the court database or otherwise determine whether there were any existing protective orders against Mr. McCoy which would prevent him by law from obtaining an Emergency Protective Order against his victim, Plaintiff.

62.     Thus, despite the existence of two (2) existing protective orders against Mr. McCoy for domestic violence against Plaintiff and B.G. (the McCoy DVPO and the Family Court Order) and the McCoy Probation (also an order of the Court), Magistrate Hunt granted an Emergency Protective Order against Plaintiff, *ex parte*, and gave custody of B.G. to Mr. McCoy (hereinafter, the "Unlawful EPO").  *See id*.

63.     The existence of the McCoy DVPO and/or the Family Court Order rendered the Unlawful EPO against Plaintiff null, void, and lacking in jurisdiction.

64.     Pursuant to W. Va. Code § 48-27-402, Magistrate Hunt was only permitted (if at all) to enter a temporary emergency protective order against Plaintiff, which would have triggered a hearing in 10 days, and not a binding Emergency Protective Order.

65.     Soon thereafter, Plaintiff was served with the Unlawful EPO by Sargent Craigo.

66.     During this encounter with Sargent Craigo, Plaintiff informed him of the McCoy DVPO and/or the Family Court Order.

67.     Upon information and belief, Sargent Craigo called the Putman County Courthouse and confirmed that the McCoy DVPO and/or the Family Court Order existed and were in effect.

68.     On November 13, 2017, Plaintiff filed a Petion for Domestic Violence Civil Contempt in the Family Court of Putnam County against Mr. McCoy for violating the McCoy DVPO and the Family Court Order during the November 4th Incident.  *See* Contempt Petition, attached hereto as Exhibit 6.

69.     Putnam County Family Court Judge Richard C. Witt (hereinafter, "Judge Witt") denied or otherwise ignored the Contempt Petition.

70.     On November 13, 2017, Plaintiff filed a Motion to Vacate Custody Terms of Emergency Protective Order in the Family Court of Putnam County (hereinafter "Motion to Vacate EPO"). *See* Motion to Vacate EPO, attached hereto as <u>Exhibit 7</u>.

71.     In the Motion to Vacate EPO, Plaintiff presented clear and irrefutable evidence that (1) Mr. McCoy was in violation of the McCoy DVPO (in addition to the Family Court Order and McCoy Probation) during the November 4th Incident and (2) that Mr. McCoy lied to the Court in the Fraudulent McCoy Petition, which allowed the Unlawful EPO to be entered against Plaintiff. *See id.*

72.     Despite these clear and unlawful violations, Judge Witt denied or otherwise ignored the Motion to Vacate EPO.

73.     On November 28, 2017, the Second McCoy Prosecution was adjudicated in the Magistrate Court for Putnam County.

74.     The Second McCoy Prosecution was handled by Prosecutor Karr and Prosecutor Sunyog on behalf of the Putnam County Prosecutor's Office.

75.     Prosecutor Karr and Prosecutor Sunyog accepted a guilty plea from Mr. McCoy (as a first offence) for violating the McCoy DVPO, even though it was the third charge brought by the Putnam County Prosecutor's Office against Mr. McCoy for the same offense.

76.     Mr. McCoy was sentenced to unsupervised probation, even though he was already subject to the McCoy Probation for the exact same offense.

77.     Even though it was his third offense for violating the McCoy DVPO and/or Family Court Order (while already on probation for the first two offenses), Mr. McCoy's probation was not revoked by Prosecutor Karr and Prosecutor Sunyog.

78.     W. Va. Code § 48-27-903 provides that a third offense for violation of a protective order is punishable by up to one (1) year in jail.

79.     Counting the violations of the McCoy DVPO and Family Court Order committed by Mr. McCoy in June 2017 (*see supra*.), which Prosecutor Karr refused to charge him with, the Second McCoy Prosecution was in fact Mr. McCoy's *fourth offence* for violating the McCoy DVPO and/or Family Court Order.

80.     On November 29, 2017, Sargent Craigo issued a criminal complaint against Plaintiff on multiple charges, including felony concealment of a minor child.  The criminal complaint alleged, *inter alia*, that during November 2017, Plaintiff "concealed" the whereabouts of B.G. from authorities, who were attempting to turn custody of B.G. over to Mr. McCoy pursuant to the Unlawful EPO.

81.     A warrant for Plaintiff's arrest on these child concealment charges was signed by Magistrate Hunt.

82.     The felony child concealment charges brought against Plaintiff were based solely on the Unlawful EPO, which, as set forth hereinabove, was obtained by false and fraudulent means by Mr. McCoy.

83.     As set forth hereinabove, Magistrate Hunt, the Putnam County Prosecutor's Office, Prosecutor Sorsaia. Prosecutor Karr, Prosecutor Sunyog, the Putnam County Sheriff's Department, and Sargeant Craigo all knew or should have known that the Unlawful EPO was obtained by false and fraudulent means by Mr. McCoy and was thus invalid.

84.     Because the Unlawful EPO was obtained by false and fraudulent means by Mr. McCoy, and was thus invalid, there was no probable cause to arrest and charge Plaintiff for felony child concealment.

- 13 -

85.     Under West Virginia law, "[a]ny person who conceals, takes or removes a minor child in <u>violation of any court order</u> and with the intent to deprive another person of <u>lawful custody</u> or visitation right shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than five years, or in the discretion of the court, shall be imprisoned in the county jail not more than one year of fined not more than $1,000, or both fined and imprisoned.  *See* W. Va. Code § 61-2-14d(a) (emphasis added).

86.     As such, because the Unlawful EPO, which gave custody of B.G. to Mr. McCoy, was obtained by false and fraudulent means by Mr. McCoy, he did not have "lawful custody" over B.G.  *See id.*

87.     Accordingly, because Mr. McCoy did not have "lawful custody" of B.G., there was no probable cause to arrest and charge Plaintiff with felony child concealment under W. Va. Code § 61-2-14d(a).

88.     Following issuance of the arrest warrant on felony child concealment charges, Plaintiff surrendered to authorities and custody of B.G. was turned over to Mr. McCoy, even though the McCoy DVPO, the Family Court Order, and the McCoy Probation (which were all still in effect) prohibited him being within one hundred (100) feet of B.G.

89.     When Plaintiff handed custody of B.G. over to authorities, a local news station was present, took photographs and videos, and published a false, misleading, and defamatory story about Plaintiff, Mr. McCoy, and B.G.[1]

90.     After Plaintiff handed custody of B.G. over to authorities, the Putnam County Sheriff's Department issued a press release and held a news conference broadcasting, *inter alia*, the knowingly false child concealment charges against Plaintiff.

---

[1] UPDATE: Missing 16-month-old girl found safe (wsaz.com); https://wchstv.com/news/local/putnam-county-deputies-seeking-missing-16-month-old-girl

91.     Following her arrest on felony child concealment charges, Plaintiff was released on bond on December 7, 2017 after being incarcerated for nine (9) days.

92.     As a condition of her bond, Plaintiff was prohibited from being in contact with B.G.

93.     After her release from jail on December 7, 2017, Plaintiff discovered damning evidence against the State's child concealment case against her on an old cellular phone of Mr. McCoy left in her possession.

94.     On this cellular phone, Plaintiff discovered numerous e-mails between Mr. McCoy and Victim Services Coordinator Smith (in her official capacity with the Putnam County Prosecutor's Office) from November 2017 which *underquivocally establish* that during the period when the Putnam County Prosecutor's Office and Putnam County Sheriff's Department claim Plaintiff was "concealing" B.G. from authorities, Mr. McCoy was monitoring Plaintiff's whereabouts and knew *exactly* where Plaintiff and B.G. were, and was passing this information on to Victim Services Coordinator Smith.  *See* November E-mails, attached hereto as Exhibit 8.

95.     For instance, on November 22, 2017, when the Putnam County Prosecutor's Office and Putnam County Sheriff's Department claim Plaintiff was "concealing" B.G. from authorities, Mr. McCoy sent Victim Services Coordinator Smith an e-mail with a recent picture of Plaintiff and B.G. posted by Plaintiff on FaceBook.  *See id.*

96.     In this November 22, 2017 e-mail, Mr. McCoy states, "[t]his was today about an hour ago" in reference to the picture.

97.     In response, Victim Services Coordinator Smith states, "[I]'m sorry its [sic] frustrating to me as well and I work in this crap every day.  I will forward it to Tony [Sargent Craigo] again but he never responded to the last one."  *See id.*

- 15 -

98.     According to this e-mail exchange, not only were Victim Services Coordinator Smith and the Putnam County Prosecutor's Office on notice of where Plaintiff and B.G. were on November 22, 2017, but so was Sargent Craigo and the Putnam County Sheriff's Department.  *See id*.

99.     Likewise, on November 23, 2017, when the Putnam County Prosecutor's Office and Putnam County Sheriff's Department claim Plaintiff was "concealing" B.G. from authorities, Mr. McCoy sent Victim Services Coordinator Smith another picture of Plaintiff and B.G. from FaceBook.  *See id*.

100.    In response, Victim Services Coordinator Smith asks, "[a]ll of these pictures are taken at her moms [sic], correct?"  To which Mr. McCoy replies, "[n]o, the first one is at her moms [sic].  The one on Wednesday is at her house in Hurricane and the one from yesterday I don't know, I'm sure it's at her ex-husbands [sic] families [sic] house."  *See id*.

101.    According to this e-mail exchange, Victim Services Coordinator Smith and the Putnam County Prosecutor's Office were on notice of where Plaintiff and B.G. were on November 23, 2017 and, apparently, the two days prior.  *See id*.

102.    Upon information and belief, Mr. McCoy and Victim Services Coordinator Smith were romantically involved during this time period.

103.    According to the November 14 E-mails, which establish that Plaintiff was not "concealing" B.G. from authorities, the Putnam County Prosecutor's Office, Prosecutor Sorsaia, Prosecutor Karr, Prosecutor Sunyog, the Putnam County Sheriff's Department, and Sargeant Craigo all knew or should have known that Sargent Craigo's criminal complaint and Magistrate Hunt's warrant for the arrest of Plaintiff on felony child concealment charges were knowingly false and lacked probable cause.  *See id*.

104.    Based on the exculpatory November 14th E-mails, Plaintiff and her criminal defense counsel requested all communications between Mr. McCoy and Victim Services Coordinator Smith.

105.    Despite multiple requests, Prosecutor Sorsaia and the Putnam County Prosecutor's Office never produced the exculpatory e-mails in criminal discovery.

106.    On July 11, 2018, a Putnam County Grand Jury Indicted Plaintiff on seven (7) felony counts of child concealment, felony conspiracy to commit child concealment, and misdemeanor obstructing an officer (hereinafter "Indictment No. 1"). *See* Indictment No. 1, attached hereto as Exhibit 9.

107.    Prosecutor Sorsaia and Prosecutor Karr represented the Putnam County Prosecutor's Office before the Grand Jury in connection with Indictment No. 1.

108.    Upon information and belief, in support of Indictment No. 1, Sargent Craigo offered false and misleading testimony to the Grand Jury regarding his alleged efforts, and the efforts of other law enforcement personnel, to "find" Plaintiff and B.G. during November 2017 in order to have custody of B.G. turned over Mr. McCoy pursuant to the Unlawful EPO.

109.    Upon information and belief, at no time did Sargent Craigo (or any other law enforcement officer) come to Plaintiff's residence, try to call Plaintiff on the phone, or go to Plaintiff's place of employment (as a teacher at Hurricane High School) in order to "find" Plaintiff or B.G.

110.    During the time that Sargent Craigo claimed to be unable to "find" Plaintiff or B.G., a Hurricane PD officer was stationed at Hurricane High School where Plaintiff worked on a daily basis and was present with B.G. on multiple occasions.

111.    Despite having knowledge and information regarding the location of Plaintiff and B.G. on multiple days throughout the month of November 2017 (as evidenced by the November E-mails), Sargent Craigo falsely testified before the Grand Jury that Plaintiff was "concealing" B.G. from authorities.  *See* Ex. 8.

112.    Despite having knowledge and information regarding the location of Plaintiff and B.G. on multiple days throughout the month of November 2017 (as evidenced by the November E-mails), Prosecutor Sorsaia and Prosecutor Karr allowed Sargent Craigo to falsely testify before the Grand Jury that Plaintiff was "concealing" B.G. from authorities.  *See id*.

113.    Despite having knowledge and information regarding the location of Plaintiff and B.G. on multiple days throughout the month of November 2017 (as evidenced by the November E-mails), Prosecutor Sorsaia and Prosecutor Karr charged Plaintiff with felony child concealment in Indictment No. 1.  *See id*.; *see* Ex. 9.

114.    Upon information and belief, Prosecutor Sorsaia and Prosecutor Karr presented no exculpatory evidence to the Grand Jury regarding: (1) Mr. McCoy's three (3) prior convictions for violating the McCoy DVPO and Family Court Order, (2) that Mr. McCoy's presence at Plaintiff's home during the November 4th Incident was a violation of the McCoy DVPO and Family Court Order, and a violation of the McCoy Probation, or (3) that the Unlawful EPO that provided the grounds for the child concealment charges against Plaintiff was unlawful, invalid, and obtained by false and fraudulent means by Mr. McCoy via the Fraudulent McCoy Petition.

115.    Prosecutor Sorsaia, Prosecutor Karr, and Sargent Craigo knew or should have known that, based on the Fraudulent McCoy Petition, Unlawful EPO, and November 14th E-mails, there was no probable cause to charge Plaintiff with felony child concealment in Indictment No. 1.

116.     Indictment No. 1 was signed by Prosecutor Sorsaia.  *See* Ex. 9.

117.     On September 22, 2018, Mr. McCoy made false allegations of "stalking" against Plaintiff to the West Virginia State Police.

118.     Upon information and belief, Mr. McCoy made these false allegations of stalking against Plaintiff in concert with Prosecutor Sorsaia, Prosecutor Karr, and Trooper Eastridge (and possibly others) in order to get a search warrant for Plaintiff's cellular phone.

119.     On October 13, 2018, based on these false stalking charges, Trooper Eastridge obtained a search warrant for Plaintiff's cellular phone (hereinafter, the "Unverified Search Warrant").  *See* Unverified Search Warrant, attached hereto as Exhibit 10.

120.     The Unverified Search Warrant was signed by Magistrate Hunt.[2]

121.     False and misleading statements made by Trooper Eastridge and Mr. McCoy were used as predicates for the Unverified Search Warrant.

122.     The Unverified Search Warrant was unsworn and based entirely on the hearsay statements of Trooper Eastridge and Mr. McCoy, who the Putnam County Prosecutor's Office and Magistrate Hunt knew had already committed fraud on the Court by lying on the Fraudulent McCoy Petition used to obtained the Unlawful EPO.  *See* Ex. 5.

123.     Because the Unverified Search Warrant was unsworn (*i.e.*, no affidavit by either Mr. McCoy or Trooper Eastridge), it was invalid as a matter of law.  *See State v. Lilly*, 461 S.E.2d 101 (W. Va. 1995);  *see State v. Thompson*, 178 W. Va. 254 (1987);  *see State v. Adkins*, 346 S.E.2d 762 (W. Va. 1986).

124.     Because the Unverified Search Warrant was unsworn and invalid, it lacked probable cause.  *See id*.

---

[2] If Magistrate Hunt was not absolutely immune from civil liability under West Virginia law, she would have rightly been named in the present suit for her malicious and egregious judicial malfeasance.

125.     Nevertheless, Trooper Eastridge took possession of Plaintiff's cellular phone pursuant to the Unverified Search Warrant, but no return of the execution was ever filed as required by W. Va. Rule of Criminal Procedure 41(a) and 41(g).

126.     Because the Unverified Search Warrant violated Rule 41, it was invalid and lacked probable cause.

127.     No reasonable, well-trained law enforcement officer would believe he/she had the legal authority to seize, search, and review data from Plaintiff's cellular phone based on the Unverified Search Warrant.

128.     The Unverified Search Warrant was used by the West Virginia State Police to seize and search the entire contents of Plaintiff's cellular phone, including, but not limited to, private information, personal e-mails, and attorney-client communications.

129.     The Unverified Search Warrant was used by the West Virginia State Police to seize and search data and other information well outside the scope of the Unverified Search Warrant.

130.     Any seized information from Plaintiff's cellular phone that was outside the scope of the Unverified Search Warrant was illegal and lacked probable cause. *See State v. Lilly*, 461 S.E.2d 101 (W. Va. 1995).

131.     The Unverified Search Warrant makes no mention of the offense of "interception of electronic communications" anywhere its face, even though information illegally seized from Plaintiff's cellular phone was later used to prosecute Plaintiff for felony interception of electronic communications. *See infra*.

132.     On October 12, 2018, a bench trial before the Magistrate Court of Putnam County was held on the Greene Misdemeanor Charges.

133.    Prosecutor Karr and Prosecutor Sunyog represented the Putnam County Prosecutor's Office in the Green Misdemeanor Charges.

134.    Plaintiff was found guilty of all charges, but timely appealed the convictions to the Circuit Court of Putnam County.

135.    At some point in 2018, during the course of Plaintiff's prosecution, then-criminal counsel for Plaintiff asked Prosecutor Karr why the Putnam County Prosecutor's Office was relentlessly pursuing baseless criminal charges against Plaintiff.

136.    In response, Prosecutor Karr stated that they believed that Plaintiff would "either take a plea or kill herself."

137.    On October 26, 2019, a forensic report from the West Virginia State Police Crime Lab (hereinafter, the "WVSP Forensic Report") found through GPS data that Plaintiff's cellular phone was nowhere in the vicinity of Mr. McCoy on the dates and locations he claims Plaintiff was "stalking" him.

138.    Despite ongoing criminal proceedings against Plaintiff, Prosecutor Sorsaia and Prosecutor Karr failed to produce the exculpatory WVSP Forensic Report until approximately three (3) months later.

139.    On January 29, 2019, Plaintiff was arrested by Trooper Eastridge on the false stalking charges made against her by Mr. McCoy.

140.    Plaintiff remained in jail for forty-two (42) days on these charges, until March 11, 2019.

141.    On January 29, 2019, the day Plaintiff was arrested for "stalking," the exculpatory WVSP Forensic Report was produced to Plaintiff's counsel.

- 21 -

142.    On February 6, 2019, a Preliminary Hearing on the stalking charges against Plaintiff was held in the Circuit Court of Putnam County.

143.    During this hearing, both Mr. McCoy and Trooper Eastridge offered false and misleading testimony to the Court.

144.    Mr. McCoy falsely testified that on multiple occasions between January and June 2018, Plaintiff followed him home after Plaintiff had visitation with B.G.  Mr. McCoy falsely testified that after meeting at a local McDonald's to exchange B.G., Plaintiff would follow him home in her vehicle.

145.    Mr. McCoy's testimony was demonstrably false, because at the time, Plaintiff was only permitted to have supervised visitation of B.G. at a designated, supervised facility (hereinafter, the "Visitation Order").  *See* Visitation Order, attached hereto as Exhibit 11.

146.    Mr. McCoy's testimony was likewise demonstrably false, because he moved from Putnam County to Mercer County, West Virginia with B.G. in March 2018.

147.    Mr. McCoy further falsely testified that when Plaintiff was allegedly stalking him, he would call 911 and/or Victim Services Coordinator Smith.

148.    There are no records of these alleged calls to 911 or Victim Services Coordinator Smith.

149.    During this hearing, Trooper Eastridge offered false testimony corroborating Mr. McCoy's fabricated story about allegedly being followed by Plaintiff after visitations with B.G. (visitations that never occurred and would have violated the Visitation Order).

150.    During his testimony, Trooper Eastridge intimated that he knew the stalking charges against Plaintiff were baseless, but that they "just wanted to see what was on" Plaintiff's cellular phone.

151.    Upon information and belief, Prosecutor Sorsaia and Prosecutor Karr knew that the testimony offered to the Court by Mr. McCoy and Trooper Estridge was false, yet they allowed them to perjure themselves anyway.

152.    Victims Services Coordinator Smith, who was also present at the February 6, 2018 Preliminary Hearing, assisted Mr. McCoy in perjuring himself by "nodding along" while he lied on the stand about allegedly calling her when Plaintiff was purportedly following him after visitations with B.G. – visitations that Mr. McCoy, Trooper Estridge, Prosecutor Sorsaia, Prosecutor Karr, and Victims Services Coordinator Smith knew never occurred.

153.    As a result of this perjurious hearing, Plaintiff was denied bond and returned to jail, where she remained until March 11, 2019.

154.    On March 7, 2019, a Putnam County Grand Jury Indicted Plaintiff on fifteen (15) counts of felony stalking, felony interception of electronic communications, and various misdemeanor offenses (hereinafter "Indictment No. 2").  *See* Indictment No. 2, attached hereto as Exhibit 12.

155.    Prosecutor Sorsaia and Prosecutor Karr represented the Putnam County Prosecutor's Office before the Grand Jury in connection with Indictment No. 2.

156.    Despite the exculpatory WVSP Forensic Report, which unequivocally establishes that Plaintiff did not "stalk" Mr. McCoy, Prosecutor Sorsaia and Prosecutor Karr brought charges of stalking against Plaintiff before the Grand Jury.

157.    Upon information and belief, during the Grand Jury hearing, Prosecutor Karr used information from attorney-client privileged e-mails obtained from Plaintiff's cellular phone using the Unverified Search Warrant.

158.    Upon information and belief, during the Grand Jury hearing, Trooper Eastridge also used information from attorney-client privileged e-mails obtained from Plaintiff's cellular phone using the Unverified Search Warrant.

159.    Upon information and belief, Trooper Eastridge offered the same false and misleading testimony to the Grand Jury in support of stalking charges Indictment No. 2 as he did during the February 6, 2019 Preliminary Hearing.

160.    Upon information and belief, Trooper Eastridge fabricated evidence and offered false testimony to the Grand Jury based on said evidence.

161.    Upon information and belief, as proof of Plaintiff's alleged stalking, Trooper Eastridge testified that a photograph of the outside of Mr. McCoy's brother's home (found on Plaintiff's phone through the Unverified Search Warrant) was taken by Plaintiff.  In truth, the picture was taken by Mr. McCoy's mother and sent to Plaintiff unsolicited.

162.    Upon information and belief, Trooper Eastridge "cropped out" portions of the photograph establishing that the photo was not taken by Plaintiff, like the fingers of Mrs. McCoy's mother and the color of the vehicle the picture was taken from (white).

163.    Plaintiff has never owned a white vehicle.

164.    Upon information and belief, Trooper Eastridge materially changed his story from what was stated in the Unverified Search Warrant (used to collect evidence for these new interception of electronic communications charges in Indictment No. 2) and otherwise offered false testimony to the Grand Jury.

165.    Upon information and belief, Prosecutor Sorsaia and Prosecutor Karr knew that the testimony offered by Trooper Estridge to the Grand Jury was false, yet allowed him to perjure himself anyway.

166.   Upon information and belief, Prosecutor Sorsaia and Prosecutor Karr knew that Trooper Estridge fabricated evidence and offered false testimony to the Grand Jury based on said evidence, but allowed him to do so anyway.

167.   Trooper Eastridge knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was obtained illegally using the Unverified Search Warrant.

168.   Trooper Eastridge knew or should have known that the Unverified Search Warrant, used to obtain information on Plaintiff's cellular phone to support charges of felony interception of electronic information, lacked probable cause.

169.   Trooper Eastridge knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was outside of the scope of the Unverified Search Warrant.

170.   Prosecutor Sorsaia and Prosecutor Karr knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was obtained illegally using the Unverified Search Warrant.

171.   Prosecutor Sorsaia and Prosecutor Karr knew or should have known that the Unverified Search Warrant, used to obtain information on Plaintiff's cellular phone to support charges of felony interception of electronic information, lacked probable cause.

172.   Prosecutor Sorsaia and Prosecutor Karr knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was outside of the scope of the Unverified Search Warrant.

173.   Indictment No. 2 was signed by Prosecutor Sorsaia.

174.   On March 11, 2019, Plaintiff was released on bond after forty-two (42) days in jail.

175.   As a condition of Plaintiff's bond, she was placed on home confinement.

176.   On April 8, 2019, a *de novo* bench trial (appeal) before the Circuit Court of Putnam County was held on the Greene Misdemeanor Charges.

177.   Since Plaintiff had contacted Prosecutor Karr in June and July 2017 (prior to the November 4th Incident giving rise to the Green Misdemeanor Charges) asking for help because Mr. McCoy was violating the McCoy DVPO, the Court found that Prosecutor Karr was a material witness in Plaintiff's defense and disqualified her from the matter.   *See* Final Dismissal Order, attached hereto as Exhibit 13.

178.   The Court subsequently declared a mistrial.   *See id.*

179.   On August 16, 2019, Plaintiff was released from home confinement after one hundred and thirty-eight days (138).

180.   On September 21, 2019, the Greene Misdemeanor Charges were dismissed with prejudice.   *See id.*

181.   Following the dismissal of the Greene Misdemeanor Charges, Prosecutor Sorsaia likewise dismissed all of the charges against Plaintiff in Indictment No. 1 and Indictment No. 2.

182.   On November 14, 2019, a Putnam County Grand Jury Indicted Plaintiff on three (3) felony counts of concealment of a minor child, stalking, and interception of electronic communications (hereinafter "Indictment No. 3").   *See* Indictment No. 3, attached hereto as Exhibit 14.

183.   Prosecutor Sorsaia represented the Putnam County Prosecutor's Office before the Grand Jury in connection with Indictment No. 3.

184.     Upon information and belief, in support of Indictment No. 3, Sargent Craigo offered false and misleading testimony to the Grand Jury regarding his alleged efforts, and the efforts of other law enforcement personnel, to "find" Plaintiff and B.G. during November 2017 in order to have custody of B.G. turned over Mr. McCoy pursuant to the Unlawful EPO.

185.     Upon information and belief, at no time did Sargent Craigo (or any other law enforcement officer) come to Plaintiff's residence, try to call Plaintiff on the phone, or go to Plaintiff's place of employment (as a teacher at Hurricane High School) in order to "find" Plaintiff or B.G.

186.     During the time that Sargent Craigo claimed to be unable to "find" Plaintiff or B.G., a Hurricane PD officer was stationed at Hurricane High School where Plaintiff worked on a daily basis and was present with B.G. on multiple occasions.

187.     Despite having knowledge and information regarding the location of Plaintiff and B.G. on multiple days throughout the month of November 2017 (as evidenced by the November E-mails), Sargent Craigo falsely testified before the Grand Jury that Plaintiff was "concealing" B.G. from authorities.  *See* Ex. 8.

188.     Despite having knowledge and information regarding the location of Plaintiff and B.G. on multiple days throughout the month of November 2017 (as evidenced by the November E-mails), Prosecutor Sorsaia allowed Sargent Craigo to falsely testify before the Grand Jury that Plaintiff was "concealing" B.G. from authorities.  *See id.*

189.     Despite having knowledge and information regarding the location of Plaintiff and B.G. on multiple days throughout the month of November 2017 (as evidenced by the November E-mails), Prosecutor Sorsaia charged Plaintiff with felony child concealment in Indictment No. 3. *See id.*; *see* Ex. 14.

190.    Upon information and belief, Prosecutor Sorsaia presented no exculpatory evidence to the Grand Jury regarding: (1) Mr. McCoy's three (3) prior convictions for violating the McCoy DVPO and Family Court Order, (2) that Mr. McCoy's presence at Plaintiff's home during the November 4th Incident was a violation of the McCoy DVPO and Family Court Order, and a violation of the McCoy Probation, or (3) that the Unlawful EPO that provided the grounds for the child concealment charges against Plaintiff was unlawful, invalid, and obtained by false and fraudulent means by Mr. McCoy via the Fraudulent McCoy Petition.

191.    Prosecutor Sorsaia and Sargent Craigo knew or should have known that, based on the Fraudulent McCoy Petition, Unlawful EPO, and November 14th E-mails, there was no probable cause to charge Plaintiff with felony child concealment in Indictment No. 3.

192.    Upon information and belief, Prosecutor Sorsaia presented improper and unduly prejudicial testimony to the Grand Jury about the Greene Misdemeanor Charges, which had been dismissed with prejudice and barred from future prosecution.

193.    Despite the exculpatory WVSP Forensic Report, which unequivocally establishes that Plaintiff did not "stalk" Mr. McCoy, Prosecutor Sorsaia brought charges of stalking against Plaintiff before the Grand Jury.  *See* Ex. 14.

194.    Upon information and belief, during the Grand Jury hearing, Prosecutor Sorsaia used information from attorney-client privileged e-mails obtained from Plaintiff's cellular phone using the Unverified Search Warrant.

195.    Upon information and belief, during the Grand Jury hearing, Trooper Eastridge used information from attorney-client privileged e-mails obtained from Plaintiff's cellular phone using the Unverified Search Warrant.

- 28 -

196.    Upon information and belief, Trooper Eastridge offered the same false and misleading testimony to the Grand Jury in support of stalking charges Indictment No. 3 as he did during the February 6, 2019 Preliminary Hearing and Grand Jury in Indictment No. 2.

197.    Upon information and belief, Trooper Eastridge fabricated evidence and offered false testimony to the Grand Jury based on said evidence.

198.    Upon information and belief, as proof of Plaintiff's alleged stalking, Trooper Eastridge testified that a photograph of the outside of Mr. McCoy's brother's home (found on Plaintiff's phone through the Unverified Search Warrant) was taken by Plaintiff.  In truth, the picture was taken by Mr. McCoy's mother and sent to Plaintiff unsolicited.

199.    Upon information and belief, Trooper Eastridge "cropped out" portions of the photograph establishing that the photo was not taken by Plaintiff, like the fingers of Mrs. McCoy's mother and the color of the vehicle the picture was taken from (white).

200.    Plaintiff has never owned a white vehicle.

201.    Upon information and belief, Trooper Eastridge materially changed his story from what was stated in the Unverified Search Warrant (used to collect evidence for these new charges in Indictment No. 3) and otherwise offered false testimony to the Grand Jury.

202.    Upon information and belief, Prosecutor Sorsaia knew that the testimony offered by Trooper Estridge to the Grand Jury was false, yet allowed him to perjure himself anyway.

203.    Upon information and belief, Prosecutor Sorsaia knew that Trooper Estridge fabricated evidence and offered false testimony to the Grand Jury based on said evidence, but allowed him to do so anyway.

204.   Trooper Eastridge knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was obtained illegally using the Unverified Search Warrant.

205.   Trooper Eastridge knew or should have known that the Unverified Search Warrant, used to obtain information on Plaintiff's cellular phone to support charges of felony interception of electronic information, lacked probable cause.

206.   Trooper Eastridge knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was outside of the scope of the Unverified Search Warrant.

207.   Prosecutor Sorsaia knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was obtained illegally using the Unverified Search Warrant.

208.   Prosecutor Sorsaia knew or should have known that the Unverified Search Warrant, used to obtain information on Plaintiff's cellular phone to support charges of felony interception of electronic information, lacked probable cause.

209.   Prosecutor Sorsaia knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information, and presented to the Grand Jury, was outside of the scope of the Unverified Search Warrant.

210.   Indictment No. 3 was signed by Prosecutor Sorsaia.  *See* Ex. 14.

211.   On January 14, 2020, Plaintiff moved to disqualify the Putnam County Prosecutor's Office due to the conflict with Prosecutor Karr that resulted in the mistrial and subsequent dismissal of the Green Misdemeanor Charges.  *See* Ex. 13.

212.     On January 22, 2020, Prosecutor Sorsaia opposed Plaintiff's Motion to Disqualify, but voluntarily withdrew the Putnam County Prosecutor's Office from the case and asked that a Special Prosecutor be appointed.

213.     Prosecutor Tyler and Prosecutor Switzer were later appointed as Special Prosecutors to Indictment No. 3.

214.     All knowledge and information possessed by the Putnam County Prosecutor's Office, Prosecutor Sorsaia, Prosecutor Karr, Prosecutor Sunyog, and Victim Services Coordinator Smith during the previous investigations and prosecutions of Plaintiff stemming from the Greene Misdemeanor Charges, Indictment No. 1, and Indictment No. 2 are imputed to the Kanawha County Prosecutor's Office, Prosecutor Tyler, and Prosecutor Switzer in their prosecution of Indictment No. 3.

215.     Prosecutor Tyler and Prosecutor Switzer knew or should have known that the Unlawful EPO, upon which the child concealment charge in Indictment No. 3 was based, was invalid and obtained by false and fraudulent means by Mr. McCoy.

216.     Prosecutor Tyler and Prosecutor Switzer knew or should have known that, based on the November E-mails, the Putnam County Prosecutor's Office and the Putnam County Sheriff's Department knew where Plaintiff and B.G. were on multiple days in November 2017, when Plaintiff was allegedly "concealing" B.G. from authorities.

217.     Prosecutor Tyler and Prosecutor Switzer knew or should have known that Sargent Craigo and the Putnam County Sheriff's Office's claim that Plaintiff was "concealing" B.G. from authorities was false in light of the November E-mails.

218.   As such, Prosecutor Tyler and Prosecutor Switzer knew or should have known that, based on the Fraudulent McCoy Petition, Unlawful EPO, and November 14th E-mails, there was no probable cause to charge Plaintiff with felony child concealment in Indictment No. 3.

219.   Prosecutor Tyler and Prosecutor Switzer knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information was obtained illegally using the Unverified Search Warrant.

220.   Prosecutor Tyler and Prosecutor Switzer knew or should have known that the Unverified Search Warrant, used to illegally obtain information on Plaintiff's cellular phone to support charges of felony interception of electronic information in Indictment No. 3, lacked probable cause.

221.   Prosecutor Tyler and Prosecutor Switzer knew or should have known that information on Plaintiff's cellular phone used to support charges of felony interception of electronic information in Indictment No. 3 was outside of the scope of the Unverified Search Warrant.

222.   After approximately four (4) year and multiple indictments for felony child concealment, Prosecutor Tyler and Prosecutor Switzer waited until days before Plaintiff's criminal trial disclose some (but not all) of the exculpatory November E-mails between Mr. McCoy and Victim Services Coordinator Smith, and only when threatened with a *Brady* violation by counsel for Plaintiff.

223.   On June 28, 2021, trial was held in the Circuit Court of Putnam County on the charges brought against Plaintiff in Indictment No. 3.

224.   After approximately three (3) years, multiple indictments, and Plaintiff being subjected to forty-two (42) days in jail and one hundred and fifty-eight (158) days of home

confinement, Prosecutor Tyler and Prosecutor Switzer dismissed with prejudice the felony stalking charge against Plaintiff on the day of trial due to a complete lack of credible evidence.

225.    On July 1, 2020, a Putnam County Jury returned a not guilty verdict on the State's felony child concealment charge against Plaintiff.  *See* Order, attached hereto as <u>Exhibit 15</u>.

226.    During trial, based on the exculpatory November E-Mails, Victim Services Coordinator Smith was forced to admit that in November 2017, Mr. McCoy informed her of the whereabouts of Plaintiff and B.G.

227.    During trial, Victim Services Coordinator Smith was also forced to admit that she was mandated and duty bound to report that information to the Putnam County Prosecutor's Office.

228.    During trial, based on the exculpatory November E-Mails, Sargent Craigo was forced to admit that in November 2017, Victim Services Coordinator Smith informed him of the whereabouts of Plaintiff and B.G.

229.    During trial, with the aid of Plaintiff's phone records, Sargent Craigo was also forced to admit that even though he claimed Plaintiff was "concealing" B.G. from authorities, he never called Plaintiff in an attempt to locate B.G. and never went to Plaintiff's home or work to look for Plaintiff or B.G.

230.    At trial, Plaintiff was convicted of felony interception of electronic communications, based entirely on e-mails obtained with the Unverified Search Warrant.

231.    Plaintiff has filed a motion for a new trial on the felony interception of electronic communications charges.  In the event said motion is denied, Plaintiff's conviction will be appealed to the Supreme Court of West Virginia.

232.    As set forth hereinabove, Defendants' selective, unjustified, and malicious prosecutions of Plaintiff – based on false, fraudulent, fabricated, and illegally obtained evidence –

were unconscionable, unethical, and establish a systematic and concerted pattern of law enforcement, prosecutorial, and judicial misconduct.

233.    As a direct and proximate result of Defendants' egregious misconduct, Plaintiff has suffered severe and permanent injuries, including but not limited to:

a)  Loss of custodial rights of B.G.;

b)  Unnecessary child support payments to Mr. McCoy;

c)  Loss of employment as a Putnam County high school teacher (earning approximately $65,000.00 per year);

d)  Medical bills from having lost medical insurance coverage;

e)  Approximately $100,000.00 in unnecessary legal fees;

f)  Payment of $165 per week for unnecessary supervised visitation of B.G.;

g)  Payment of $56 per week to be on unnecessary home confinement;

h)  Payment for psychological medical care (Plaintiff has been diagnosed with PTSD);

i)  The emotional pain, stigma, and embarrassment of being publicly labeled a criminal who "concealed" her daughter from authorities or otherwise kidnapped her;

j)  Being subjected to fifty-one (51) days in jail and two hundred and sixteen (216) days of home confinement (and counting); and

k)  General damages beyond measure.

## COUNT I – FOURTH AMENDMENT UNREASONABLE SEIZURE VIOLATIONS UNDER 42 U.S.C. §1983

234.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 233 as though fully set forth herein.

235.    Defendants, while acting under color of law and within the scope of their employment, violated Plaintiff's constitutional right under the Fourth Amendment to the United

States Constitution to be free from unreasonable seizure during her arrests, detainments, incarcerations, and prosecutions.

236.    At all material times, Prosecutor Sorsaia was acting in his capacity as the Putnam County Prosecuting Attorney.

237.    At all material times, Prosecutor Karr was acting in her capacity as an Assistant Putnam County Prosecuting Attorney.

238.    At all material times, Prosecutor Sunyog was acting in her capacity as an Assistant Putnam County Prosecuting Attorney.

239.    At all material times, Sargent Craigo was acting in his capacity as a Putnam County Sheriff's Deputy.

240.    At all material times, Prosecutor Tyler was acting in her capacity as an Assistant Kanawha County Prosecuting Attorney.

241.    At all material times, Prosecutor Switzer was acting in her capacity as an Assistant Kanawha County Prosecuting Attorney.

242.    At all material times, Trooper Eastridge was acting in his capacity as West Virginia State Trooper.

243.    At all material times, Office Lucas was acting in his capacity as a Hurricane PD officer.

244.    The abovenamed Defendants shall hereinafter collectively be referred to as the "Individual Law Enforcement Defendants."

245.    The actions of the Individual Law Enforcement Defendants, described hereinabove, violated the constitutional rights guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution.

246.     Pursuant to W.Va. Code 29-12A-18(e), by alleging violations of the United States Constitution, the West Virginia Governmental Tort Claims and Insurance Reform Act is inapplicable.

### *FALSE ARREST*

247.     Sargent Craigo, Officer Lucas, and Trooper Eastridge arrested or caused Plaintiff to be arrested without probable cause, under false pretenses, and by using falsified and/or fabricated evidence.

248.     By arresting Plaintiff without probable cause, under false pretenses, and by using falsified and/or fabricated evidence, Sargent Craigo, Officer Lucas, and Trooper Eastridge violated Plaintiff's right to be free from false arrest.

249.     Prior to her arrests, no reasonable officer could believe, in the light of the contours of the offence at issue, that probable cause existed to arrest Plaintiff.

250.     Prior to her arrests, there were no facts or circumstances sufficient to warrant a prudent person, or one of reasonable caution, in believing that Plaintiff had committed, is committing, or is about to commit a criminal offence.

251.     Sargent Craigo, Officer Lucas, and Trooper Eastridge deliberately and with a reckless disregard for the truth made materially false statements, materially false omissions, and used false and/or fabricated evidence to obtain warrants for Plaintiff's arrest.

252.     Sargent Craigo and Trooper Eastridge deliberately and with a reckless disregard for the truth made materially false statements, materially false omissions, and used false and/or fabricated evidence to obtain search warrants that led to Plaintiff's arrest and prosecution.

253.    Sargent Craigo and Trooper Eastridge deliberately and with a reckless disregard for the truth made materially false statements to numerous Grand Juries, which undercut the Grand Jury's probable cause determination.

254.    Sargent Craigo and Trooper Eastridge deliberately and with a reckless disregard for the truth made materially false omissions to and otherwise withheld exculpatory evidence from numerous Grand Juries, which undercut the Grand Jury's probable cause determination.

255.    Sargent Craigo and Trooper Eastridge deliberately and with a reckless disregard for the truth offered false and/or fabricated evidence to numerous Grand Juries, which undercut the Grand Jury's probable cause determination.

256.    The actions of Sargent Craigo, Officer Lucas, and Trooper Eastridge, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

257.    The actions of Sargent Craigo, Officer Lucas, and Trooper Eastridge, described hereinabove, were unlawful and unjustified.

### *UNLAWFUL SEARCH AND SEIZURE*

258.    Trooper Eastridge deliberately and with a reckless disregard for the truth made materially false statements, materially false omissions, and used false and/or fabricated evidence to obtain the Unverified Search Warrant.

259.    The Unverified Search Warrant was used by the West Virginia State Police to seize and search the entire contents of Plaintiff's cellular phone, including, but not limited to, private information, personal e-mails, and attorney-client communications.

260.    The Unverified Search Warrant was used by the West Virginia State Police to seize and search data and other information well outside the scope of the Unverified Search Warrant.

261.    No reasonable, well-trained law enforcement officer would believe he had the legal authority to seize, search, and review data from Plaintiff's cellular phone based on the Unverified Search Warrant.

262.    The Unverified Search Warrant was used to prosecute Plaintiff for felony stalking and felony interception of electronic communications.

263.    The actions of Trooper Eastridge, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

264.    The actions of Trooper Eastridge, described hereinabove, were unlawful and unjustified.

## *FALSE IMPRISONMENT*

265.    By causing Plaintiff to be imprisoned or otherwise detained without probable cause, under false pretenses, and by using falsified and/or fabricated evidence, the Individual Law Enforcement Defendants violated Plaintiff's right to be free from false imprisonment.

266.    As a result of these unlawful actions, Plaintiff was falsely imprisoned for fifty (51) days and was on house arrest for two hundred sixteen (216) days (and counting).

267.    The actions of the Individual Law Enforcement Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

268.    The actions of the Individual Law Enforcement Defendants, described hereinabove, were unlawful and unjustified.

## *MALICOUS PROSECUTION/ABUSE OF JUDICIAL PROCESS*

269.    The Individual Law Enforcement Defendants initiated and continued criminal proceedings against Plaintiff that terminated in her favor.

270.     As set forth hereinabove, the criminal proceedings were not supported by probable cause, were initiated under false pretenses, and were initiated using falsified and/or fabricated evidence.

271.     As set forth hereinabove, even after the Individual Law Enforcement Defendants knew or should have known that the criminal proceedings were not supported by probable cause, were initiated under false pretenses, and were initiated using falsified and/or fabricated evidence, they continued the criminal proceedings anyway.

272.     As a result of the Individual Law Enforcement Defendants' initiation and continuation of these malicious criminal proceedings, Plaintiff suffered deprivation of her liberty and other rights consistent with the concept of a seizure.

273.     The actions of the Individual Law Enforcement Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

274.     The actions of the Individual Law Enforcement Defendants, described hereinabove, were unlawful and unjustified.

275.     As a direct and proximate result of the Individual Law Enforcement Defendants' unreasonable, unjustified, malicious, and unconstitutional conduct, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

276.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

277.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### COUNT II – FOURTEENTH AMENDMENT SUBSTANATIVE DUE PROCESS VIOLATION UNDER 42 U.S.C. § 1983

278.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 277 as though fully set forth herein.

279.    The Individual Law Enforcement Defendants, while acting under color of law and within the scope of their employment, violated Plaintiff's constitutional right under the Fourteenth Amendment to the United States Constitution by invading her parental rights to her minor child, B.G.

280.    Pursuant to W.Va. Code 29-12A-18(e), by alleging violations of the United States Constitution, the West Virginia Governmental Tort Claims and Insurance Reform Act is inapplicable.

281.    The actions of the Individual Law Enforcement Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

282.    The actions of the Individual Law Enforcement Defendants, described hereinabove, were unlawful and unjustified.

283.    As a direct and proximate result of the Individual Law Enforcement Defendants' unreasonable, unjustified, malicious, and unconstitutional conduct, Plaintiff suffered severe and

permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

284.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

285.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT III – NEGLIGENCE

286.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 285 as though fully set forth herein.

287.    At all times relevant hereto, the Individual Law Enforcement Defendants owed Plaintiff a duty of care.

288.    As set forth hereinabove, the Individual Law Enforcement Defendants, while acting within the scope of their employment, breached their duty of care to Plaintiff.

289.    As a direct and proximate result of the Individual Law Enforcement Defendants' negligent and reckless conduct, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support

payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

290.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

291.    The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT IV – GROSS NEGLIGENCE

292.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 291 as though fully set forth herein.

293.    At all times relevant hereto, the Individual Law Enforcement Defendants owed Plaintiff a duty of care.

294.    As set forth hereinabove, the Individual Law Enforcement Defendants, while acting within the scope of their employment, breached their duty of care to Plaintiff.

295.    In breaching their duty of care, the Individual Law Enforcement Defendants displayed a conscious indifference to probable dangerous consequences of their actions.

296.    In breaching their duty of care, the Individual Law Enforcement Defendants displayed a reckless disregard for the safety and wellbeing of Plaintiff.

297.    As a direct and proximate result of the Individual Law Enforcement Defendants' negligent and reckless conduct, Plaintiff suffered severe and permanent injuries and will seek

compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

298.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

299.    The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT V – *PRIMA FACIE* NEGLIGENCE

300.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 299 as though fully set forth herein.

301.    As set forth hereinabove, the Individual Law Enforcement Defendants violated various civil and criminal laws, codes, and statutes, including but not limited to, the Crime Victims' Rights Act (18 U.S.C. § 3771), during the course of their unlawful actions.

302.    Because the Individual Law Enforcement Defendants' violation of these various civil and criminal laws, codes, and statutes, including but not limited to, the Crime Victims' Rights Act (18 U.S.C. § 3771), proximately caused Plaintiff's injuries, they are liable under a theory of *prima facie* negligence.

303.    As a direct and proximate result of the Individual Law Enforcement Defendants' negligent and reckless conduct, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

304.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

305.    The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

**COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

306.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 305 as though fully set forth herein.

307.    The Individual Law Enforcement Defendants' actions toward Plaintiff, as described hereinabove, were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

308.    The Individual Law Enforcement Defendants acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

- 44 -

309.    The Individual Law Enforcement Defendants' heinous actions caused Plaintiff to suffer severe emotional distress.

310.    The emotional distress was so severe, no reasonable person could be expected to endure it.

311.    As a direct and proximate result of the Individual Law Enforcement Defendants' negligent, reckless, and outrageous conduct, Plaintiff suffered severe emotional distress, both in the past and in the future; mental and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

312.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

313.    The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT VII – MALICIOUS PROSECUTION

314.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 313 as though fully set forth herein.

315.    As set forth hereinabove, the Individual Law Enforcement Defendants caused criminal prosecutions of Plaintiff to be set afoot and conducted to their termination, resulting in Plaintiff's discharge.

316.    As set forth hereinabove, the criminal prosecutions were not supported by probable cause, were initiated under false pretenses, and were initiated using falsified and/or fabricated evidence.

317.    As set forth hereinabove, even after the Individual Law Enforcement Defendants knew or should have known that the criminal prosecutions were not supported by probable cause, were initiated under false pretenses, and were initiated using falsified and/or fabricated evidence, they continued to prosecute Plaintiff anyway.

318.    As set forth hereinabove, the criminal prosecutions of Plaintiff by the Individual Law Enforcement Defendants were malicious.

319.    As a direct and proximate result of the Individual Law Enforcement Defendants' wrongful and malicious conduct, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

320.    The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

321.    The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT VIII – ABUSE OF PROCESS

322.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 321 as though fully set forth herein.

323.     As set forth hereinabove, the Individual Law Enforcement Defendants willfully and maliciously misused and misapplied lawfully issued criminal processes against Plaintiff for purposes not intended or warranted by said processes.

324.     As set forth hereinabove, the Individual Law Enforcement Defendants issued or caused to be issued criminal processes not supported by probable cause, initiated under false pretenses, and initiated using falsified and/or fabricated evidence.

325.     As a direct and proximate result of the Individual Law Enforcement Defendants' abuse of process, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

326.     The actions of the Individual Law Enforcement Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

327.     The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT IX – DEFAMATION OF CHARACTER/LIBEL

328.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 327 as though fully set forth herein.

329.    The Putnam County Sheriff's Department (through its agents and/or employees) made false, malicious, and defamatory statements about Plaintiff in regard to "child concealment" charges brought against her in the form of, *inter alia*, written press releases, FaceBook posts, news conferences, and written and recorded interviews to news outlets.

330.    The Putnam County Sheriff's Department (through its agents and/or employees) made these derogatory statements about Plaintiff knowing they contained materially false information.

331.    As a direct and proximate result of these false and defamatory statements, Plaintiff suffered stigma and damage to her reputation, in addition to emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

332.    The Putnam County Commission is vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT X – DEFAMATION OF CHARACTER/SLANDER

333.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 332 as though fully set forth herein.

334.    The Putnam County Sheriff's Department (through its agents and/or employees) made false, malicious, and defamatory statements about Plaintiff in regard to "child concealment"

charges brought against her in the form of, *inter alia*, written press releases, FaceBook posts, news conferences, and written and recorded interviews to news outlets.

335.     The Putnam County Sheriff's Department (through its agents and/or employees) made these derogatory statements about Plaintiff knowing they contained materially false information.

336.     As a direct and proximate result of these false and defamatory statements, Plaintiff suffered stigma and damage to her reputation, in addition to emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

337.     The Putnam County Commission is vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT XI – CIVIL CONSPIRACY

338.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 337 as though fully set forth herein.

339.     As set forth hereinabove, the Individual Law Enforcement Defendants, Mr. McCoy and/or Victim Services Coordinator Smith acted in concert to defame, maliciously prosecute, and abuse judicial process to the detriment of Plaintiff.

340.     As set forth hereinabove, the Individual Law Enforcement Defendants, Mr. McCoy, and/or Victim Services Coordinator Smith had a meeting of the minds to accomplish the defamation, malicious prosecution, and abuse of judicial process to the detriment of Plaintiff.

341.    As set forth hereinabove, the Individual Law Enforcement Defendants, Mr. McCoy, and/or Victim Services Coordinator Smith committed overt acts to accomplish the defamation, malicious prosecution, and abuse of judicial process to the detriment of Plaintiff.

342.    As a direct and proximate result of the Individual Law Enforcement Defendants, Mr. McCoy, and/or Victim Services Coordinator Smith's tortious conspiracy, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

343.    The actions of the Individual Law Enforcement Defendants, Mr. McCoy, and/or Victim Services Coordinator Smith were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

344.    The Putnam County Commission and the City of Hurricane are vicariously liable for the acts of their employees committed within the scope of their employment.

## COUNT XII – NEGLIGENT SUPERVISION

345.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 344 as though fully set forth herein.

346.    At all times relevant hereto, the Putnam County Commission and the City of Hurricane owed Plaintiff a duty of care.

347.   The Putnam County Commission and the City of Hurricane owed Plaintiff a duty properly and adequately supervise their employees, especially those in positions of power and authority, to prevent them from negligently causing harm or injuries to others.

348.   Upon information and belief, the Individual Law Enforcement Defendants were not properly or adequately supervised by the Putnam County Commission and the City of Hurricane.

349.   Upon information and belief, the Putnam County Commission and the City of Hurricane allowed the Individual Law Enforcement Defendants to freely commit the negligent acts described hereinabove.

350.   Upon information and belief, had the Putnam County Commission and the City of Hurricane properly and adequately supervised the Individual Law Enforcement Defendants, the negligent acts of the Law Enforcement Defendants, described hereinabove, could have been prevented.

351.   The Putnam County Commission and the City of Hurricane have the authority to formulate, implement, and administer the policies, customs, and practices of their respective agencies and thus represent their official policies.

352.   As a direct and proximate result of the Putnam County Commission and the City of Hurricane's negligent conduct, Plaintiff suffered severe and permanent injuries.

353.   As a direct and proximate result of the Putnam County Commission and the City of Hurricane's negligent conduct, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life,

both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

## COUNT XIII – NEGLIGENT RETENTION

354.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 353 as though fully set forth herein.

355.     At all times relevant hereto, the Putnam County Commission and the City of Hurricane owed Plaintiff a duty of care.

356.     The Putnam County Commission and the City of Hurricane owed Plaintiff a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in negligent or otherwise wrongful conduct.

357.     Upon information and belief, the Putnam County Commission and the City of Hurricane knew or should have known that the Individual Law Enforcement Defendants were unfit employees, but retained them anyway.

358.     Upon information and belief, the Putnam County Commission and the City of Hurricane could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of their unfit employees, the Individual Law Enforcement Defendants.

359.     Upon information and belief, had the Putnam County Commission and the City of Hurricane not negligently retained the Individual Law Enforcement Defendants, the negligent acts of the Individual Law Enforcement Defendants, described hereinabove, could have been prevented.

360.     The Putnam County Commission and the City of Hurricane have the authority to formulate, implement, and administer the policies, customs, and practices of their respective agencies and thus represent their official policies.

361.    As a direct and proximate result of the Putnam County Commission and the City of Hurricane's negligent conduct, Plaintiff suffered severe and permanent injuries.

362.    As a direct and proximate result of the Putnam County Commission and the City of Hurricane's negligent conduct, Plaintiff suffered severe and permanent injuries and will seek compensation for: past and future medical expenses, past and future lost wages, damage to reputation, legal costs, supervised visitation costs, home confinement costs, child support payments, loss of custody of her biological child, and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

**WHEREFORE**, Plaintiff demands judgment in his favor against Defendants in an amount to be proven at trial, together with pre and post-judgment interest; for all damages recoverable under the law; for his attorneys' fees; for expenses and costs of litigation; for punitive damages; and for such other and further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**LESLIE GREENE**
**By Counsel**

*/s/ Russell A. Williams*
Steven P. New (WVSB No. 7756)
Russell A. Williams (WVSB No. 12710)
New, Taylor & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newtaylorlaw.com
russell@newtaylorlaw.com