IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LESLIE MAY GREENE, individually
and on behalf of her minor child, B.G.,

        Plaintiff,

v.                                        CIVIL ACTION NO. 3:21-0520

THE PUTNAM COUNTY COMMISSION,
MARK A. SORSAIA, individually as a
member of the Putnam County Prosecutor's Office,
JENNIFER SCRAGG KARR, individually as a
member of the Putnam County Prosecutor's Office,
ELIZABETH SUNYOG, individually as a
member of the Putnam County Prosecutor's Office,
MARIAN SMITH, individually as a
member of the Putnam County Prosecutor's Office,
TONY CRAIGO, individually as a
member of the Putnam County Sheriff's Department,
JODI B. TYLER, individually as a
member of the Kanawha County Prosecutor's Office,
MORGAN M. SWITZER, individually as a
member of the Kanawha County Prosecutor's Office,
C. J EASTRIDGE, individually as a
member of the West Virginia State Police,
THE CITY OF HURRICANE,
JOSHUA LUCAS, individually as a
member of the City of Hurricane Police Department, and
JAMES MARK MCCOY a/k/a MARK MCCOY, individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Jodi B. Tyler and Morgan M. Switzer's (Kanawha County Defendants) Motion to Dismiss. ECF No. 13. Defendants assert they are entitled to absolute prosecutorial immunity, and in the alternative, that Plaintiff's claims fail as a matter of

law. *Mem. in Supp. of Mot. to Dismiss*, ECF No. 14. For the following reasons, the Court **GRANTS** the Motion. ECF No. 13.

## I. FACTUAL BACKGROUND

The facts before the Court are complicated and involve several agencies and actors. Plaintiffs' lengthy complaint details a conspiracy where Defendants governmental agencies and employees worked together with Defendant Mark McCoy to frame her for several offenses and deprive her of the custody of her child.

Defendants[1] in this case include:

- Five prosecuting attorneys—three attorneys from Putnam County (Mark Sorsaia, Jennifer Scragg Karr, Elizabeth Sunyog) and two attorneys from Kanawha County (Jodi Tyler and Morgan Switzer)—sued in their individual capacities
- Marian Smith, a Victim Services Coordinator in the Putnam County Prosecuting Office
- The Putnam County Commission
- Tony Craigo, as a member of the Putnam County Sheriff's Department, in his individual capacity
- C.J. Eastridge, as a member of the West Virginia State Police, in his individual capacity
- The City of Hurricane
- Joshua Lucas, as a member of the City of Hurricane Police Department, in his individual capacity
- James Mark McCoy, in his individual capacity

Plaintiff brings the following claims against the Defendants:

| Count Number | Description | Defendants |
|---|---|---|
| I | Fourth Amendment Unreasonable Seizure Violations under 42 U.S.C. § 1983 (false arrest, unlawful search and seizure, false imprisonment, malicious prosecution/abuse of judicial process) | False arrest—Craigo, Lucas, Eastridge<br>Unreasonable search and seizure—Eastridge<br>False imprisonment—Individual Law Enforcement Defendants<br>Malicious Prosecution/abuse of process—Individual Law Enforcement Defendants |

---

[1] Plaintiff refers to the group comprised of Prosecutor Sorsaia, Prosecutor Karr, Prosecutor Sunyog, Sargent Craigo, Prosecutor Tyler, Prosecutor Switzer, Trooper Eastridge, and Officer Lucas as "Individual Law Enforcement Defendants." This Court will also refer to them as such for consistency.

| II | Fourteenth Amendment Substantive Due Process Violation under 42 U.S.C. § 1983 | Individual Law Enforcement Defendants |
|---|---|---|
| III | Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IV | Gross Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| V | Prima Facie Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VI | Intentional Infliction of Emotional Distress | Individual Law Enforcement Officers, Putnam County Commission and City of Hurricane (vicarious liability) |
| VII | Malicious Prosecution | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VIII | Abuse of Process | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IX | Defamation of Character/Libel | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| X | Defamation of Character/Slander | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| XI | Civil Conspiracy | Individual Law Enforcement Defendants, Defendant McCoy, Victim Services Coordinator Smith, Putnam County Commission and City of Hurricane (vicarious liability) |
| XII | Negligent Supervision | Putnam County Commission and City of Hurricane |
| XIII | Negligent Retention | Putnam County Commission and City of Hurricane |
| XIV | Loss/Impairment of Parental Consortium | All Defendants |

*See Am. Compl*., ECF No. 4. The Court will attempt to summarize the sequence of events giving rise to these claims.

Plaintiff and Defendant McCoy (McCoy) are the biological parents of the minor child B.G. *Id.* ¶ 20. Due to the events detailed below, Plaintiff has not seen B.G. without supervision since 2017. *Id.* ¶ 232.

Domestic Violence and Emergency Protection Orders

Plaintiff obtained a Domestic Violence Protective Order (DVPO) against McCoy that was valid from October 17, 2016, to December 20, 2017. *Id.* ¶¶ 22-25, 34; ECF No. 1-4. Plaintiff alleges that McCoy has a history of domestic violence towards her and B.G. *Id.* ¶ 21. The DVPO prohibited McCoy from contacting Plaintiff, being near her home, or from being within 100 feet of her. *Id.* ¶ 24. Plaintiff alleges that McCoy was only intermittently arrested and prosecuted for his multiple violations of the DVPO, *Id.* ¶¶ 26-40. She claims she informed Defendants Lucas and Karr of these violations on several occasions between June 22, 2017 and July 3, 2017, though neither party acted on her allegations. *Id.* ¶¶ 36-40.

On November 4, 2017, there was an altercation between McCoy and Plaintiff, the details of which are disputed but which resulted in damage to McCoy's vehicle. *Id.* ¶¶ 47-50. Plaintiff alleges that, following this incident, McCoy filed false misdemeanor charges against her, including destruction of property, battery, false reporting, and child endangerment (Misdemeanor Charges). *Id.* ¶ 50. Plaintiff was arrested by the Hurricane Police Department based on these charges and subsequently fired from her job as a high school teacher with the Putnam County Board of Education. *Id.* ¶¶ 52-54. Officer Lucas drafted the criminal complaint that provided the basis for the arrest warrant. *Id.* ¶ 51. Charges were also brought against McCoy for violating the DVPO. *Id.* ¶ 55.

Plaintiff claims McCoy filed a false and misleading Petition for an Emergency Protective Order (EPO) on November 9, 2017, in which he did not disclose that he was subject to the DVPO

and falsely stated that he was granted the custody of B.G. *Id.* ¶¶ 57-60; ECF No. 1-5. The EPO was granted, and Sargent Craigo served it on Plaintiff. ECF No. 4 ¶ 62, 65. During this encounter, Plaintiff informed him of the DVPO. *Id.* ¶ 66. Plaintiff filed a Petition of Domestic Violence Civil Contempt against McCoy for the violations of the DVPO and moved to vacate the EPO, to no avail. *Id.* ¶¶ 68-72; ECF Nos. 1-6, 1-7. McCoy eventually pleaded guilty for violating the DVPO and was sentenced to unsupervised probation, despite it being his third offense for violating the DVPO. *Id.* ¶ 75.

Plaintiff was ultimately found guilty on all misdemeanor charges following a bench trial on October 12, 2018, and timely appealed these convictions to the Circuit Court of Putnam County. *Id.* ¶¶ 132-34. Defendant Sorsaia signed the indictment, and Defendants Karr and Sunyong represented the Putnam County Prosecutor's Office in prosecuting her. *Id.* ¶¶ 116, 133; ECF No. 1-9. Because Plaintiff had previously reached out to Prosecutor Karr for help before the events that gave rise to her misdemeanor charges, Prosecutor Karr was disqualified from the matter, and the Circuit Court of Putnam County declared a mistrial via a Final Order entered on September 27, 2019. *Id.* ¶ 180; ECF No. 1-13.

First Indictment

On November 29, 2017, a criminal complaint was filed against Plaintiff, alleging she concealed B.G.'s whereabouts from authorities who were attempting to turn over custody to McCoy pursuant to the EPO. *Id.* ¶ 80. She was arrested on felony child concealment charges, and custody of B.G. was turned over to McCoy. *Id.* ¶ 88. When Plaintiff handed custody of B.G. over to authorities, a local news station was present and published a story that included photos and videos. *Id.* ¶ 89. The Putnam County Sheriff's Department also issued a press release and held a

news conference about the child concealment charges against Plaintiff. *Id.* ¶ 90. She was released on bond on December 7, 2017 and prohibited from contacting B.G. *Id.* ¶ 93.

After her release, Plaintiff found evidence contradicting the State's child concealment case on a phone McCoy left in her possession. *Id.* ¶ 94. These consisted of emails between McCoy and Victim Services Coordinator Smith (Smith) that established that McCoy, Smith, Sargent Craigo, and the Putnam County Sheriff's Department knew where Plaintiff and B.G. were during the period when Plaintiff was allegedly concealing her. *Id.* ¶¶ 94-101, 103; ECF No. 1-8. Plaintiff, through her defense attorney, requested all communications between McCoy and Smith, but the exculpatory emails were never produced in criminal discovery. ECF No. 4 ¶¶ 94-101, 103; ECF No. 1-8 She further alleges that McCoy and Smith were in a romantic relationship at the time. *Id.* ¶¶ 104-05.

Plaintiff was indicted by a Putnam County Grand Jury on July 11, 2018, on seven felony counts of child concealment, felony conspiracy to commit child concealment, and misdemeanor obstructing an officer. *Id.* ¶ 104; ECF No. 1-9. Plaintiff alleges that Sargent Craigo offered—and Putnam County Prosecutors allowed him to offer—false and misleading testimony to the Grand Jury, without presenting any exculpatory evidence. ECF No. 4 ¶¶ 108-15.

Plaintiff further alleges the prosecutors and Sargent Craigo should have known that there was no probable cause to charge Plaintiff, based on the unlawful EPO, fraudulent information presented by McCoy in his Petition for custody, and the emails between McCoy and Smith. *Id.* When asked why the Prosecutor's office was relentlessly pursuing these criminal charges against Plaintiff, Plaintiff alleges Prosecutor Karr responded the office believed that Plaintiff would either "take a plea or kill herself." *Id.* ¶ 136.

Second Indictment

On September 22, 2018, McCoy made allegations of stalking against Plaintiff to the West Virginia State Police. ECF No. 4 ¶ 117. Based on these charges, Trooper Eastridge obtained a search warrant for Plaintiff's cell phone. *Id.* ¶ 136; ECF No. 1-10. Plaintiff argues the search warrant was invalid and lacked probable cause because it was 1) unsworn, 2) based on false and misleading hearsay statements, and 3) no return of the execution was ever filed pursuant to West Virginia Rule of Criminal Procedure 41. ECF No. 4 ¶ 122-26. Plaintiff alleges the West Virginia State Police searched data and other information on her cell phone outside the scope of the search warrant.[2] *Id.* ¶¶ 128-31. Trooper Eastridge arrested Plaintiff on the felony stalking charges on January 29, 2019, and she was released on March 11, 2019 after remaining in jail for forty-two days. *Id.* ¶¶ 140.

A preliminary hearing was held on the stalking charges in February 6, 2019. *Id.* ¶ 142. Plaintiff alleges McCoy and Trooper Eastridge made false statements, and though they knew the testimony to be false, Prosecutors Sorsaia and Karr allowed the witnesses to perjure themselves anyway. *Id.* ¶¶ 143-51. During this testimony, Plaintiff claims Defendant Smith assisted McCoy in presenting false statements by "nodding along" during portions of his testimony that involved conversations with her. *Id.* ¶ 152.

On March 7, 2019, a Putnam County Grand Jury indicted Plaintiff on fifteen counts of felony stalking, felony interception of electronic communications, and other misdemeanor

---

[2] Plaintiff also notes a forensic report prepared by the West Virginia State Police Crime Lab (WVSP Forensic Report). This report analyzed GPS data and concluded that Plaintiff's cellular phone was not in the vicinity of McCoy on the dates he claims she was stalking him. ECF No. 4 ¶ 137. While the Complaint notes that the report was prepared on October 26, 2019, it later claims the report was produced to Plaintiff's counsel on January 29, 2019. *Id.* ¶¶ 137, 141. This appears to be a typo, and the Court presumes that the report was actually prepared on October 26, 2018.

-7-

offenses. *Id.* ¶ 154; ECF No. 1-12. Plaintiff alleges that Prosecutors Sorsaia and Karr and Trooper Eastridge presented false testimony and unlawfully obtained cellphone information at the Grand Jury hearing. *Id.* ¶¶ 156-72. Plaintiff alleges that Trooper Eastridge, in particular, fabricated evidence by cropping a photo of McCoy's relative's home found on Plaintiff's phone to remove portions that establish it was not taken by Plaintiff. *Id.* ¶ 161. Plaintiff was released on bond and placed on home confinement. *Id.* ¶¶ 174-75. She spent 138 days on home confinement and was released on August 16, 2019. *Id.* ¶ 179.

After the misdemeanor charges were dismissed, Prosecutor Sorsaia dismissed the charges in the First and Second Indictments. *Id.* ¶ 181.

<u>Third Indictment</u>

On November 14, 2019, a Putnam County Grand Jury once again indicted Plaintiff, this time on three felony counts of concealment of a minor child, stalking, and interception of electronic communications. *Id.* ¶ 182; ECF No. 1-14. Plaintiff alleges that Defendants Sorsaia, Craigo, and Eastridge offered false and misleading testimony, privileged information, and fabricated evidence to the Grand Jury to obtain this indictment and that, once again, prosecutors presented no exculpatory evidence. ECF No. 4 ¶¶ 183-210.

Because a conflict with the Putnam County Prosecutor's office had previously resulted in a mistrial, Prosecutor Sorsaia withdrew from the case and Prosecutors Tyler and Switzer from the Kanawha County Prosecutor's office were appointed as Special Prosecutors. *Id.* ¶¶ 211-13. Because knowledge an information possessed by the Putnam County Prosecutor's office was imputed to Prosecutors Tyler and Switzer, Plaintiff asserts they knew or should have known about the unlawful misconduct perpetrated by the Putnam County Prosecutor's office, the West Virginia State Police Department, and McCoy. *Id.* ¶ 214.

A trial on this indictment was held on June 28, 2021. *Id.* ¶ 223. Plaintiff alleges prosecutors did not release exculpatory information to Plaintiff until just days before trial and only when threatened with a *Brady* violation. *Id.* ¶ 222. Plaintiff also implies that not all exculpatory emails between Defendants McCoy and Smith were released to her at the time. *Id.* ("[Prosecutors] waited until days before Plaintiff's criminal trial to disclose some (but not all) of the exculpatory November E-mails").

Defendants Tyler and Switzer dismissed with prejudice the felony stalking charges due to lack of evidence on the day of the trial. *Id.* ¶ 224. On July 1, 2021, a jury returned a not-guilty verdict on the State's felony child concealment charge but convicted Plaintiff of felony interception of electronic communication based on the information obtained by the search warrant. *Id.* ¶¶ 225, 230; ECF No. 1-15. Plaintiff has filed a motion for a new trial on these charges and if that motion is denied, she will appeal the matter to the Supreme Court of West Virginia. ECF No. 4 ¶ 231.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

When considering whether the plaintiff has stated a plausible claim, courts accept all factual allegations in the complaint as true. *Id.* Even so, plaintiffs must set forth the grounds for an entitlement to relief that is more than mere labels and conclusions. *Bell Atl. Corp.*, 550 U.S. at 555.

"[A] formulaic recitation of the elements of a cause of action will not do," *id.*, nor will a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.

A court must conduct a context-specific analysis to determine whether a complaint states a plausible claim, which includes drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court's analysis shows that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the motion to dismiss should be granted. *Id*. However, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

The Kanawha County Defendants assert they are entitled to prosecutorial immunity for Plaintiff's 42 U.S.C. § 1983 claims against them. In the alternative, they contend that Plaintiff's claims fail as a matter of law. Because qualified immunity is "an immunity from suit rather than a mere defense to liability" and "effectively lost if a case is erroneously permitted to go to trial," the Court addresses this issue first. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Kanawha County Defendants are entitled to prosecutorial immunity because their actions fall within the scope of initiating and pursuing Plaintiff's prosecution. "'[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' [is] not amenable to suit under § 1983." *Kalina v. Fletcher*, 533 U.S. 118, 123–24 (1997) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Burns v. Reed*, 500 U.S. 478 (1991). Granting prosecutors absolute immunity promotes the greater public good in that it allows "vigorous and fearless performance" of

prosecutorial duty, a fundamental piece of a well-functioning criminal justice system. Syl. pt. (b), *Imbler*, 424 U.S. 409.

In her Response to Kanawha Defendant's Motion to Dismiss, Plaintiff correctly counters that not every action of a prosecutor is subject to absolute immunity. ECF No. 23 at 4-5. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other.'" *Buckley*, 509 U.S. at 273 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (C.A.7 1973); *Kalina*, 522 U.S. at 126–27. To determine whether a prosecutor's actions are entitled to absolute immunity, the nature of the action itself—rather than the identity of who performed it—must be examined. *Kalina*, 522 U.S. at 127.

The nature of the Kanawha County Prosecutor's actions indicate they are entitled to absolute immunity. Plaintiff rightly points out the importance of timing in determining whether a prosecutor's actions are investigative or advocative in function. ECF No. 23 (citing *Annappareddy v. Pascale*, 996 F.3d 120, 139 (4th Cir. 2021)). Actions taken by a prosecutor prior to probable-cause determination are more likely investigative in nature, whereas actions taken after are more likely advocative or prosecutorial in nature. *Annappareddy*, 996 F.3d at 139.

The Kanawha County Defendants' actions are advocative in nature. West Virginia provides absolute immunity for prosecutors engaging in prosecutorial functions such as "initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process." *Mooney v. Frazier*, 693 S.E.2d 333, 345 n.12 (W. Va. 2010). Absolute prosecutorial immunity cannot be defeated even where a party shows a prosecutor acted wrongfully or maliciously or where the party has prevailed on appeal. *Id.* The Fourth Circuit has held prosecutors are entitled to absolute immunity for actions including

deciding whether evidence was exculpatory and presenting false or perjured evidence. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (holding prosecutor was entitled to absolute immunity where he failed to disclose exculpatory evidence to a defendant and was accused of conspiring to present false evidence); *Brown v. Daniel*, 230 F.3d 1351, at *2 (4th Cir. 2000) (table decision) (holding prosecutors were entitled to absolute immunity where the plaintiff alleged they used perjured testimony and maliciously prosecuted him).

The Kanawha County Defendants' conduct in this action implicates a solely advocative function. Plaintiff only alleges the Kanawha County Defendants are at fault for presenting testimony they knew or should have known was false and for failing to disclose exculpatory material in a timely manner. Both actions are ones the Fourth Circuit has specifically designated as judicial functions warranting absolute immunity. Even if Plaintiff were to claim that Kanawha County Defendants intentionally or maliciously used information they knew was illegally obtained or even intentionally or maliciously withheld exculpatory evidence, it would still not be enough to defeat the absolute immunity afforded to prosecutors performing actions intimately associated with the judicial process. Here, just as it is not enough to claim prosecutors are liable for maliciously performed judicial functions, it is not enough to allege they are liable for actions they knew or should have known were based on false information, as Plaintiff has done here.

Further, while not dispositive, timing also indicates Kanawha County Defendants are shielded by absolute immunity. Plaintiff's Complaint notes that the Kanawha County Defendants should have known the Unverified Search Warrant lacked probable cause, but this does not negate the fact that their actions occurred after a probable-cause determination had been made. ECF No. 4 ¶¶ 218, 220. The focal point in *Annappareddy* is the timing of the conduct, not the strength of the probable-cause determination. Because a determination of probable cause had

been made (even if incorrectly, as Plaintiff contends), it is more likely that Kanawha County Defendants' conduct was advocative, rather than investigative, in function due to when it occurred in the judicial process.

Plaintiff seeks to work around this absolute immunity by arguing the Kanawha County Defendants were part of a conspiracy with all other defendants in this matter. Prosecutorial immunity, she argues, does not shield any of the Kanawha County Defendants from any count in her Complaint that involves non-prosecutorial, investigative acts of a co-conspirator. ECF No. 23 at 8. She cites Seventh Circuit caselaw, primarily *Pena v. Mattox*, 84 F.3d 894 (7th Cir. 1996), for the proposition that the law of conspiracy imputes to a prosecutor the acts of other, non-prosecutor members of the conspiracy. *Id.* at 7.

One major obstacle stands in the way of this theory though: she has not pled any facts that show or even suggest Kanawha County Defendants shared a common plan with the other alleged perpetrators. Because there are insufficient allegations of conspiracy, Defendants cannot be imputed with the non-prosecutorial actions of their alleged co-conspirators.

West Virginia law indicates that civil conspiracy is not a stand-alone cause of action; rather, it is a "legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves" but who shared a common plan with the perpetrators to commit it. *Porter v. Brakem Am., Inc.*, No. 3:19-cv-0572, 2021 WL 664850, at *5 (S.D.W. Va. Feb. 19, 2021), *aff'd*, No. 21-1265, 2021 WL 5076362 (4th Cir. Nov. 2, 2021). It requires "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009).

A conspiracy claim under § 1983 requires one additional element—a deprivation of plaintiff's constitutional right. To establish this claim, a plaintiff must present evidence that 1) the defendants acted jointly in concert, 2) an overt act was done in furtherance of the conspiracy, and 3) the overt act resulted in deprivation of plaintiff's constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

The burden to prove conspiracy is weighty. *Penly v. McDowell Cnty. Bd. Of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (quoting *Hinkle*, 81 F.3d at 421). Plaintiffs must plead specific facts in a nonconclusory fashion, *Gooden v. Howard Cnty.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (internal citations omitted), and the evidence must "at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 422; *see also Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 2003) ("Bald allegations that a conspiracy existed are insufficient.").

Plaintiff fails to state a claim or even a theory of conspiracy. Instead, she puts forth bald allegations of conspiracy without providing sufficient factual matter. The Complaint's two vague references to this conspiracy theory of liability—charging all Defendants with "a systematic and concerted pattern of law enforcement, prosecutorial, and judicial misconduct" and noting that McCoy acted in concert with Defendants Sorsaia, Karr, and Eastridge "(and possibly others)" — are conclusory statements devoid of facts that support an inference of a common or unlawful plan. ECF No. 4 ¶¶ 233, 340. Rather, the statements baldly allege a plan, without referencing or even suggesting a factual basis for an agreement or mutual understanding among parties.

## IV. CONCLUSION

Kanawha County Defendants are absolutely immune from Plaintiff's claims. Plaintiff has only implicated them in conduct that involves their advocative, rather than investigative function.

Further, because Plaintiff failed to provide a sufficient factual basis to allow the Court to reasonably infer that Kanawha County Defendants were engaged in a conspiracy, the Court does not address the issue of whether the actions of alleged co-conspirators could be imputed to them such that it defeats absolute immunity. The Kanawha County Defendants' Motion to Dismiss is thereby **GRANTED**. ECF No. 13.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:        September 30, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE