IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LESLIS MAY GREENE, individually
and on behalf of her minor child, B.G.,

           Plaintiff,

v.                                        CIVIL ACTION NO. 3:21-0520

THE PUTNAM COUNTY COMMISSION,
MARK A. SORSAIA, individually as a
member of the Putnam County Prosecutor's Office,
JENNIFER SCRAGG KARR, individually as a
member of the Putnam County Prosecutor's Office,
ELIZABETH SUNYOG, individually as a
member of the Putnam County Prosecutor's Office,
MARIAN SMITH, individually as a
member of the Putnam County Prosecutor's Office,
TONY CRAIGO, individually as a
member of the Putnam County Sheriff's Department,
JODI B. TYLER, individually as a
member of the Kanawha County Prosecutor's Office,
MORGAN M. SWITZER, individually as a
member of the Kanawha County Prosecutor's Office,
C. J EASTRIDGE, individually as a
member of the West Virginia State Police,
THE CITY OF HURRICANE,
JOSHUA LUCAS, individually as a
member of the City of Hurricane Police Department, and
JAMES MARK MCCOY a/k/a MARK MCCOY, individually,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Joshua Lucas and the City of Hurricane's (Hurricane Defendants) Motion to Dismiss. ECF No. 37. Defendants contend that certain claims are time-barred, they are entitled to statutory and qualified immunity, and other claims fail as a

matter of law. Defs.' Mem. in Supp. of Their Mot. to Dismiss, ECF No. 38. For the following reasons, the Motion is **GRANTED**. ECF No. 37.

## II. FACTUAL BACKGROUND

The facts before the Court involve a complicated set of agencies and actors. Plaintiff's lengthy complaint alleges a conspiracy where Defendants governmental agencies and employees worked together with Defendant Mark McCoy (McCoy), the father of Plaintiff's child, to frame her for several offenses and deprive her of the custody of her child.

Defendants[1] in this case include:

- Five prosecuting attorneys—three attorneys from Putnam County (Mark Sorsaia, Jennifer Scragg Karr, Elizabeth Sunyog) and two attorneys from Kanawha County (Jodi Tyler and Morgan Switzer)—sued in their individual capacities
- Marian Smith, a Victim Services Coordinator in the Putnam County Prosecuting Office
- The Putnam County Commission
- Tony Craigo, as a member of the Putnam County Sheriff's Department, in his individual capacity
- C.J. Eastridge, as a member of the West Virginia State Police, in his individual capacity
- The City of Hurricane
- Joshua Lucas, as a member of the City of Hurricane Police Department, in his individual capacity
- James Mark McCoy, in his individual capacity

Plaintiff brings the following claims against the Defendants:

| Count Number | Description | Defendants |
|---|---|---|
| I | Fourth Amendment Unreasonable Seizure Violations under 42 U.S.C. § 1983 (false arrest, unlawful search and seizure, false imprisonment, malicious prosecution/abuse of judicial process) | False arrest—Craigo, Lucas, Eastridge<br>Unreasonable search and seizure—Eastridge<br>False imprisonment—Individual Law Enforcement Defendants<br>Malicious Prosecution/abuse of process—Individual Law Enforcement Defendants |

---

[1] Plaintiff refers to the group comprised of Prosecutor Sorsaia, Prosecutor Karr, Prosecutor Sunyog, Sargent Craigo, Prosecutor Tyler, Prosecutor Switzer, Trooper Eastridge, and Officer Lucas as "Individual Law Enforcement Defendants." This Court will also refer to them as such for consistency.

| II | Fourteenth Amendment Substantive Due Process Violation under 42 U.S.C. § 1983 | Individual Law Enforcement Defendants |
|---|---|---|
| III | Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IV | Gross Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| V | Prima Facie Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VI | Intentional Infliction of Emotional Distress | Individual Law Enforcement Officers, Putnam County Commission and City of Hurricane (vicarious liability) |
| VII | Malicious Prosecution | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VIII | Abuse of Process | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IX | Defamation of Character/Libel | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| X | Defamation of Character/Slander | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| XI | Civil Conspiracy | Individual Law Enforcement Defendants, Defendant McCoy, Victim Services Coordinator Smith, Putnam County Commission and City of Hurricane (vicarious liability) |
| XII | Negligent Supervision | Putnam County Commission and City of Hurricane |
| XIII | Negligent Retention | Putnam County Commission and City of Hurricane |
| XIV | Loss/Impairment of Parental Consortium | All Defendants |

*See* Am. Compl., ECF No. 4. While the Court has provided a more detailed summary of the events giving rise to these claims in its Memorandum Opinion and Order on Defendants Tyler and Switzer's Motion to Dismiss, ECF No. 45 at 2-9, it will attempt to summarize the facts relating to these specific defendants below.

Plaintiff alleges that on or about June 22, 2017, and July 3, 2017, Defendant Lucas and the Hurricane Police Department failed to arrest McCoy, even after Plaintiff spoke to Defendant Lucas and his superior on the phone about McCoy violating a Domestic Violence Protective Order (DVPO) issued on October 17, 2016. ECF No. 4 ¶¶ 35-36, 38-39. Several months later, Defendant Lucas drafted a criminal complaint following a November 4, 2017 incident between Plaintiff and McCoy. *Id.* ¶ 51. Following the incident, McCoy presented to the Hurricane Police Department, claiming Plaintiff had rammed into and damaged his vehicle. *Id.* ¶¶ 47, 50. The criminal complaint drafted by Defendant Lucas served as the basis for an arrest warrant for Plaintiff. *Id.* ¶ 51.

Plaintiff was arrested on or about November 6, 2017, on misdemeanor charges stemming from the incident, including destruction of property, battery, false reporting, and child endangerment. *Id.* ¶¶ 50-53. She was convicted of the charges in Magistrate Court, but they were dismissed with prejudice on appeal due to a mistrial. *Id.* ¶¶ 132, 134, 177, 180. Though the appellate court had informed the parties of its decision to dismiss the charges with prejudice in a letter dated August 14, 2019, the Final Dismissal Order was not entered until September 27, 2019. ECF No. 1-13.

Plaintiff alleges that Hurricane Defendants conspired with other defendants in this case to "maliciously prosecute her based on false, fraudulent, and fabricated evidence, resulting in her being wrongfully arrested, vindictively prosecuted, and losing parental rights to her minor child." Pl.'s Mem. of Law in Opp. to the Hurricane Defs.' Mot. to Dismiss, ECF No. 42 at 1. Specific to Hurricane Defendants, she alleges both that Defendant Lucas knowingly filed false misdemeanor charges against her and that these charges were later used to support a fraudulent Emergency Protective Order, causing Plaintiff to lose custody of her child. *Id.* at 1-2. She further alleges that she was maliciously prosecuted based on these misdemeanor charges. *Id.* at 2.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

When considering whether the plaintiff has stated a plausible claim, courts accept all factual allegations in the complaint as true. *Id.* Even so, plaintiffs must set forth the grounds for an entitlement to relief that is more than mere labels and conclusions. *Bell Atl. Corp.*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," *id.*, nor will a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.

A court must conduct a context-specific analysis to determine whether a complaint states a plausible claim, which includes drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court's analysis shows that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the motion to dismiss should be granted. *Id.* However, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556.

## III. ANALYSIS

As a threshold matter, the Court addresses Plaintiff's conspiracy theory of liability, as well as her claim for Civil Conspiracy (Count XI). In other filings, Plaintiff argues that, based on *Pena v. Mattox*, 84 F.3d 894 (7th Cir. 1996), the law of conspiracy imputes the acts of other members of the alleged conspiracy to all defendants. Pl.'s Corrected Mem. of Law in Opp. to Defs. Tyler

and Switzer's Mot. to Dismiss, ECF No. 23 at 7. Here, too, she hints at a theory of liability based on conspiracy that would subject Hurricane Defendants to liability for actions beyond those directly attributed to them in the Complaint. ECF No. 42 at 1 ("Plaintiff alleges that the Hurricane Defendants conspired with the other individual Defendants in this case to, *inter alia*, maliciously prosecute"); ECF No. 42 at 17 ("In Count II, Plaintiff alleges that Officer Lucas'[sic] unlawful actions—and those of his co-conspirators—violated her Fourteenth Amendment right[s]").

Plaintiff has not pleaded facts sufficient to establish that this theory of liability is facially plausible. West Virginia law indicates that civil conspiracy is not a standalone cause of action; rather, it is a "legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves" but who shared a common plan with the perpetrators to commit it. *Porter v. Brakem Am., Inc.*, No. 3:19-cv-0572, 2021 WL 664850, at *5 (S.D.W. Va. Feb. 19, 2021), *aff'd*, No. 21-1265, 2021 WL 5076362 (4th Cir. Nov. 2, 2021). To establish a theory of liability based on conspiracy, a plaintiff must show that two or more persons acted in concert "to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009).

Civil conspiracy under 42 U.S.C. § 1983, however, is a standalone claim. To establish this claim, a plaintiff must show that 1) the defendants acted jointly in concert, 2) an overt act was done in furtherance of the conspiracy, and 3) the overt act resulted in deprivation of a plaintiff's constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

For a conspiracy claim to survive a motion to dismiss, Plaintiffs must plead specific facts in a nonconclusory fashion, *Gooden v. Howard Cnty.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (internal citations omitted), and the evidence must "at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common

and unlawful plan." *Hinkle*, 81 F.3d at 422. "Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 2003).

Here, Plaintiff has failed to provide sufficient factual matter to support a theory of liability involving conspiracy under state law or a standalone claim for civil conspiracy under § 1983. The Complaint contains only minor, vague references to conspiracy: for example, charging all Defendants with "a systematic and concerted pattern of law enforcement, prosecutorial, and judicial misconduct" and claiming that McCoy acted in concert with Defendants Sorsaia, Karr, and Eastridge "(and possibly others)." ECF No. 4 ¶¶ 233, 340. These statements provide no factual basis to infer that Defendants were acting in concert. Therefore, to the extent that Plaintiff has not pleaded sufficient facts to suggest a conspiracy among Defendants, the Court addresses only those Counts that directly implicate Hurricane Defendants. Further, the Court grants Defendants' Motion to Dismiss as to Count IX.

A. <u>While Plaintiff's Fourth Amendment claim is not time-barred, Defendant Lucas is protected by qualified immunity from the 42 U.S.C. § 1983 claims in Counts I and II.</u>

As Plaintiff argues, her malicious prosecution claim under 42 U.S.C. § 1983 should be framed as a Fourth Amendment claim for unreasonable seizure. *Evans v. Chambers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). To state a malicious prosecution claim, a plaintiff must allege "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)).

A § 1983 malicious prosecution claim is subject to a two-year statute of limitations. "[A]ll claims filed in West Virginia pursuant to 42 U.S.C. § 1983 are personal injury actions governed by the two-year statute of limitations set forth in W. Va. Code § 55-2-12(b)." *Rodgers v. Corp. of*

*Harpers Ferry*, S.E.2d 358, 362 (W. Va. 1988). A Fourth Amendment claim under § 1983 based on malicious prosecution accrues when the "favorable termination" element has been met. *Lambert*, 223 F.3d at 262 n.3 (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)).

Plaintiff's Fourth Amendment claim involving Defendant Lucas is not time-barred. The statute of limitations did not begin to run until the last element of her malicious prosecution claim was met—that is, when her charges were favorably terminated. Defendant argues that the statute of limitations should begin to run as soon as Plaintiff had notice of the dismissal of her misdemeanor charges on August 14, 2019. However, this contradicts the clear instructions laid out in *Lambert*: the final element of a malicious prosecution claim is met when proceedings terminate. The proceeding did not terminate when Plaintiff received notice of a favorable ruling, but rather when the proceedings actually terminated. Because the charges were formally dismissed in an order entered on September 27, 2019, and Plaintiff filed her Complaint on September 10, 2021, Plaintiff brought the malicious prosecution within the two-year statute of limitations applicable to § 1983 claims.

Defendants argue, in the alternative, that the favorable termination element of malicious prosecution has not been met because dismissal of Plaintiff's charges rested on a procedural defect, rather than an element bearing more on innocence. They cite *Denmark v. Starcher*, No. 1:14-CV-58, 2016 WL 1122085 (N.D.W. Va. March 22, 2016) for the proposition that "only terminations that indicate that the accused is innocent ought to be considered favorable." ECF No. 43 at 6 (quoting *Denmark*, 2016 WL 1122085 at *7). However, the U.S. Supreme Court recently ruled that "a plaintiff need only show that [her] prosecution ended without a conviction" to fulfill the favorable termination element of a § 1983 malicious prosecution claim. *Thompson v. Clark*, 142

S. Ct. 1332, 1335 (2022). Plaintiff's first two felony indictments and her misdemeanor convictions were dismissed and ended without a conviction. The favorable termination element for all three charges has therefore been met.

### 1. Qualified Immunity for Defendant Lucas

Though Plaintiff's Fourth Amendment § 1983 claim is viable, Officer Lucas is entitled to qualified immunity for his conduct as alleged. Government officials performing discretionary duties in their individual capacity are generally afforded qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances the need to hold public officials accountable for irresponsible conduct with the need to protect them from harassment and distraction when performing duties reasonably. *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (quoting *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015)).

Defendant Lucas was performing discretionary duties. West Virginia has held that the decision to arrest is generally a discretionary judgment of a law enforcement officer, *W. Va. State Police v. J.H.*, 856 S.E.2d 679, 697 (W. Va. 2021), and other districts have held that an officer drafting a criminal complaint also falls under discretionary conduct. *See Farrelly v. City of Concord*, 902 F. Supp. 2d 178, 205 (D.N.H. 2012).

### 2. Violation of a clearly established constitutional or statutory right

Plaintiff argues that Defendant Lucas is not entitled to qualified immunity because he deprived Plaintiff of a clearly established constitutional right. ECF No. 42 at 5-7. A plaintiff can show an official is not entitled to qualified immunity only by pleading facts sufficient to establish 1) the official violated a statutory or constitutional right and 2) the right was "clearly established" at the time of the challenged conduct. *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Plaintiff, in particular, points to her allegation that

Defendant Lucas initiated criminal proceedings against her that were not supported by probable cause, a violation of her Fourth Amendment right against unreasonable seizure. ECF No. 42 at 7. The Court also analyzes her allegation as to Defendant Lucas's failure to arrest McCoy to determine whether there was a violation of Plaintiff's statutory rights. ECF No. 4 ¶¶ 36, 38, 39.

As to the initiation of criminal proceedings, there is no constitutional violation because the proceedings were supported by probable cause. Probable cause is assessed based on the totality of the circumstances. *Nero v. Mosby*, 890 F.3d 106, 130 (4th Cir. 2018). It requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Runner*, 43 F.4th 417, 423 (4th Cir. 2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). The Court pays great deference to a magistrate's finding of probable cause. *State v. Dumire*, No. 19-1086, 2020 WL 7391153, at *4 (W. Va. Dec. 16, 2020) (quoting *State v. Thomas*, 421 S.E.2d 227, 235 (W. Va. 1992)).

To support a claim that Plaintiff was seized without probable cause pursuant to legal process, she must show that Defendant Lucas "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Launi v. James*, No. 20-2010, 2021 WL 5294933, at *2 (4th Cir. Nov. 15, 2021) (quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)). Plaintiff must also establish that the false statement was material, or that after striking the false statements from the affidavit, there would not be enough information to support a finding of probable cause. *Id.*

Plaintiff has not sufficiently pleaded that Defendant Lucas deliberately made false statements in the criminal complaint, omitted material facts to make the complaint misleading, or that any false statements contained in it were material to the finding of probable cause. Rather, she

only notes that 1) McCoy presented to Defendant Lucas to file false charges and 2) that the arrest warrant for the misdemeanor charges was based on a criminal complaint drafted by Defendant Lucas. ECF No. 4 ¶¶ 50-51. The allegations only implicate McCoy in making false statements. As pleaded, Defendant Lucas's only fault was believing McCoy's allegations, which does not rise to the level needed to show that Plaintiff was seized without probable cause. Absent facts indicating that Defendant Lucas maliciously or intentionally submitted a fraudulent affidavit, the Court defers to the magistrate's initial finding of probable cause.

As for the failure to arrest, there is no statutory violation—where the evidence is based solely on a verbal or written allegation of violation, officers are not required to arrest a respondent. Plaintiff cites West Virginia Code § 48-27-1001(a) for the proposition that Defendant Lucas, and other law enforcement officers, were required to arrest McCoy upon receiving evidence that McCoy violated the DVPO. ECF No. 4 ¶ 41. She claims that "[u]nder West Virginia law, when law enforcement has evidence of an individual . . . in willful violation of a protective order, law enforcement '<u>shall immediately arrest</u>' said individual." *Id.* (quoting W.Va. Code § 48-27-1001(a)).

Plaintiff misstates, or perhaps selectively quotes, the provision. The statute only requires an immediate arrest "[w]hen a law-enforcement officer <u>observes</u> any respondent abuse the petitioner or minor children or the respondent's physical presence at any location in knowing and willful violation of the terms of an emergency or final protective order." W.Va. Code § 48-27-1001(a) (emphasis added). In other words, the statute couches this mandatory language within a limited set of circumstances—that is, when an officer observes abuse by the respondent or the respondent's physical presence in a location that violates the DVPO. Nothing in the Complaint alleges that Defendant Lucas observed McCoy at Plaintiff's residence.

Rather, based on the facts alleged in the Complaint, Defendant Lucas only had the statements of Plaintiff and her son as a basis to make an arrest. ECF No. 4 ¶ 38. Therefore, the applicable provision is West Virginia Code § 48-27-1001(b)(2), which only provides an officer "may arrest the perpetrator" where the officer has received a verbal or written allegation of facts constituting a violation. Because Defendant Lucas was not required to arrest McCoy given the circumstances, there was no violation of Plaintiff's statutory rights.

Because there was no violation of a statutory or constitutional right, the Court need not address whether these rights were clearly established at the time of the allegedly oppressive conduct. The facts pleaded, even when taken as true, do not overcome Defendant Lucas's qualified immunity.

### 3. Fraudulent, malicious, or otherwise oppressive conduct

Plaintiff also notes an executive official is not immune when he has committed fraudulent, malicious, or otherwise oppressive conduct. *Parkulo v. W. Va. Bd. of Probation & Parole*, 483 S.E.2d 507, 510 (W. Va. 1996). Attempting to discredit Defendants' argument as to qualified immunity, she cites to a number of paragraphs in the Complaint, all of which she claims establish that Officer Lucas maliciously or fraudulently used false or fabricated evidence against her. ECF No. 42 at 8 (listing paragraphs).

This argument is also without merit. The paragraphs Plaintiff highlights do nothing more than state legal conclusions. The closest the Complaint comes to alleging any wrongful behavior by Defendant Lucas is when it implies he should not have believed McCoy's statement in drafting the criminal complaint. *See id.* ¶¶ 50-51 (claiming "McCoy presented to Officer Lucas . . . and filed false charges against Plaintiff" that were later used as the basis for an arrest warrant).

Defendant Lucas's decision to believe McCoy's statement does not rise to the level of fraudulent, malicious, or otherwise oppressive conduct.

The Complaint provides no factual basis sufficient to overcome Defendant Lucas's defense of qualified immunity. Even when taken as true, the facts alleged do not establish that he acted fraudulently or maliciously or even that he violated Plaintiff's clearly established statutory or constitutional rights in the process.

B. Plaintiff's Substantive Due Process claim (Count II) fails as a matter of law.

Plaintiff also alleges that Defendants violated her Fourteenth Amendment right to substantive due process by invading her parental rights to her minor child. ECF No. 4 ¶¶ 280, 284. Other circuits have held that parents can allege violations of substantive due process when the state impedes their custody of or ability to care for their children. *See Southerland v. City of New York*, 680 F.3d 127, 142 (2nd Cir. 2012); *Farley v. Farley*, Nos. 98-6114, 98-6115, 2000 WL 1033045, at *4 (6th Cir. July 19, 2000). The Fourth Circuit has yet to rule on the availability of such a claim. Even assuming the availability of a substantive due process claim based on parental rights in this Circuit, Defendant Lucas is entitled to qualified immunity, for reasons discussed in Section III.A., *supra*.

Additionally, as a matter of law, substantive due process is not the amendment under which this alleged violation should be couched. "Where a particular Amendment provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (internal quotations omitted). The Fourth Amendment provides the appropriate foundation for a malicious prosecution claim, rather than the more

generalized claim for a violation of substantive due process. 223 F.3d at 261-62; *see also* Section III.A., *supra*.

### C. Hurricane Defendants are immune from Plaintiff's claims for negligence (Counts III, IV, and V).

Plaintiff alleges that Hurricane Defendants are also liable for negligence, gross negligence, and prima facie negligence under the Crime Victims' Rights Act. Defendant Lucas contends that, as with the § 1983 claims discussed in Section III.A., *supra*, he is entitled to qualified immunity. West Virginia law provides that, in the absence of a contract waiving qualified immunity, the doctrine "bars a claim of mere negligence against . . . a [government] officer . . . acting within the scope of his or her employment with respect to discretionary judgments, decisions, and actions." Syl. Pt. 6, *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995).

Generally, whether an officer was acting within the scope of employment is a question of fact for a jury. *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 768 (W. Va. 2014). However, when the facts are not disputed and a factfinder could not reasonably determine that an act was committed within the scope of employment, a court is not precluded from making this finding as a matter of law. *Id.*

Turning to the allegations in the Amended Complaint, Plaintiff fails to allege any facts that establish Defendant Lucas was acting outside the scope of his employment with respect to his discretionary judgments, decisions, and actions. A court should examine the act's purpose in making this determination—if an employer directed the act or it was "an ordinary and natural incident or result of" the directed act, the act falls within the scope of employment. *Id.* Conversely, conduct is not within the scope of employment if it is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

*Id.* (quoting Restatement (Second) of Agency § 228 (1958)).

The Court finds that Defendant Lucas's allegedly unlawful conduct fits squarely within the scope of his employment. A law enforcement officer is authorized, and indeed compelled, to draft criminal complaints and conduct arrests (or decline to arrest) as necessary. The conduct occurred while Defendant Lucas was on duty and actuated by an intent to serve his employer. Defendant Lucas has, therefore, established that he is entitled to qualified immunity from Plaintiff's negligence claims.[2]

Even assuming, *arguendo*, that he was not entitled to qualified immunity, Defendant Lucas's alleged acts are intentional in nature, and intentional acts cannot form the basis of a claim for negligence. *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013). Regarding his drafting of the criminal complaint, Plaintiff alleges that Defendant Lucas acted maliciously, oppressively, or fraudulently. ECF No. 42 at 8. While this conduct may therefore give rise to an intentional tort, it cannot support liability based on his negligence. Likewise, the failure to arrest McCoy is similarly intentional—either Defendant Lucas intended to arrest McCoy or he did not.

Finally, as to Defendant City of Hurricane, the City is protected from liability when an employee acts intentionally. The West Virginia Governmental Tort Claims and Insurance Reform Act restricts the liability of political subdivisions to certain instances of negligence. W. Va. § 29-12A-4(c). A political subdivision like the City of Hurricane cannot be held liable for an employee's intentional malfeasance. *State ex rel. Grant Cnty. Comm'n v. Nelson*, 244 W. Va. 649, 660, 856 S.E.2d 608, 619 (2021) (quoting *Zirkle v. Elkins Rd Pub. Svc. Dist..*, 655 S.E.2d 155, 160 (2007)

---

[2] Likewise, for the same reasons put forth in Section III.A., *supra*, Plaintiff has not pleaded facts sufficient to overcome Defendant Lucas's qualified immunity. The facts, even taken as true, do not lead to any indication that Defendant Lucas violated a statutory or constitutional right that was "clearly established" at the time of his allegedly unlawful conduct. *Mays*, 992 F.3d at 301 (quoting *al-Kidd*, 563 U.S. at 735).

(per curiam)) ("[W]hile political subdivisions may be liable for certain claims for negligence, 'claims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code § 29-12A-4(b)(1).'"). Plaintiff has only pleaded intentional conduct on behalf of Defendant Lucas. Therefore, liability does not attach to Defendant City of Hurricane.

- D. Plaintiff has not alleged sufficient facts to support a claim for Intentional Infliction of Emotional Distress (Count VI).

Plaintiff has not pleaded facts sufficient to establish a claim for intentional infliction of emotional distress (IIED) against Hurricane Defendants. To state a claim for IIED, a plaintiff must establish four elements:

> (1) that the defendant's conduct was so atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendants caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Loudin v. Nat'l Liab. & Fire Ins.*, 716 S.E.2d 696, 705 (W. Va. 2011). The standard for this conduct is high—it only covers conduct "so outrageous in character, so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Keyes v. Keyes*, 193 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703-04 n.2 (W. Va. 1982)).

As discussed in Section III.C., *supra*, Plaintiff has not pleaded any facts that indicate Defendant Lucas acted negligently. Nor has she pleaded facts sufficient to establish he acted recklessly or with the intention of inflicting emotional distress. Defendant Lucas's conduct was, at most, harmful to Plaintiff's expectations, "but that does not an outrage claim make." *Hampstead*; 2022 WL 5133569, at *6; *see also Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) (listing

examples of what kind of conduct supports an IIED claim). Because the IIED claim against the Defendant City of Hurricane is premised on vicarious liability and the IIED claim against Defendant Lucas is not sufficiently supported by facts in the Complaint, the IIED claims against all Hurricane Defendants are dismissed.

E. Plaintiff's state law claims for Malicious Prosecution (Count VII) and Abuse of Process (Count VIII) are time-barred.

Plaintiff's state-law claims for malicious prosecution and abuse of process were brought more than one year after the cause of action accrued. Both claims are governed by a one-year statute of limitations. *See* Syl. Pt. 3, *Preiser v. MacQueen*, 352 S.E.2d 22 (W. Va. 1985) ("An action for abuse of process must be brought within one year from the time the right to bring the action accrued."); *Wilt v. State Auto Mut. Ins. Co.*, 506 S.E.2d 608, 613 (W. Va. 1998) ("Numerous torts such as . . . malicious prosecution take the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c).").

The statute of limitations begins to run when Plaintiff knows something is wrong, not when she knows of the particular nature of the injury. *Goodwin v. Bayer Corp.*, 624 S.E.2d 562, 568 (W. Va. 2005), *quoted in Teets v. Mine Safety Appliances Company, LLC*, No. 3:19-cv-195, 2021 WL 3280528, at *2 (N.D.W. Va. July 28, 2021). This occurs when plaintiff knows or should know (1) that she has been injured, (2) the identity of the individual or entity who owed her a duty of care and who may have breached that duty, and (3) the entity or individual's conduct has a causal relationship to the plaintiff's injury. *Teets*, 2021 WL 3280528 at *2 (quoting *Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009)).

Here, like the § 1983 malicious prosecution claim, the state malicious prosecution claim began to run when the favorable termination element was met, or with the entry of the final order

dismissing the misdemeanor charges on September 27, 2019. Because Plaintiff filed the instant claim almost two years later, it is time-barred. As for the abuse of process claim, it does not matter whether the statute of limitations began to run when Defendant Lucas failed to arrest McCoy on June 22, 2017, or when the allegedly fabricated misdemeanor charges were dismissed on September 27, 2019—either way, the claim is barred under the one-year statute of limitations.

> F. Plaintiff has not pleaded sufficient facts to support her claims for Negligent Supervision (Count XII) and Negligent Retention (Count XIII) against Defendant City of Hurricane.

Plaintiff has not pleaded sufficient facts to support either a negligent supervision or a negligent retention claim against Defendant City of Hurricane. Claims of negligent supervision and retention require a showing that "the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct." *Radford v. Hammons*, No. 2:14-24854, 2015 WL 738062, at *7 (S.D. W. Va. Feb. 20, 2015). As a "predicate prerequisite" the supervised employee's underlying conduct must also be negligent. *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 774 (W. Va. 2021) (citing *Taylor*, 538 S.E.2d at 725); *Carroll v. USAA Sav. Bank*, No. 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017) ("West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence.").

Plaintiff has failed to state a claim for negligent retention and hiring against Defendant City of Hurricane, because as discussed in Section III.C, *supra*, Defendant Lucas's conduct as alleged was not negligent. Moreover, Plaintiff has failed to put forth any facts regarding behavior by Defendant Lucas that would have appeared in a background investigation. According to the facts laid out in the Complaint, there was no way for Defendant City of Hurricane to be put on notice

as to Defendant Lucas's alleged negligence. Plaintiff's claim for negligent hiring and retention, therefore, cannot survive Hurricane Defendants' Motion to Dismiss.

G. Plaintiff has not established proximate causation for the claim for impairment of parental consortium (Count XIV).

In the last count of the Complaint, Plaintiff attempts to state a claim for loss of parental consortium. West Virginia has recognized such a claim—in *Belcher v. Goins*, 400 S.E.2d 830 (W. Va. 1990), the court held that a tortfeasor who negligently injured, but did not kill, a minor child's parent was liable for loss of parental consortium. *Id.* at Syl. Pt. 3. Some time later, in *Lucas v. United Fabricating, Inc.*, No. 5:06-cv-154, 2007 U.S. Dist. LEXIS 64269 (N.D.W. Va. 2007), the court held that this cause of action does not require physical injury to a parent. *Id.* at *7.

As Hurricane Defendants argue, however, Plaintiff has not stated any facts to indicate that their conduct proximately caused an injury to her relationship with B.G. It was proceedings in the Magistrate and Family Courts—not the drafting of the criminal complaint by Defendant Lucas—that ultimately led to her loss of custody and unsupervised visitation rights. Defendant Lucas's involvement in the matter ends with the drafting of the criminal complaint. As alleged, his only role in the proceedings was drafting a document based on evidence presented to him by McCoy. Therefore, Plaintiff's claim for loss of parental consortium against Hurricane Defendants cannot withstand their Motion to Dismiss.

## IV. CONCLUSION

Hurricane Defendants' Motion to Dismiss is thereby **GRANTED**. ECF No. 37.

First, Defendant Lucas is entitled to qualified immunity for Plaintiff's § 1983 claims (Counts I and II). Second, Plaintiff has not pleaded sufficient facts to state a claim for negligence, gross negligence, or prima facie negligence (Counts III, IV, and V); IIED (Count VI); or negligent

supervision and retention (Counts XII and XIII), and her state law malicious prosecution and abuse of process are time-barred (Counts VII and VIII). Finally, her claim based on loss/impairment of parental consortium fails as a matter of law (Count XIV).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   November 10, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE