IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

LESLIS MAY GREENE, individually
and on behalf of her minor child, B.G.,

           Plaintiff,

v.                                      CIVIL ACTION NO.  3:21-0520

THE PUTNAM COUNTY COMMISSION,
MARK A. SORSAIA, individually as a
member of the Putnam County Prosecutor's Office,
JENNIFER SCRAGG KARR, individually as a
member of the Putnam County Prosecutor's Office,
ELIZABETH SUNYOG, individually as a
member of the Putnam County Prosecutor's Office,
MARIAN SMITH, individually as a
member of the Putnam County Prosecutor's Office,
TONY CRAIGO, individually as a
member of the Putnam County Sheriff's Department,
JODI B. TYLER, individually as a
member of the Kanawha County Prosecutor's Office,
MORGAN M. SWITZER, individually as a
member of the Kanawha County Prosecutor's Office,
C. J EASTRIDGE, individually as a
member of the West Virginia State Police,
THE CITY OF HURRICANE,
JOSHUA LUCAS, individually as a
member of the City of Hurricane Police Department, and
JAMES MARK MCCOY a/k/a MARK MCCOY, individually,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

       Pending before the Court is Defendants Putnam County Commission; Putnam County

Prosecutors Mark A. Sorsaia, Jennifer Scragg Karr, and Elizabeth Sunyog; Victim Services

Coordinator Marian Smith; and Deputy Tony Craigo's (Putnam County Defendants) Motion to

Dismiss. ECF No. 30. Defendants argue the claims against them should be dismissed, for reasons varying from immunity from suit—be it prosecutorial, witness, or statutory—to the running of the statute of limitations, to claims failing as a matter of law, among others. Defs.' Mem. in Supp. of Their Mot. to Dismiss, ECF No. 29.   For the following reasons, the Motion is **GRANTED**. ECF No. 30.

## II. FACTUAL BACKGROUND

The facts before the Court implicate a complex mix of agencies and actors. In her lengthy Complaint, Plaintiff alleges that Defendant governmental agencies and employees conspired with Defendant Mark McCoy (McCoy), the father of her child, to frame her for a series of misdemeanor and felony offenses and, in so doing, deprive her of custody of her child, B.G.

Defendants[1] in this case include:

- Five prosecuting attorneys—three attorneys from Putnam County (Mark Sorsaia, Jennifer Scragg Karr, Elizabeth Sunyog) and two attorneys from Kanawha County (Jodi Tyler and Morgan Switzer)—sued in their individual capacities
- Marian Smith, a Victim Services Coordinator in the Putnam County Prosecuting Office
- The Putnam County Commission
- Tony Craigo, as a member of the Putnam County Sheriff's Department, in his individual capacity
- C.J. Eastridge, as a member of the West Virginia State Police, in his individual capacity
- The City of Hurricane
- Joshua Lucas, as a member of the City of Hurricane Police Department, in his individual capacity
- James Mark McCoy, in his individual capacity

Plaintiff brings the following claims against the Defendants:

| Count Number | Description | Defendants |
|---|---|---|
| I | Fourth Amendment Unreasonable Seizure Violations under 42 U.S.C. § | False arrest—Craigo, Lucas, Eastridge Unreasonable search and seizure—Eastridge |

---

[1] Plaintiff refers to the group comprised of Prosecutor Sorsaia, Prosecutor Karr, Prosecutor Sunyog, Deputy Craigo, Prosecutor Tyler, Prosecutor Switzer, Trooper Eastridge, and Officer Lucas as "Individual Law Enforcement Defendants." This Court will also refer to them as such for consistency.

| | | |
|---|---|---|
| | 1983 (false arrest, unlawful search and seizure, false imprisonment, malicious prosecution/abuse of judicial process) | False imprisonment—Individual Law Enforcement Defendants<br>Malicious Prosecution/abuse of process—Individual Law Enforcement Defendants |
| II | Fourteenth Amendment Substantive Due Process Violation under 42 U.S.C. § 1983 | Individual Law Enforcement Defendants |
| III | Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IV | Gross Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| V | Prima Facie Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VI | Intentional Infliction of Emotional Distress | Individual Law Enforcement Officers, Putnam County Commission and City of Hurricane (vicarious liability) |
| VII | Malicious Prosecution | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VIII | Abuse of Process | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IX | Defamation of Character/Libel | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| X | Defamation of Character/Slander | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| XI | Civil Conspiracy | Individual Law Enforcement Defendants, Defendant McCoy, Victim Services Coordinator Smith, Putnam County Commission and City of Hurricane (vicarious liability) |
| XII | Negligent Supervision | Putnam County Commission and City of Hurricane |
| XIII | Negligent Retention | Putnam County Commission and City of Hurricane |
| XIV | Loss/Impairment of Parental Consortium | All Defendants |

*See* Am. Compl., ECF No. 4. While the Court has provided a more detailed summary of the events giving rise to these claims in its Memorandum Opinion and Order on Defendants Tyler and Switzer's Motion to Dismiss, ECF No. 45 at 2-9, it will attempt to summarize the facts relating to the Putnam County Defendants below.

Following a domestic dispute between Plaintiff and McCoy, Plaintiff obtained a Domestic Violence Protective Order (DVPO) that prevented McCoy from contacting her, being at or near her home, or being within one hundred feet of her. ECF No. 4 ¶¶ 22-24. The DVPO was granted on October 17, 2016 and extended to December 20, 2017. *Id.* ¶¶ 22, 34. Plaintiff alleges that McCoy repeatedly violated the DVPO—most notably on November 4, 2017, when she claims he forcibly entered her property. *Id.* ¶¶ 26, 27, 35, 44. She alleges that, during this incident, he rammed his vehicle into her vehicle multiple times as she tried to leave the property with B.G. *Id.* ¶ 47. Soon after the incident, however, McCoy presented an opposing view of events to the Hurricane Police Department: he claimed that Plaintiff had instead crashed her vehicle into his vehicle. *Id.* ¶ 50.

As a result of McCoy's allegations, Plaintiff was charged with a series of misdemeanors including destruction of property, battery, false reporting, and child endangerment. *Id.* ¶¶ 50-52. Soon after, a magistrate granted custody of B.G. to McCoy via an Emergency Protective Order (EPO). *Id.* ¶ 62. Plaintiff alleges this EPO was unlawful because the magistrate failed to identify and account for the existing DVPO against McCoy, which would have prevented him from obtaining an EPO against Plaintiff. *Id.* ¶ 61. She further claims she notified Defendant Craigo of the DVPO when he served her with the EPO, and he verified the existence of the DVPO by calling the Putnam County Courthouse. *Id.* ¶¶ 65-67. Plaintiff ultimately filed for contempt against McCoy in the Putnam County Family Court for violating the DVPO, but the judge "denied or otherwise

ignored" her petition. *Id.* ¶¶ 68-69. She also moved to vacate the EPO in family court, but as alleged, this motion was similarly ignored or denied. *Id.* ¶¶ 70-72.

Shortly after Plaintiff filed these motions, Defendants Karr and Sunyog prosecuted McCoy for violating the DVPO. *Id.* ¶¶ 73-74. Plaintiff alleges that, even though this was McCoy's third offense for violating the DVPO and he was still on probation for the first two offenses at the time of the third offense, Defendants Karr and Sunyog erred by accepting a guilty plea from McCoy and not revoking his probation. *Id.* ¶¶ 75, 77. Though West Virginia Code 48-27-903(c) requires a respondent convicted of a third or subsequent violation of a DVPO to be "to be confined in jail not less than six months nor more than one year," McCoy was sentenced only to unsupervised probation. *Id.* ¶¶ 76, 78. Additionally, Plaintiff alleges that Defendant Karr refused to charge McCoy for violating the DVPO after being informed of his violations on June 22 and July 3, 2017. *Id.* ¶¶ 37, 40, 42, 79. She attributes this refusal to pursue charges to Defendant Karr's "wrongful belief" that Plaintiff was voluntarily in contact with McCoy or "otherwise unjustifiable" doubts as to Plaintiff's credibility. *Id.* ¶¶ 42-43.

On November 29, 2017, Defendant Craigo filed a criminal complaint against Plaintiff for various offenses, including felony concealment of a minor child. *Id.* ¶ 80. Plaintiff claims these charges were based solely on the EPO and that Defendants Sorsaia, Karr, Sunyog, Craigo, and Putnam County Sheriff's Department should have known the EPO was falsely obtained by McCoy and therefore invalid. *Id.* ¶¶ 82, 83. Due to the unlawful nature of the EPO, Plaintiff alleges there was no probable cause to arrest and charge her for felony child concealment. *Id.* ¶ 84. Nonetheless, Plaintiff surrendered herself and custody of B.G. to authorities. *Id.* ¶ 88. A local news station photographed this event and published what Plaintiff calls a "false, misleading, and defamatory

story" about her. *Id.* ¶ 89. The Putnam County Sheriff's Department also issued a press release and held a news conference that broadcasted the charges against Plaintiff. *Id.* ¶ 90.

Following nine-days of incarceration and a subsequent release on bond, Plaintiff discovered evidence on an old cellular phone of McCoy's that indicates Defendants Putnam County Prosecutor's Office and Sheriff's Department knew where Plaintiff and B.G. were during the time they claimed she was concealing B.G. *Id.* ¶¶ 91, 93-94, 98. The evidence consisted of emails between McCoy and Defendant Smith, in which McCoy sent Defendant Smith Facebook posts showing the location of Plaintiff and B.G. and in which Defendant Smith said she had passed the information on to the Putnam County Sheriff's Department and Prosecutor's Office. *Id.* ¶¶ 95-101. Plaintiff alleges that Defendant Smith and McCoy were romantically involved during this time. *Id.* ¶ 102. She also alleges that the Putnam County Prosecutor's Office never produced these emails between McCoy and Defendant Smith, despite requests by Plaintiff and her counsel to do so during criminal discovery. *Id.* ¶¶ 104-05.

On July 11, 2018, a grand jury indicted Plaintiff on seven felony counts of child concealment and conspiracy to commit child concealment, as well as misdemeanor charge of obstructing an officer (Indictment 1). *Id.* ¶ 106. Defendants Sorsaia and Karr presented Indictment 1 to the Grand Jury. *Id.* ¶ 107. Plaintiff alleges that, during these proceedings, Defendant Craigo offered false and misleading testimony to the grand jury regarding his attempts to locate Plaintiff and B.G. *Id.* ¶ 108. She claims that neither Defendant Craigo nor any other members of law enforcement came to her residence, called her on the phone, or visited her place of employment during the period of time she was allegedly concealing B.G. *Id.* ¶ 109. She also claims that, during this time, Plaintiff was working at and brought B.G. to Hurricane High School, where a member of the Hurricane Police Department would have been stationed. *Id.* ¶ 110.

Finally, according to Plaintiff, Defendants Sorsaia and Karr allowed Defendant Craigo to offer this false testimony, despite having knowledge of the exculpatory emails regarding B.G.'s location. *Id.* ¶¶ 111-12. She alleges that Defendants Sorsaia and Karr presented no exculpatory evidence to the grand jury during these proceedings and that they either knew or should have known there was no probable cause to support the felony child concealment charge. *Id.* ¶¶ 113-15.

On September 22, 2018, McCoy made additional allegations to the West Virginia State Police that Plaintiff was stalking him. *Id.* ¶ 117. Plaintiff alleges this accusation was both false and made in concert with Defendants Sorsaia, Karr, "and possibly others." *Id.* ¶ 118. On October 26, 2018,[2] forensic report prepared by the West Virginia State Police Crime Lab (WVSP Forensic Report) indicated that Plaintiff's cell phone was not in McCoy's vicinity on the dates and locations she supposedly stalked him.   *Id.* ¶ 137. Plaintiff alleges the WVSP Forensic Report was not produced to her until three months later, on January 29, 2019. *Id.* ¶¶ 138, 141. Plaintiff was arrested and remained incarcerated for forty-two days on these charges. *Id.* ¶¶ 139, 140.

On October 12, 2018, Defendants Karr and Sunyog prosecuted Plaintiff before the Putnam County Magistrate Court for the misdemeanor charges stemming from the incident on November 4, 2017. *Id.* ¶¶ 132-33. Plaintiff was found guilty of all charge—however, on appeal, they were dismissed with prejudice due to a mistrial. *Id.* ¶¶ 134, 180. Plaintiff alleges that sometime during this prosecution, Plaintiff's counsel asked Defendant Karr why the Putnam County Prosecutor's office was pursuing charges. *Id.* ¶ 135. Plaintiff claims that, in response, Defendant Karr said the Prosecutor's Office believed Plaintiff would "either take a plea or kill herself." *Id.* ¶ 136.

---

[2] The Amended Complaint states that the WVSP Forensic Report was produced on October 26, 2019. ECF No. 4 ¶ 137. Given that the Complaint later claims this report was handed over to Plaintiff's counsel on January 29, 2019, the Court assumes the WVSP Forensic Report was actually produced on October 26, 2018. ECF No. ¶ 141.

Several months later, on February 6, 2019, the Putnam County Circuit Court held a preliminary hearing regarding Plaintiff's alleged stalking. *Id.* ¶ 142. Plaintiff alleges that during these hearings, Defendants Sorsaia and Karr allowed McCoy and another defendant, Defendant Eastridge, to perjure themselves and offer testimony they knew was false. *Id.* ¶ 151. She further alleges that Defendant Smith assisted McCoy in committing perjury by "nodding along" while he testified that he had called Defendant Smith at a time when Plaintiff was allegedly following him. *Id.* ¶ 152. Plaintiff was denied bond and returned to jail following this hearing. *Id.* ¶ 153.

Plaintiff was once again indicted on March 7, 2019, this time for fifteen counts of felony stalking, felony interception of electronic communications, and several misdemeanor offenses (Indictment 2). *Id.* ¶ 154. Defendants Sorsaia and Karr presented this indictment to the Grand Jury, and Defendant Sorsaia signed it. *Id.* ¶¶ 155, 173. Plaintiff alleges that they brought these stalking charges before the grand jury even though they knew the WVSP Forensic Report "unequivocally establish[ed]" that Plaintiff did not stalk McCoy. *Id.* ¶ 156. She further alleges that Defendants Sorsaia and Karr presented attorney-client privileged emails unlawfully obtained from her phone to the grand jury and that they knew the emails were unlawfully obtained and outside the scope of the search warrant. *Id.* ¶¶ 157, 170-72. Finally, Plaintiff claims these defendants knew that another defendant, Trooper Eastridge, had fabricated evidence and was offering false testimony, yet allowed him to commit perjury anyway. *Id.* ¶ 165.

Defendant Sorsaia dismissed Indictments 1 and 2 on August 21, 2019. ECF No. 30-2. The Putnam County Circuit Court also declared a mistrial on the proceedings for Plaintiff's misdemeanor charges in a dismissal order entered on September 27, 2019. ECF No. 1-13. The mistrial stemmed from the fact that Plaintiff had contacted Defendant Karr in June and July 2017

to report McCoy's alleged violations of the DVPO. ECF No. 4 ¶ 177. Though Defendant Karr had prosecuted the misdemeanor charges, she was also a material witness. *Id.*

Plaintiff was indicted a third time on November 14, 2019 for felony concealment of a minor child, stalking, and interception of electronic communications (Indictment 3). *Id.* ¶ 182. Defendant Sorsaia represented Putnam County before the grand jury. *Id.* ¶ 183. Plaintiff alleges that Defendant Craigo once again offered false and misleading testimony regarding his and other law enforcement officers' efforts to locate B.G. when Plaintiff was allegedly concealing her. *Id.* ¶¶ 184-87. Similarly, Plaintiff alleges that Defendant Sorsaia allowed Defendants Craigo and Eastridge to proffer this false testimony despite having information to the contrary, even allowing Defendant Eastridge to present fabricated evidence. *Id.* ¶¶ 188-89, 202-03. She further claims Defendant Sorsaia 1) presented improper testimony regarding the misdemeanor charges, 2) presented no exculpatory evidence to the grand jury regarding McCoy's prior convictions of the DVPO or that the DVPO was unlawful, invalid and fraudulently obtained, and 3) used information from emails protected by attorney-client privilege during this proceeding and which were unlawfully obtained. *Id.* ¶¶ 190, 192, 194. Finally, she alleges that Defendant Sorsaia knew or should have known there was no probable cause to charge Plaintiff with child concealment based on the exculpatory e-mails and WVSP Forensic Report. *Id.* ¶¶ 191, 193.

Plaintiff then moved to disqualify the Putnam County Prosecutor's Office due to the initial conflict with Defendant Karr, which had resulted in a mistrial on the misdemeanor charges. *Id.* ¶ 211. Defendant Sorsaia opposed this motion but voluntarily withdrew the Putnam County Prosecutor's Office anyway. *Id.* ¶ 212. Prosecutors from the Kanawha County Prosecutor's Office were appointed as Special Prosecutors for Indictment 3. *Id.* ¶ 214. Plaintiff alleges that, during the course of this trial, Defendants Smith and Craigo both admitted they had learned of the

whereabouts of Plaintiff and B.G. via the "exculpatory emails" between McCoy and Defendant Smith. *Id.* ¶¶ 226-28. Plaintiff claims that Defendant Craigo also admitted he never called Plaintiff or went to her home or work when attempting to locate B.G. *Id.* ¶ 229. Plaintiff was convicted of felony interception of electronic communications as a result of these proceedings. *Id.* ¶ 230. She has moved for a new trial on this charge and, in the alternative, will appeal to the Supreme Court of West Virginia. *Id.* ¶ 231.

In her Response to this Motion to Dismiss, Plaintiff specifically cites her two felony indictments for child concealment, one of which was actually tried and in which she was found not guilty and the other of which was dismissed. Pl.'s Mem. of Law in Opp. to the Putnam Cnty. Defs.' Mot. to Dismiss, ECF No. 33 at 2. She claims these indictments stemmed from McCoy's unlawful custody of B.G. based on the EPO and that Putnam County Defendants continued pursuing these charges despite knowing where B.G. was. *Id.* Likewise, she notes two indictments for felony stalking, the evidence for which she claims was false and fabricated by McCoy and Defendant Eastridge. *Id.* Both stalking charges were dismissed. *Id.*

Based on these facts, Plaintiff alleges that the Putnam County Defendants "conspired with the other defendants in this case to, *inter alia*, maliciously prosecute her based on false, fraudulent, and fabricated evidence, resulting in her being wrongfully arrested, vindictively prosecuted, and losing parental rights to her minor child." *Id.* at 1. She alleges fourteen counts, detailed above, against this group of defendants.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

When considering whether the plaintiff has stated a plausible claim, courts accept all factual allegations in the complaint as true. *Id.* Even so, plaintiffs must set forth the grounds for an entitlement to relief that is more than mere labels and conclusions. *Bell Atl. Corp.*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," *id.*, nor will a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.

A court must conduct a context-specific analysis to determine whether a complaint states a plausible claim, which includes drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court's analysis shows that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the motion to dismiss should be granted. *Id*. However, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

This Opinion first addresses Plaintiff's conspiracy theory of liability and claim for Civil Conspiracy (Count XI). Much of Plaintiff's claims are rooted in the idea that Putnam County Defendants conspired against her and the acts of all alleged co-conspirators are therefore imputed to them. ECF No. 33 at 4 ("[Putnam County Prosecutors] are not immune for the conduct of their co-conspirators (the other individual Defendants in this case)"); ECF No. 33 at 5 (citing *Pena v. Mattox*, 84 F.3d 894 (7th Cir. 1996)). Unfortunately, however, Plaintiff skipped an important step—that is, she has not pleaded facts sufficient to establish that Defendants conspired against her.

West Virginia law indicates that civil conspiracy is not a standalone cause of action. Rather, it is a "legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves" but who shared a common plan with the perpetrators to commit it. *Porter v. Brakem Am., Inc.*, No. 3:19-cv-0572, 2021 WL 664850, at *5 (S.D.W. Va. Feb. 19, 2021), *aff'd*, No. 21-1265, 2021 WL 5076362 (4th Cir. Nov. 2, 2021). To establish a theory of liability based on conspiracy, a plaintiff must show that a combination of two or more persons acted in concert "to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009).

However, civil conspiracy under 42 U.S.C. § 1983 is a standalone claim. To establish this claim, a plaintiff must show that 1) the defendants acted jointly in concert, 2) an overt act was done in furtherance of the conspiracy, and 3) the overt act resulted in deprivation of plaintiff's constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

The burden to prove conspiracy is weighty. *Penly v. McDowell Cnty. Bd. Of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (quoting *Hinkle*, 81 F.3d at 421). To establish such a claim, Plaintiff must plead specific facts in a nonconclusory fashion, *Gooden v. Howard Cnty.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (internal citations omitted), and the evidence must "at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 422. "Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 2003).

Plaintiff has not provided the Court with sufficient facts to support conspiracy as either a standalone claim under § 1983 or as a theory of liability pursuant to state law. Notably, Plaintiff has pleaded minimal, vague, and wholly conclusory references to conspiracy in the Complaint. In one instance, Plaintiff alleges "a systematic and concerted pattern of law enforcement,

-12-

prosecutorial, and judicial misconduct." ECF No. 4 ¶ 233. In another, she claims that McCoy acted in concert with Defendants Sorsaia, Karr, and Eastridge "(and possibly others)." *Id.* ¶ 340. These statements come far from establishing conspiracy. Rather, they merely state the elements of a conspiracy claim without providing any facts from which the Court can reasonably infer these elements may have been met.[3]

In regards to these particular defendants, a potential third allusion to conspiracy comes closer to sufficiently establishing the claim. In that instance, Plaintiff alleges that McCoy made false allegations of stalking "in concert with" Defendants Sorsaia, Karr, and Eastridge to get a search warrant for her cell phone. ECF No. 4 ¶ 118. This statement still falls short though. The Court cannot reasonably infer such a conspiracy existed based on a bald assertion that Defendants worked in concert. Since the Complaint lacks sufficient facts to state either a claim for or theory of liability of conspiracy, the Court addresses only those counts that directly implicate the Putnam County Defendants. Similarly, Plaintiff's claim for Civil Conspiracy (Count XI) cannot survive the Motion to Dismiss.

A.  While Plaintiff's Fourth Amendment claim is not time-barred, Defendants are entitled to prosecutorial and witness immunity for the 42 U.S.C. § 1983 claim alleged in Count I.

The Court frames Plaintiff's malicious prosecution claim under 42 U.S.C. § 1983 as a Fourth Amendment claim for unreasonable seizure. *Evans v. Chambers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). To state a malicious

---

[3] The Court also takes note of an additional fact pleaded but not raised by Plaintiff in the context of conspiracy–that Defendant Smith was "nodding along" as McCoy testified. *Id.* ¶ 152. However, absent any additional indication that Defendant Smith was acting jointly in concert with McCoy to achieve an unlawful purpose or to achieve a lawful purpose through unlawful means, the Court cannot reasonably infer conspiracy from this conduct alone. Moreover, Plaintiff has not pleaded any facts to indicate that this nodding actually furthered a conspiracy in any way.

prosecution claim, Plaintiff must allege "the defendant (1) caused (2) a seizure pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)).

Section 1983 claims of malicious prosecution are subject to a two-year statute of limitations. "[A]ll claims filed in West Virginia pursuant to [§ 1983] are personal injury actions governed by the two-year statute of limitations set forth in W. Va. Code § 55-2-12(b)." *Rodgers v. Corp. of Harpers Ferry*, S.E.2d 358, 362 (W. Va. 1988). A § 1983 malicious prosecution claim starts to accrue when the "favorable termination" element has been met. *Lambert*, 223 F.3d at 262 n.3 (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)).

Defendants argue proceedings did not terminate in Plaintiff's favor because the dismissal of her charges rested on a procedural defect, rather than an element bearing on her innocence. They contend that "only terminations that indicate that the accused is innocent ought to be considered favorable." ECF No. 18-1 at 27 (quoting *Denmark v. Starcher*, No. 1:14-CV-58, 2016 WL 1122085, at *7 (N.D.W. Va. March 22, 2016)). However, since the filing of Defendants' Motion to Dismiss, the U.S. Supreme Court has ruled that "a plaintiff need only show that [her] prosecution ended without a conviction" to fulfill the favorable termination element of a § 1983 malicious prosecution claim. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Plaintiff's first two felony indictments, her misdemeanor convictions, and the stalking and child concealment charges in Indictment 3 were all either dismissed or ended without a conviction. The favorable termination element for these charges has therefore been met.

Plaintiff did not raise a claim within the two-year statute of limitations for all of the charges though. The misdemeanor proceedings were favorably terminated within the two-year mark: the dismissal order was entered on September 27, 2019, and Plaintiff timely filed her Complaint on

-14-

September 10, 2021. The Complaint was not timely filed as to Indictments 1 and 2 though, as these charges were dismissed on August 21, 2019. Finally, as to Indictment 3, the felony child concealment and stalking charges were brought well within the statute of limitations—these charges were favorably terminated on July 1 and June 28, 2021, respectively.

Only Plaintiff's § 1983 malicious prosecution claim as to her misdemeanor charges and Indictment 3 child concealment and stalking charges can move forward in the Court's analysis. The following table summarizes the charges implicated in Plaintiff's § 1983 claim, as well as whether they were brought within the two-year statute of limitations.

| Charges | Favorable Termination | Time-Barred? |
|---|---|---|
| Misdemeanors | September 27, 2019 | No |
| Indictment 1 | August 21, 2019 | Yes |
| Indictment 2 | August 21, 2019 | Yes |
| Indictment 3 | | |
| *Concealment of a minor child* | July 1, 2021 | No |
| *Stalking* | June 28, 2021 | No |
| *Interception of electronic communications* | No favorable termination | N/A |

*1. Prosecutorial Immunity for Putnam County Prosecutors*

Though it does not fail as a matter of law, Plaintiff's Fourth Amendment § 1983 claim cannot survive the Motion to Dismiss because Defendants Putnam County Prosecutors are entitled to prosecutorial immunity and Defendant Craigo is entitled to absolute witness immunity for the alleged conduct. Defendants Sorsaia, Karr, and Sunyog are entitled to prosecutorial immunity because their actions were taken within the scope of the judicial process. Prosecutorial immunity

is grounded not in any special esteem for prosecuting attorneys or any desire to shield them from abuse of office, but rather as a means of preserving the judicial process. *Id.* at 127 (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). Granting prosecutors absolute immunity is a means of ensuring "vigorous and fearless performance" of prosecutorial duty, an integral element of the criminal justice system. Syl. pt. (b), *Imbler v. Pachtman*, 424 U.S. 409 (1976).

Prosecutorial immunity protects "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution." *Kalina v. Fletcher*, 533 U.S. 118, 123–24 (1997) (quoting *Imbler*, 424 U.S. at 410). Prosecutors are entitled to absolute immunity even where they acted wrongfully or maliciously or where the party has prevailed on appeal. *Mooney v. Frazier*, 693 S.E.2d 333, 345 n.12 (W. Va. 2010).

Not every action of a prosecutor is subject to absolute immunity though. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other.'" *Buckley*, 509 U.S. at 273 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)); *Kalina*, 522 U.S. at 126–27. In determining whether a prosecutor's actions are entitled to absolute immunity, courts should focus on the nature of the action itself, rather than the identity of who performed it. *Kalina*, 522 U.S. at 127.

In West Virginia, prosecutors are entitled to absolute immunity when engaging in prosecutorial functions such as "initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct . . . intricately associated with the judicial process." *Mooney*, 693 S.E.2d at 345 n.12. Similarly, the Fourth Circuit has held prosecutors are entitled to absolute immunity when deciding whether evidence was exculpatory and even when they have presented false or perjured evidence. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (holding prosecutor was

entitled to absolute immunity where he failed to disclose exculpatory evidence to a defendant and was accused of conspiring to present false evidence); *Brown v. Daniel*, 230 F.3d 1351, at *2 (4th Cir. 2000) (table decision) (holding prosecutors were entitled to absolute immunity where the plaintiff alleged they used perjured testimony to maliciously prosecute him).

Defendants Putnam County Prosecutors' conduct in this action was within the scope of their duty to initiate and pursue prosecutions, rendering it purely advocative. Plaintiff alleges these defendants erred by not prosecuting McCoy for certain infractions and implementing an insufficient sentence of probation when they did prosecute him; prosecuting Plaintiff despite knowing there was no probable cause to do so; presenting testimony and evidence they knew or should have known was false; and failing to disclose exculpatory material. West Virginia and the Fourth Circuit, however, have designated these activities as advocative functions warranting absolute immunity.

Even if this conduct had not already been designated as advocative, the Court can determine whether it falls under prosecutorial immunity based on when in the judicial process it occurred. *Annappareddy v. Pascale*, 996 F.3d 120, 139 (4th Cir. 2021). Actions taken by a prosecutor prior to probable-cause determination are more likely investigative in nature, whereas actions taken after are more likely advocative or prosecutorial in nature. *Id.* While not dispositive, Putnam County Defendants' assertion of absolute immunity is bolstered by the fact that their alleged violations of Plaintiff's constitutional rights followed a probable-cause determination. ECF No. 4 ¶¶ 218, 220. *Annappareddy* indicates the analysis should focus on the timing of the conduct, not the strength of the probable-cause determination. Here, a determination of probable cause had been made as soon as Plaintiff was charged with the misdemeanors and indicted by the grand jury. That most of her alleged violations followed these findings of probable cause increases the

-17-

likelihood that Putnam County Defendants' conduct was advocative, rather than investigative in function.

Because the Putnam County Prosecutors actions were solely advocative in nature, they are entitled to absolute immunity. Their conduct, therefore, is protected, and they are not liable for Plaintiff's claims.

### 2. Witness Immunity for Defendant Craigo

Defendant Craigo is similarly entitled to absolute witness immunity for any alleged violation of Plaintiff's constitutional rights. Witness immunity protects government officials who testify at trial, *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), as well as at grand jury proceedings, *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). The Fourth Circuit has held an official is entitled to immunity even where he allegedly presented or conspired to present false evidence. *Everette-Oates v. Chapman*, No. 20-1093, 2021 U.S. App. LEXIS 21770, at *13 (4th Cir. July 22, 2021).

None of Defendant Craigo's allegedly unlawful conduct is implicated in the misdemeanor charges, so the Court looks to Defendant Craigo's conduct in regards to Indictment 3. Based on the Complaint, Defendant Craigo only offered this allegedly false and misleading testimony to the grand jury—during trial, it appears he admitted to learning of B.G.'s whereabouts from Defendant Smith and that he never visited Plaintiff's home or place of work while attempting to locate B.G. ECF No. 4 ¶¶ 226-29. Offering false testimony at grand jury proceedings falls squarely under the protection of witness immunity.

Additionally, the U.S. Supreme Court has declined to hold a police officer accountable for maliciously procuring an unjust prosecution under § 1983, given that prosecutors were actually responsible for this decision. *Rehberg*, 566 U.S. at 372-73 ("It would thus be anomalous to permit a police officer testifying before a grand jury to be sued for maliciously procuring an unjust

-18-

prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to initiate a prosecution.").[4] Here, too, it would be anomalous to suggest Defendant Craigo is responsible for the alleged malicious prosecution of Plaintiff when the Putnam County Prosecutors, those actually responsible for setting it in motion, escape liability.

B.  Plaintiff's Fourteenth Amendment claim (Count II) fails as a matter of law.

Plaintiff alleges that Putnam County Defendants violated her Fourteenth Amendment right to substantive due process by invading her parental rights to her minor child, B.G. ECF No. 4 ¶¶ 280, 284. As Plaintiff notes, other circuits have held that parents can allege violations of substantive due process when the state impedes their custody of or ability to care for their children. *See Southerland v. City of New York*, 680 F.3d 127, 142 (2nd Cir. 2012); *Farley v. Farley*, Nos. 98-6114, 98-6115, 2000 WL 1033045, at *4 (6th Cir. July 19, 2000). The Fourth Circuit has yet to rule on the availability of such a claim. Notwithstanding its availability in this Circuit, however, this claim fails against Individual Law Enforcement Defendants. Defendant Putnam County Prosecutors are entitled to prosecutorial immunity and Defendant Craigo is entitled to witness immunity from it, as discussed in Section III.A., *supra*.

---

[4]  The Court notes that "causation or procurement of prosecution may be found even where the decision to prosecute is left to the discretion of another person when defendants provide information which they know to be false to that person in order to cause the criminal prosecution." *Jafary v. City of Beckley*, No. 5:20-CV-647, 2021 WL 6125831, at *7 (S.D.W. Va. Dec. 28, 2021) (finding sufficient procurement for a malicious prosecution claim where a plaintiff alleged an officer wrote the narrative and criminal complaint); *see also Weigle v. Pifer*, 139 F. Supp. 3d 760, 782 (S.D.W. Va. 2015) (finding a law enforcement officer sufficiently caused a malicious prosecution where he drafted a criminal complaint and testified on behalf of the prosecution in magistrate and circuit court). However, this case is distinguishable because the only allegedly unlawful conduct attributed to Defendant Craigo in the Complaint relates to his testimony in grand jury proceedings.

Moreover, the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Thus, a claim based on a due process violation may not be entertained where Plaintiffs advance a Fourth Amendment claim arising from the same conduct. *See Myers v. City of Charleston*, No. 2:19-CV-757, 2021 WL 925326, at *7–8 (S.D.W. Va. Mar. 10, 2021) (dismissing a plaintiff's due process claim where the Fourth Amendment provided the specific text under which the conduct claims should be analyzed).

C. Plaintiff has not pleaded sufficient facts to establish that Putnam County Defendants are liable for negligence, gross negligence, or prima facie negligence (Counts III, IV, and V).

Plaintiff also alleges that Putnam County Defendants are liable for negligence, gross negligence, and prima facie negligence under the Crime Victims' Rights Act. Putnam County Defendants respond that they are entitled to a mix of prosecutorial, witness, and statutory immunity. Historically, West Virginia has followed federal law in matters concerning immunity. *Weigle v. Pifer*, 139 F. Supp. 3d 760, 775 (S.D.W. Va. 2015) (quoting *Saint Albans v. Botkins*, 719 S.E.2d 863 (W. Va. 2011)). Because of this, much of the Court's analysis, carried out in Section III.A., *supra*, of Defendants' prosecutorial and witness immunity against Plaintiff's § 1983 claims applies to their contention of immunity against state law claims.

Even assuming, *arguendo*, that Putnam County Defendants were not entitled to immunity, their conduct as alleged is intentional, rather than negligent, in nature. The Fourth Circuit has held that intentional acts cannot form the basis of a negligence claim. *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013). In distinguishing negligent and intentional conduct, courts look to the

subjective intent of the tortfeasor. *Weigle*, 139 F. Supp. 3d at 780. Intentional torts involve an actor who intends the consequences of an act, rather than simply intending the act itself. *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).

Based on the facts laid out in the Complaint, Plaintiff has only alleged acts the consequences of which Defendant Putnam County Defendants intended. Looking at Plaintiff's own words in the Complaint, it is clear the conduct at issue can only be described as deliberate, willful, and intentional, rather than negligent. Plaintiff, herself, alleges a conspiracy amongst all defendants, a cause of action that necessarily requires intent. *See, e.g.*, ECF No. 4 ¶ 339 (alleging Defendants "acted in concert to defame, maliciously prosecute, and abuse judicial process to the detriment of Plaintiff."). Thus, based on the facts set forth in the Complaint, Putnam County Defendants would have intended both their allegedly unlawful conduct as well as the consequences of that conduct.

Finally, inasmuch as Plaintiff has not alleged any negligence on the part of the individual defendants, the Putnam County Commission is entitled to statutory immunity. The West Virginia Governmental Tort Claims and Insurance Reform Act restricts the liability of political subdivisions to certain instances of negligence. W. Va. § 29-12A-4(c). Consistent with this provision, a political subdivision like the Putnam County Commission cannot be held liable for an employee's intentional malfeasance. *State ex rel. Grant Cnty. Comm'n v. Nelson*, 856 S.E.2d 608, 619 (W. Va. 2021) (quoting *Zirkle v. Elkins Rd Pub. Svc. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007) (per curiam)) ("[W]hile political subdivisions may be liable for certain claims for negligence, 'claims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code § 29-12A-4(b)(1).'"). Plaintiff has only pleaded intentional conduct on behalf of Defendants, conduct for which liability cannot attach to the Putnam County Commission.

-21-

D.  Plaintiff has not alleged sufficient facts to support a claim for Intentional Infliction of

Emotional Distress (Count VI).

Plaintiff has not pleaded sufficient facts to support a claim for intentional infliction of

emotional distress (IIED). To state a claim for IIED, a plaintiff must establish four elements:

> (1) that the defendant's conduct was so atrocious, intolerable, and so extreme and
> outrageous as to exceed the bounds of decency; (2) that the defendant acted with
> the intent to inflict emotional distress, or acted recklessly when it was certain or
> substantially certain emotional distress would result from his conduct; (3) that the
> actions of the defendants caused the plaintiff to suffer emotional distress; and (4)
> that the emotional distress suffered by the plaintiff was so severe that no reasonable
> person could be expected to endure it.

*Loudin v. Nat'l Liab. & Fire Ins.*, 716 S.E.2d 696, 705 (W. Va. 2011). This cause of action only

covers conduct "so outrageous in character, so extreme in degree as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Keyes v. Keyes*, 193 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless v. First Nat'l*

*Bank*, 289 S.E.2d 692, 703-04 n.2 (W. Va. 1982)).

Plaintiff has not pleaded any facts that indicate Putnam County Defendants acted

negligently, recklessly, or with the intention of inflicting emotional distress. Their conduct was, at

most, harmful to Plaintiff's expectations, "but that does not an outrage claim make." *Hampstead*;

2022 WL 5133569, at *6; *see also Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) (listing

examples of what kind of conduct supports an IIED claim). Similarly, the IIED claim against

Defendant Putnam County Commission fails, as it is premised on vicarious liability for the

unsupported claims against Individual Law Enforcement Defendants.

E. While neither the common law malicious prosecution claim (Count VII) nor the abuse of process claim (Count VIII) is time-barred, Defendants are shielded from liability by prosecutorial and witness immunity.

Just as Putnam County Defendants are absolutely immune from Plaintiff's § 1983 and negligence claims, as seen in Section III.A. and III.C., *supra*, so too are they immune from her claims for common law abuse of process and malicious prosecution. Without this immunity, neither claim would likely be barred. Under state law, both abuse of process and malicious prosecution claims are governed by a one-year statute of limitations. *See* Syl. Pt. 3, *Preiser v. MacQueen*, 352 S.E.2d 22 (W. Va. 1985) ("An action for abuse of process must be brought within one year from the time the right to bring the action accrued); *Wilt v. State Auto Mut. Ins. Co.*, 506 S.E.2d 608, 613 (W. Va. 1998) ("Numerous torts such as . . . malicious prosecution take the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c).").

Abuse of process requires establishing the defendant had an ulterior purpose and committed a willful act in the use of process not proper in the regular conduct of the proceeding. *Preiser*, 352 S.E.2d at 28. The statute of limitations begins to run with the termination of "the acts constituting the abuse complained of" rather than the completion of the action the process issued. *Id.* at 29. Plaintiff contends that Defendant Craigo's only unlawful conduct was offering false and misleading testimony during grand jury proceedings for Indictment 3 on November 19, 2019. The statute of limitations started to run not necessarily at the termination of the proceedings, but rather when Plaintiff learned of the allegedly unlawful conduct.[5] While his testimony occurred more than

---

[5] Caselaw does not give a clear answer as to when the statute of limitations for common law abuse of process begins to accrue. In *Saunders v. Raleigh County*, No. 5:20-CV-00221, 2020 WL 9348328 (S.D.W. Va. May 18, 2020), an abuse of process claim began to accrue as soon as plaintiff was arrested by defendant, because that is when Plaintiff became aware of the alleged

one year from the filing of this action, it is possible that Plaintiff did not learn of the false and misleading testimony until on or around June 28, 2021, the date of her trial on Indictment 3. *Id.* ¶ 182. Therefore, the Court cannot determine that the action is time-barred at this point in proceedings.

Nor is the malicious prosecution claim time-barred. Here, like the § 1983 malicious prosecution claim, the state malicious prosecution claim began to run when the favorable termination element was met, or with the entry of the final order dismissing the misdemeanor charges on September 27, 2019, the dismissal of the Indictment 3 felony stalking charge on June 28, 2021, and the acquittal of the felony child concealment charge on July 1, 2021. Regarding the misdemeanor charges, Plaintiff filed the instant claim well outside of the one-year statute of limitations. Only the malicious prosecution claim as to the felony stalking and child concealment charges is not time-barred.

To establish a claim for malicious prosecution, West Virginia law requires a plaintiff to show "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." Syl. Pt. 1, *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363 (W. Va. 2019). Contrary to Defendants' contentions, Plaintiff has established the first element, that the prosecution was conducted to its termination and resulted in her discharge. However, she has not established that Defendants Sorsaia, Karr, and Sunyog are not entitled to

---

misconduct. *Id.* at *27. However, in *Ali v. Raleigh County*, No. 5:17-CV-03386, 2018 WL 4101517 (S.D.W. Va. Aug. 28, 2018), an abuse of process claim did not accrue until acquittal, because the plaintiff had alleged abuse of process not only when wrongfully arrested but also when government agents allegedly conspired to coordinate their testimonies and failed to disclose exculpatory evidence. *Id.* at *12. For the purposes of this Motion to Dismiss, the Court concludes that the statute of limitations began to accrue when Plaintiff became aware of the allegedly abusive conduct.

prosecutorial immunity and that Defendant Craigo is not entitled to witness immunity for their conduct. *See* Section III.A and III.C., *supra*.

Moreover, as discussed in Section III.A., *supra*, at 19 n.4, Defendant Craigo did not play a sufficient role in Indictment 3 to cause or procure Plaintiff's prosecution. Rather than drafting a criminal complaint or otherwise compelling these charges, he merely testified at grand jury proceedings commenced by Defendants Sorsaia, Karr, and Sunyog—all of whom are entitled to prosecutorial immunity because their actions were advocative in nature. The common law abuse of process and malicious prosecution claims, therefore, must be dismissed.

F.  Because the Putnam County Sheriff's Department is not liable for libel or slander, Defendant Putnam County is not vicariously liable for Counts IX and X.

First and foremost, Plaintiff's claims for libel and slander are time-barred. Defamation falls under a one-year statute of limitations. *Scolapio v. Harrison Cnty. Comm'n*, No. 19-0543, 2020 WL 2735497, at *2 (W. Va. May 26, 2020). While Plaintiff argues the claim is still viable under West Virginia's "continuing violation" rule, ECF No. 33 at 28, this argument hinges on Plaintiff's theory of liability of conspiracy, which the Court has rejected in Section III, *supra*, at 11-13.

Moreover, Plaintiff stretches the rule too far. The continuing violation rule authorizes that, "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at, and the statute of limitations begins to run from, the date of the last injury or when the tortious overt acts or omissions cease." *Ali v. Raleigh Cnty.*, No. 5:17-CV-3386, 2018 WL 1582721, at *8 (S.D.W. Va. Mar. 29, 2018) (quoting *Smith v. Allred*, No. 2:15-CV-6026, 2016 WL 1274593, at *11 (S.D.W. Va. Mar. 31, 2016)). In *Ali*, the continuing violation rule tolled the statute of limitations for a § 1983 warrantless arrest claim at the favorable termination element, rather than at the arrest itself. *Id.* at *7-8.

-25-

Here, however, Plaintiff attempts to apply the continuing violation rule to multiple different causes of action. In essence, she argues that the defamation claim is tangled with the malicious prosecution claim such that they must toll the statute of limitations at the same time. But the two causes of action are distinct—the defamation claim, for example, does not require a favorable termination and could have been brought well before the instant action. It stretches the continuing violation rule too far to suggest it can span multiple causes of action, rather than multiple tortious acts or omissions contributing to one cause of action. Indeed, the rule as detailed in *Ali* implies a singular tort that involves continuing injury, not many torts arising out of the same incident.

Looking at defamation as a single cause of action, the injury alleged by Plaintiff is not "continuing." The Complaint only points to three distinct instances of defamation: two news stories, ECF No 4 at 14 n.1, and a press release listing Plaintiff as an individual indicted in November 2019, ECF No. 1-14. Absent a continuing violation, the statute of limitations begins to run when the right to bring an action accrues. *Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119, 125 (2007). All defamatory statements included in the Complaint occurred in November 2019, more than one year past the date of filing this suit.

Nor has Plaintiff pleaded facts sufficient to establish either libel or slander. She argues that the Putnam County Sheriff's Department is liable for these actions because it knowingly made false statements in a press release, Facebook posts, news conferences and written and recorded interviews to news outlets. ECF No. 4 ¶¶ 330, 335. While Plaintiff has not identified exactly which statements made by the Defendant are defamatory, she has cited to two news articles discussing the circumstances of B.G.'s status as a missing child, *id.* at 14 n.1, and attached a press release containing a list of individuals indicted by the grand jury in November 2019, ECF No. 1-14.

Under West Virginia law, defamation contains five elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 2, *Haught v. Fletcher*, 874 S.E.2d 27 (2022).

Plaintiff has not sufficiently alleged that any of these statements are false. The press release, for example, contains a list of more than forty individuals, including Plaintiff, who had been indicted by the Putnam County Grand Jury. It strains credibility to see this as a false or defamatory statement. Plaintiff, herself, premises this suit on the fact that she was maliciously prosecuted and, in her Complaint, notes that she was indicted in November of 2019. ECF No. 4 ¶ 182. Similarly, the news articles largely contain information Plaintiff has admitted in her pleadings—that there were charges pending against her as a result of the incident with B.G. To the extent they contain any information that was disputed or later disproven, the articles consistently couch it in qualifying language: for example, one article notes B.G. "was *believed* to have been concealed by her mother. *Missing 16-month-old girl found safe* (Nov. 30, 2017), WSAZ, https://www.wsaz.com/content/news/Deputies-searching-for-16-month-old-baby-girl-461074103.html) (emphasis added); ECF No. 4 at 14 n.1. The article does not directly allege Plaintiff concealed B.G., but rather that she was believed to have done so. This is not a distinction without a difference.

Ultimately, Plaintiff does not provide any facts that make her libel or slander claims plausible. Instead, she merely repeats that the statements are "false, malicious, and defamatory." *Id.* ¶ 330, 335. These are legal conclusions, insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79.

G.  Plaintiff has not pleaded sufficient facts to support her claims for Negligent Supervision (Count XII) and Negligent Retention (Count XIII) against Defendant City of Hurricane.

Plaintiff has not pleaded sufficient facts to support either a negligent supervision or a negligent retention claim against Defendant Putnam County Commission. Claims of negligent supervision and retention require a showing that "the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct." *Radford v. Hammons*, No. 2:14-24854, 2015 WL 738062, at *7 (S.D. W. Va. Feb. 20, 2015). As a "predicate prerequisite" the supervised employee's underlying conduct must also be negligent. *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 774 (W. Va. 2021) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)); *Carroll v. USAA Sav. Bank*, No. 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017) ("West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence."). At the motion to dismiss stage, it is not enough to claim that "discovery will show" negligent hiring and retention. *See Westfall v. Osborne*, No. 2:20-CV-118, 2020 WL 6276145, at *6 (S.D. W. Va. Oct. 26, 2020).

Plaintiff has failed to state a claim for negligent retention and hiring against Defendant Putnam County Commission, because she has failed to put forth any facts regarding behavior by the Defendants Sorsaia, Karr, Sunyog, Smith, and Craigo that would have appeared in a background investigation or put Defendant Putnam County Commission on notice as to these employees' inability to do their job. According to the facts laid out in the Complaint, there was no way for the Putnam County Commission to know of any alleged negligence by their employees or have any reason to take disciplinary action, provide additional training, or otherwise intervene in their employment. Additionally, as discussed in Section III.C, *supra*, Plaintiff has failed to set forth

-28-

any underlying conduct by Defendants that is negligent, meaning that she does not meet the predicate prerequisite for this claim. Plaintiff's claim for negligent hiring and retention, therefore, cannot survive the Putnam County Defendants' Motion to Dismiss.

H.  Plaintiff has not stated a claim for Loss/Impairment of Parental Consortium (Count XIV).

In the last count of the complaint, Plaintiff seeks to recover for loss of parental consortium, specifically her loss of custody and unsupervised visitation rights of B.G. West Virginia has recognized such a claim—in *Belcher v. Goins*, 400 S.E.2d 830 (W. Va. 1990), the court held that a tortfeasor who negligently injured, but did not kill, a minor child's parent was liable for loss of parental consortium. *Id.* at Syl. Pt. 3. Some time later, in *Lucas v. United Fabricating, Inc.*, No. 5:06-cv-154, 2007 U.S. Dist. LEXIS 64269 (N.D.W. Va. 2007), this cause of action was extended even where there was no physical injury to a parent. *Id.* at *7.

As Putnam County Defendants argue, however, Plaintiff has not pleaded any facts indicating that their conduct proximately caused an injury to her relationship with B.G. It was proceedings in the Magistrate and Family Courts that ultimately led to her loss of custody and unsupervised visitation rights, rather than Defendant Sorsaia, Karr, and Sunyog's decision to prosecute Plaintiff, Defendant Craigo's testimony during grand jury proceedings, or any other conduct by the Putnam County Commission or Defendant Smith. Moreover, Defendant Putnam County Prosecutors are entitled to prosecutorial immunity and Defendant Craigo is entitled to absolute witness immunity for conduct implicated in the Complaint. Plaintiff's claim for loss of parental consortium against Putnam County Defendants cannot withstand their Motion to Dismiss.

## IV. CONCLUSION

The Putnam County Defendants' Motion to Dismiss is thereby **GRANTED**. ECF No. 30. Defendants Sorsaia, Karr, and Sunyog are entitled to absolute immunity and Defendant Craigo is

entitled to witness immunity for Plaintiff's § 1983 claim under the Fourth Amendment (Count I) and common law malicious prosecution and abuse of process claims (Counts VII and VIII). As to Plaintiff's claims for negligence (Counts III, IV, and V), IIED (Count VI), libel (Count IX), slander (Count X), negligent supervision and retention (Counts XII and XIII), and loss/impairment of parental consortium (Count XIV), she has not pleaded facts sufficient to state a plausible claim. Finally, her substantive due process claim (Count II) fails as a matter of law.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      November 10, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE