## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

LESLIS MAY GREENE, individually
and on behalf of her minor child, B.G.,

                Plaintiff,

v.                                          CIVIL ACTION NO.  3:21-0520

THE PUTNAM COUNTY COMMISSION,
MARK A. SORSAIA, individually as a
member of the Putnam County Prosecutor's Office,
JENNIFER SCRAGG KARR, individually as a
member of the Putnam County Prosecutor's Office,
ELIZABETH SUNYOG, individually as a
member of the Putnam County Prosecutor's Office,
MARIAN SMITH, individually as a
member of the Putnam County Prosecutor's Office,
TONY CRAIGO, individually as a
member of the Putnam County Sheriff's Department,
JODI B. TYLER, individually as a
member of the Kanawha County Prosecutor's Office,
MORGAN M. SWITZER, individually as a
member of the Kanawha County Prosecutor's Office,
C. J EASTRIDGE, individually as a
member of the West Virginia State Police,
THE CITY OF HURRICANE,
JOSHUA LUCAS, individually as a
member of the City of Hurricane Police Department, and
JAMES MARK MCCOY a/k/a MARK MCCOY, individually,

                Defendants.

### MEMORANDUM OPINION AND ORDER

      Pending before the Court is Defendant Eastridge's Motion to Dismiss. ECF No. 15.

Defendant contends he is immune under qualified immunity and the Tort Claims Act, at least one

claim is time-barred, and that other claims fail as a matter of law. Mem. of Law in Supp. of Def.

C.J Eastridge's Mot. to Dismiss, ECF No. 16.  For the following reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**. ECF No. 15.

## II. FACTUAL BACKGROUND

The facts before the Court involve a complicated set of agencies and actors. The Complaint alleges a conspiracy where Defendant government agencies and employees worked together with Defendant Mark McCoy (McCoy), the father of Plaintiff's child, to frame Plaintiff for a number of misdemeanor and felony offenses and deprive Plaintiff of custody of her child, B.G.

Defendants[1] in this case include:

- Five prosecuting attorneys—three attorneys from Putnam County (Mark Sorsaia, Jennifer Scragg Karr, Elizabeth Sunyog) and two attorneys from Kanawha County (Jodi Tyler and Morgan Switzer)—sued in their individual capacities
- Marian Smith, a Victim Services Coordinator in the Putnam County Prosecuting Office
- The Putnam County Commission
- Tony Craigo, as a member of the Putnam County Sheriff's Department, in his individual capacity
- C.J. Eastridge, as a member of the West Virginia State Police, in his individual capacity
- The City of Hurricane
- Joshua Lucas, as a member of the City of Hurricane Police Department, in his individual capacity
- James Mark McCoy, in his individual capacity

Plaintiff brings the following claims against the Defendants:

| Count Number | Description | Defendants |
|---|---|---|
| I | Fourth Amendment Unreasonable Seizure Violations under 42 U.S.C. § 1983 (false arrest, unlawful search and seizure, false imprisonment, malicious prosecution/abuse of judicial process) | False arrest—Craigo, Lucas, Eastridge Unreasonable search and seizure—Eastridge False imprisonment—Individual Law Enforcement Defendants Malicious Prosecution/abuse of process—Individual Law Enforcement Defendants |

---

[1] Plaintiff groups Prosecutor Sorsaia, Prosecutor Karr, Prosecutor Sunyog, Deputy Craigo, Prosecutor Tyler, Prosecutor Switzer, Trooper Eastridge, and Officer Lucas and calls them "Individual Law Enforcement Defendants." This Court will also refer to them as such for consistency.

| II | Fourteenth Amendment Substantive Due Process Violation under 42 U.S.C. § 1983 | Individual Law Enforcement Defendants |
| III | Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IV | Gross Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| V | Prima Facie Negligence | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VI | Intentional Infliction of Emotional Distress | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VII | Malicious Prosecution | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| VIII | Abuse of Process | Individual Law Enforcement Defendants, Putnam County Commission and City of Hurricane (vicarious liability) |
| IX | Defamation of Character/Libel | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| X | Defamation of Character/Slander | Putnam County Sheriff's Department, Putnam County Commission (vicarious liability) |
| XI | Civil Conspiracy | Individual Law Enforcement Defendants, Defendant McCoy, Victim Services Coordinator Smith, Putnam County Commission and City of Hurricane (vicarious liability) |
| XII | Negligent Supervision | Putnam County Commission and City of Hurricane |
| XIII | Negligent Retention | Putnam County Commission and City of Hurricane |
| XIV | Loss/Impairment of Parental Consortium | All Defendants |

*See* Am. Compl., ECF No. 4. The Court has included the facts relevant to Defendant Eastridge below. For a summary of the overall sequence of events giving rise to these claims, see the Memorandum Opinion and Order on Defendants Tyler and Switzer's Motion to Dimiss. ECF No. 45 at 2-9.

Following a series of domestic disputes and proceedings regarding custody of B.G., Plaintiff claims that McCoy made false allegations of stalking against her to the West Virginia State Police (WVSP) on September 22, 2018. ECF No. 4 ¶ 117. On October 3, 2018, Defendant Eastridge obtained a search warrant for Plaintiff's cellular phone. ECF No. 1-10. Plaintiff contends that both Defendant Eastridge and McCoy made false and misleading statements to obtain the search warrant. *Id.* ¶ 121. Further, though the first page of the search warrant contains a magistrate's signature, ECF No. 1-10, Plaintiff refers to it as "unverified," ECF No. 4 ¶ 119. And though Defendant Eastridge signed the first and last pages of the warrant, Plaintiff also refers to it as "unsworn," lacking in an affidavit from either Defendant Eastridge or McCoy, and without probable cause. *Id.* ¶¶ 123-24. Plaintiff additionally alleges the warrant lacked probable cause because no return of execution was filed on it, as required by West Virginia Rule of Criminal Procedure 41(a) and (g). *Id.* ¶¶ 125-26.

Defendant Eastridge took possession of Plaintiff's phone pursuant to the warrant, though Plaintiff alleges no reasonable, well-trained officer would believe the warrant supplied sufficient legal authority to search, seize, and review data from it. *Id.* ¶¶ 125, 127, 166-67. Plaintiff claims the West Virginia State Police then searched the entire contents of the cell phone, including private information, personal e-mails, and communications protected by attorney-client privilege, some of which Defendant Eastridge knew or should have known was outside the scope of the search warrant. *Id.* ¶¶ 128-29, 169. Plaintiff also notes that the warrant does not mention intercepting electronic communications on its face, yet information law enforcement obtained because of the warrant was later used to prosecute Plaintiff for intercepting electronic communications. *Id.* ¶ 131.

On January 29, 2019, Defendant Eastridge arrested Plaintiff based on her alleged stalking of McCoy. *Id.* ¶ 139. During a preliminary hearing, Plaintiff claims that both Defendant Eastridge

and McCoy offered false and misleading testimony. *Id.* ¶¶ 143-44. In particular, she claims Defendant Eastridge 1) corroborated a story that had been fabricated by McCoy about Plaintiff following him, and 2) intimated that he knew the stalking charges against Plaintiff were baseless but "just wanted to see what was on" her phone. *Id.* ¶¶ 149-50. Following this hearing, Plaintiff was denied bond and remained incarcerated for forty-two days. *Id.* ¶ 140.

On March 7, 2019, a grand jury indicted Plaintiff for fifteen counts of felony stalking, felony interception of electronic communications, and other misdemeanor offenses (Indictment 2). *Id.* ¶ 154. Plaintiff alleges that Defendant Eastridge used information—including attorney-client privileged emails from her cell phone—to offer false and misleading testimony during this hearing, resulting in his story materially changing from that contained in the search warrant. *Id.* ¶¶ 158-60, 164. Specifically, she claims his testimony referenced a photograph of McCoy's brother's home that officers had found on her phone. *Id.* ¶ 161. Though he claimed Plaintiff took the photo, she alleges Defendant Eastridge cropped out portions of the photo that would establish Plaintiff had not taken it, such as the color of the vehicle it was taken from and the fingers of the individual who took it. *Id.* ¶ 162.

Plaintiff was indicted once again on November 14, 2019, this time for three felony counts of concealment of a minor child, stalking, and interception of electronic communications (Indictment 3). *Id.* ¶ 182. Plaintiff alleges that during this hearing, Defendant Eastridge once against used information from attorney-client privileged emails obtained from her phone, offered the same false and misleading testimony that he offered for the preliminary hearing, and testified as to fabricated evidence. *Id.* ¶¶ 195-99, 201. Plaintiff claims, as with Indictment 2, that Defendant Eastridge knew or should have known the information he presented to the grand jury was obtained illegally, without probable cause, and outside the scope of the warrant. *Id.* ¶¶ 204-06.

In support of his Motion to Dismiss, Defendant first argues that he is entitled to qualified immunity for each of the counts against him. ECF No. 16 at 6. He also argues that Plaintiff's challenges to the sufficiency of the warrant are time-barred. *Id.* at 11. In the alternative, he contends that she has not pleaded sufficient facts to state a claim under 42 U.S.C. § 1983 for malicious prosecution or due process or to state a claim for negligence, gross negligence, or prima facie negligence; intentional infliction of emotional distress; and civil conspiracy. *Id.* at 11-12, 13, 15, 19. Finally, as to malicious prosecution and loss/impairment of parental consortium, Defendant Eastridge argues these claims fail as a matter of law. *Id.* at 17, 21.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

When considering whether the plaintiff has stated a plausible claim, courts accept all factual allegations in the complaint as true. *Id.* Even so, plaintiffs must set forth the grounds for an entitlement to relief that is more than mere labels and conclusions. *Bell Atl. Corp.*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," *id.*, nor will a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.

A court must conduct a context-specific analysis to determine whether a complaint states a plausible claim, which includes drawing on judicial experience and common sense. *Id*. at 679. If the court's analysis shows that "the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct," the motion to dismiss should be granted. *Id*. However, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

A.  <u>As a threshold matter, the search warrant obtained by Defendant Eastridge was not unsworn, unverified, or lacking in probable cause.</u>

Though Plaintiff calls the search warrant obtained by Defendant Eastridge "unsworn" and "unverified," the Court finds no basis for these allegations. Plaintiff cites three cases—*State v. Lilly*, 461 S.E.2d 101 (W. Va. 1995); *State v. Thompson*, 358 S.E.2d 815 (W. Va. 1987); and *State v. Adkins*, 346 S.E.2d 762 (W. Va. 1986)—for the proposition that the search warrant was lacking an affidavit from either McCoy or Defendant Eastridge, making it unsworn and invalid as a matter of law. *Id.* ¶ 123 (referring to ECF No. 1-10). But neither these three cases nor any others support that proposition. While they caution against findings of probable cause based on information from a lone, unnamed informant of dubious reliability, the affidavit here was based on statements by McCoy as well as Defendant Eastridge's efforts to corroborate those statements.

For example, in *Lilly*, the warrant in question was invalid because it was premised solely on statements from an unidentified informant. 461 S.E.2d at 109. The finding of probable cause was not sufficiently supported because the affidavit did not contain any indication as to the informant's reliability, nor did the affiant officer include any independent information or proof as corroboration. *Id.* at 108. Similarly, in *Adkins* an affidavit did not establish probable cause because 1) it relied on information from a sole, undisclosed confidential informant, and 2) contained no information to supplement the informant's basis of knowledge or speak to his reliability. *Id.* at 774.

*Thompson* is in keeping with both *Lilly* and *Adkins*. There, a warrant was invalid where it was supported only by a false statement, even though it could have been justified by alleging corroborating facts at the time it was issued. *Thompson*, 358 S.E.2d at 815. The search warrant was unreliable in that it claimed it was supported by information from a "confidential and reliable informant who has been reliable in the past," even though the lone informant had no previous history of reliability.[2] *Id.* at 817. The informant was also the sole basis of the information in the affidavit—the officers had not corroborated any information at the time they presented it to the magistrate. *Id.*

This case is easily distinguished from *Lilly*, *Adkins*, and *Thompson*. In all three cases, the warrant in question was based on information from an unidentified informant whose reliability was either untested or unattested-to. Further, law enforcement officers had not corroborated the information contained in the warrants in any of the cases, meaning that magistrates had found probable cause based on a single, unreliable source.

Here, however, the warrant in question clearly identifies Defendant Eastridge and McCoy as the sources of information. It details Defendant Eastridge's knowledge of and experience with the issue and indicates it is corroborated by McCoy's statements, 911 records, and residential security footage. ECF No. 1-10. The magistrate, therefore, had sufficient information to make a finding of probable cause when issuing the search warrant. The Court pays great deference to this finding of probable cause. *State v. Dumire*, No. 19-1086, 2020 WL 7391153, at *4 (W. Va. Dec. 16, 2020) (quoting *State v. Thomas*, 421 S.E.2d 227, 235 (W. Va. 1992)).

---

[2] Later, *Lilly* clarified that affidavits containing misrepresentations are not wholesale insufficient to support a finding of probable cause. 461 S.E.2d at 107. Rather, a search warrant affidavit can still be valid so long as there is sufficient content to support a finding of probable cause after striking the misrepresentation. *Id.*

Plaintiff argues against this deference by claiming that Defendant Putnam County Prosecutors and the magistrate who signed the search warrant knew McCoy had committed fraud to obtain the EPO. ECF No. 4 ¶ 122. Even if this is taken as true, the magistrate had no reason to doubt the corroborative information offered by Defendant Eastridge. Moreover, Plaintiff never actually alleges the corroborative information is false—while she claims, vaguely, that the search warrant was based on false and misleading testimony from McCoy and Defendant Eastridge, she does not point to any particular falsity by Defendant Eastridge. Without an idea as to what was false in the affidavit, the Court has no means of determining the statement's materiality. Plaintiff has only offered bare-bones, legal conclusions here—conclusions that cannot overcome the Court's deference to the magistrate's findings

Plaintiff also contends that no return of the execution was filed as required by West Virginia Rule of Criminal Procedure 41(a) and (g), rendering it invalid and lacking in probable cause. ECF No. 4 ¶¶ 125-26. Rule 41(a) authorizes a magistrate in the county where the person or property are located to issue a search warrant upon the request of a law enforcement officer or attorney for the state.  Rule 41(g) requires the magistrate before whom the warrant was returned to attach the return and inventory to the warrant and then file it with the clerk of the magistrate court for the county in which the property was seized. This allegation is without merit. The Court does not see how failing to file a return of execution bears on either a search warrant's validity or the finding of probable cause, nor can it find any caselaw indicating as such.

Finally, while difficult to discern, Plaintiff claims the search warrant was invalid because it was allegedly "based entirely on hearsay statements" of McCoy and Defendant Eastridge. ECF No. 4 ¶ 122. However, "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part." W. Va. R. of Crim. Pro. 41(a). When a finding of probable cause is based on

hearsay, it is the role of magistrates to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lilly*, 461 S.E.2d at 108 n.10 (quoting *Gates*, 462 U.S. at 238). The warrant is not rendered invalid just because it was based in part on hearsay. Instead, as required, the magistrate was given an opportunity to make a practical and commonsense decision as to the veracity of the information. Again, the Court defers to this decision.

The Court concludes that, based on the information alleged in the Complaint, the warrant was not unsworn, unverified, or lacking in probable cause.

B. Defendant is not entitled to qualified immunity for the alleged fabrication of evidence.

Though he may be entitled to absolute witness immunity for his alleged manipulation of the photo of McCoy's brother's house, Defendant is not entitled to qualified immunity for this conduct. Government officials performing discretionary duties in their individual capacity are generally afforded qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances the need to hold public officials accountable for irresponsible conduct with the need to protect them from harassment and distraction when performing duties reasonably. *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (quoting *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015)).

However, qualified immunity does not extend to instances where a defendant has violated a constitutional right that was clearly established at the time of the challenged conduct. *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735

(2011)). Plaintiff alleges the following conduct by Defendant Eastridge violated her clearly established Fourth Amendment rights against unreasonable search and seizure:

- offering false testimony to secure the search warrant, taking possession of her cellphone despite knowing there was no probable cause to do so, and exceeding the scope of the search warrant sometime around October 3, 2018, ECF No. 4 ¶ 129;
- arresting her on false charges on January 29, 2019, *id.* ¶ 139;
- offering false and misleading testimony in a preliminary hearing on February 6, 2019, *id.* ¶ 142;
- offering false and misleading testimony on March 7, 2019 during the grand jury hearing that resulted in Indictment 2, *id.* ¶¶ 154, 158-60;
- testifying that a photograph of McCoy's brother's home was taken by Plaintiff, when it was actually sent to her unsolicited, *id.* ¶ 161;
- cropping the photo of McCoy's brother's house to remove any indication that it was not taken by Plaintiff, including removing the color of the car it was taken from and the fingers of the person taking the picture, *id.* ¶ 162; and
- offering false and misleading testimony, including information protected by attorney-client privilege, and testified as to fabricated evidence during grand jury proceedings for Indictment 3 on November 19, 2019, *id.* ¶¶ 182, 197-98.

### 1. *False statements in obtaining affidavit*

The Court begins its analysis with Plaintiff's contention that Defendant made false statements to secure the search warrant. To render Defendant Eastridge liable for these actions, Plaintiff must show that he "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Launi v. James*, No. 20-2010, 2021 WL 5294933, at *2 (4th Cir. Nov. 15, 2021) (quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)). Plaintiff must also establish that the false statement was material, or that after striking the false statements from the affidavit, there would not be enough information to support a finding of probable cause. *Id.*

Plaintiff has not pleaded sufficient facts to establish that Defendant Eastridge deliberately made false statements to obtain the warrant, omitted material facts to make his affidavit misleading, or that any false statement was material to the finding of probable cause. As discussed

in Section III.A., *supra*, Plaintiff does not point to any false statements by Defendant Eastridge in the warrant or affidavit, preventing the Court from ensuring such a statement was material to the finding of probable cause. Rather, Plaintiff has simply advanced legal conclusions, insufficient to state a plausible claim for violation of Fourth Amendment rights. Absent facts indicating that Defendant Eastridge maliciously or intentionally submitted a fraudulent affidavit, the Court defers to the magistrate's initial finding.

### 2. Scope of search warrant

As to the allegation that Defendant exceeded the scope of the search warrant, the facts as pleaded do not support this allegation. Courts should not assess search warrants in a hypertechnical manner. *United States v. Srivastava*, 540 F.3d 277, 289 (4th Cir. 2008) (citing *United States v. Ventresca,* 380 U.S. 102, 108 (1965)). Rather, "[p]lain reading and common sense are the landmarks for the execution and interpretation of the language of a search warrant." *Id.* at 290 (quoting *United States v. Gorman,* 104 F.3d 272, 275 (9th Cir. 1996)).

Plaintiff argues that even though information seized from her cell phone was later used to prosecute her for felony interception of electronic communications, the search warrant "makes no mention" of this offense. ECF No. 4 ¶ 131. She additionally alleges her conviction for felony interception "center[ed] exclusively on e-mails of Defendant McCoy that Plaintiff viewed using an old device of [McCoy's] left in Plaintiff's possession," presumably the emails between McCoy and Defendant Smith that Plaintiff recovered. ECF No. 20 at 3 n.1. Puzzlingly though, she goes on to claim that the felony interception charge "has nothing to do with . . . Defendants' on-going conspiracy to deprive Plaintiff of her parental relationship [with] G.B." *Id.*

The search warrant authorizes search and seizure of Plaintiff's phone for "photos or videos documenting the systematic following of Mark McCoy." ECF No. 1-10 at 1.  Plain reading and

common sense indicate that Plaintiff's possession of private emails between McCoy and Defendant Smith indicate the systematic following of Defendant McCoy. Even if the Court were to read the search warrant in a hypertechnical manner, seizing and searching this information would still pass muster. Therefore, Plaintiff has not pleaded facts sufficient to state that Defendant Eastridge or any other officer exceeded the scope of the search warrant such that it violated her Fourth Amendment rights.

### 3. Fabrication of evidence

Plaintiff also alleges that Defendant Eastridge violated her clearly established constitutional rights by fabricating evidence. The Court concludes that Defendant Eastridge is not entitled to qualified immunity for this conduct. However, for the reasons set out below, the Court directs the parties to provide further briefing on whether the alleged fabrication of evidence would be protected by absolute witness immunity.

Defendant Eastridge is not entitled to qualified immunity for the alleged fabrication of evidence. The Fourth Circuit has recognized a constitutional right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity." *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) (quoting *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005)). Because the alleged fabrication of evidence violated a statutory or constitutional right that was clearly established at the time of allegedly oppressive conduct, Defendant Eastridge is not entitled to qualified immunity for this conduct.

However, Defendant may be entitled to absolute witness immunity for this conduct. Puzzlingly though, he has not raised this defense. As another defendant in this matter, Defendant Craigo, successfully pointed out, "a grand jury witness has absolute immunity from any § 1983 claim based on the witness's testimony." Defs. Putnam Cnty. Comm. et al. Mem. of Law in Supp.

of their Mot. to Dismiss, ECF No. 29 at 18-20 (quoting *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012)) (emphasis omitted). Absolute witness immunity applies even where, as here, the plaintiff alleges a defendant has presented or conspired to present false evidence, and even extends to preparatory activities taken in advance of testifying. *Everette-Oates v. Chapman*, No. 20-1093, 2021 U.S. App. LEXIS 21770, at *13 (4th Cir. July 22, 2021). However, the Court declines to conclude Defendant is entitled to witness immunity sans briefing by the parties. To save both parties the time and expense of engaging in any potentially unnecessary discovery, the Court directs Defendant Eastridge and Plaintiff to provide further briefing on this matter.

C. Neither Plaintiff's standalone claim of Civil Conspiracy (Count XI) nor her theory of liability of conspiracy can survive the Motion to Dismiss.

Next, because it potentially implicates Defendant Eastridge in all counts of Plaintiff's Complaint, the Court addresses Plaintiff's conspiracy theory of liability and standalone claim for Civil Conspiracy (Count XI). Plaintiff argues that Defendant Eastridge conspired with other defendants in this case to, *inter alia*, maliciously prosecute her, wrongfully detain and incarcerate her, and deprive her of parental rights to her child. Pl.'s Mem. of Law in Opp. to Def. C.F. Eastridge's Mot. to Dismiss, ECF No 20 at 1. Citing *Ballock v. Costlow*, No. 1-17-CV-52, 2017 WL 9620421 (N.D.W. Va. Dec. 6, 2017), she argues that Defendant is liable for each act undertaken as part of the conspiracy, so long as that act was committed to further the conspiracy's overall goal. *Id.* at *3.

There is one obstacle to this theory—Plaintiff has not pleaded facts sufficient to render the conspiracy facially plausible. West Virginia law indicates that civil conspiracy is not a standalone cause of action. Rather, it is a "legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves" but who shared a common plan with the

perpetrators to commit it. *Porter v. Brakem Am., Inc.*, No. 3:19-cv-0572, 2021 WL 664850, at *5 (S.D.W. Va. Feb. 19, 2021), *aff'd*, No. 21-1265, 2021 WL 5076362 (4th Cir. Nov. 2, 2021). To establish a theory of liability based on conspiracy, a plaintiff must show that a combination of two or more persons acted in concert "to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009).

Civil conspiracy under 42 U.S.C. § 1983 is a standalone claim. To establish it, a plaintiff must present evidence that 1) the defendants acted jointly in concert, 2) an overt act was done in furtherance of the conspiracy, and 3) the overt act resulted in deprivation of a plaintiff's constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

For a conspiracy claim to survive a motion to dismiss, Plaintiffs must plead specific facts in a nonconclusory fashion, *Gooden v. Howard Cnty.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (internal citations omitted), and the evidence must "at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 422. "Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 2003).

Here, Plaintiff has failed to provide sufficient factual matter to support either a theory of liability involving conspiracy under West Virginia law or civil conspiracy as a standalone claim under § 1983. Regarding Defendant Eastridge, the Complaint contains solely conclusory references to conspiracy: charging all Defendants with "a systematic and concerted pattern of law enforcement, prosecutorial, and judicial misconduct" and noting that McCoy acted in concert with Defendants Sorsaia, Karr, and Eastridge "(and possibly others)." ECF No. 4 ¶¶ 233, 339. Coming closer, but still falling short, Plaintiff alleges a "meeting of the minds" of all defendants to

maliciously prosecute her, defame her, and abuse judicial process to her detriment, *id.* ¶ 341, and that McCoy made false allegations of stalking "in concert with" Defendants Sorsaia, Karr, and Eastridge to get a search warrant for her cell phone, *id.* ¶ 118. These allegations, while they recite the elements of a conspiracy claim, ring hollow. Ultimately, even taking all the facts pleaded as true, the Court can find no basis to infer that Defendant was acting in concert with other defendants, much less that they were working towards an unlawful plan or using unlawful means to accomplish an otherwise lawful plan.

Neither the standalone claim for conspiracy nor the theory of liability based on conspiracy can survive Defendant Eastridge's Motion to Dismiss. The Court, therefore, need only address counts that directly implicate Defendant Eastridge's conduct. Further, as to Count XI, Defendant's Motion to Dismiss is **GRANTED**.

D.  The probable cause element for Plaintiff's § 1983 malicious prosecution claim has not been
     met, nor has she established Defendant is the but-for or proximate cause of the prosecution.

The Court frames Plaintiff's malicious prosecution claim under 42 U.S.C. § 1983 as a Fourth Amendment claim for unreasonable seizure. *Evans v. Chambers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). To state a malicious prosecution claim, Plaintiff must allege "the defendant (1) caused (2) a seizure pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). For the reasons set forth in Section III.A., *supra*, Plaintiff cannot state a claim for malicious prosecution because there was probable cause to seize Plaintiff.[3]  Further, while the claim is not time-barred, Plaintiff has not established that Defendant is the proximate or but-for cause of the seizure.

---

[3] Defendant also argues, without citing any caselaw, that this claim must fail because

*1. Causation*

The alleged facts, when taken as true, do not establish that Defendant caused the allegedly unreasonable seizure. "[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Chalmers*, 703 F.3d at 647 (citing *Murray v. Earle,* 405 F.3d 278, 289–90 (5th Cir. 2005)). Acts by independent decision-makers, such as prosecutors or grand juries, may break the causal chain between a defendant-officer's alleged misconduct and the unlawful seizure. *Id.* (citing *Zahrey v. Coffey,* 221 F.3d 342, 351 (2d Cir. 2000)). "[I]n the absence of evidence that [the officer] misled or pressured the prosecution," the intervening acts of an independent decision-maker insulate a police officer from liability. *Id.* (quoting *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007)).

Here, Plaintiff has not alleged any facts that indicate Defendant Eastridge misled or pressured prosecutors. Rather, she has pleaded the opposite—that prosecutors knew of the allegedly fabricated evidence. ECF No. 4 ¶¶ 166, 202 ("[Prosecutors] knew that Trooper Estridge [sic] fabricated evidence and offered false testimony to the Grand Jury based on said evidence, but allowed him to do so anyway."). Because prosecutors were not misled as to the allegedly fabricated evidence and testimony relating to such, their actions constitute superseding intervening causes. Plaintiff, therefore, has failed to establish a causal chain between Defendant's alleged misconduct and her prosecution.

*2. Favorable termination*

Though Plaintiff has not pleaded sufficient facts to establish the § 1983 malicious prosecution claim, the Court addresses Defendant's contention that the favorable termination

---

Plaintiff has not identified "a federal officer who could be held liable for a Fourth Amendment violation." ECF No. 16 at 6. This is incorrect. The plain text of § 1983 clearly creates a cause of action for "every person" acting under color of state law.

element has not been met, and in the alternative, that the claim is time-barred. First, he argues that the favorable termination element of malicious prosecution has not been met because dismissal of Plaintiff's charges rested on a procedural defect. He cites *Denmark v. Starcher*, No. 1:14-CV-58, 2016 WL 1122085 (N.D.W. Va. March 22, 2016) for the proposition that "only terminations that indicate that the accused is innocent ought to be considered favorable." ECF No. 43 at 6 (quoting *Denmark*, 2016 WL 1122085 at *7). However, "a plaintiff need only show that [her] prosecution ended without a conviction" to fulfill the favorable termination element of a § 1983 malicious prosecution claim. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Plaintiff was only convicted of the Indictment 3 felony interception of electronic communications charge, meaning the favorable termination element has been met in all other charges.

### 3. Statute of limitations

Nor is the claim time-barred. "[A]ll claims filed in West Virginia pursuant to 42 U.S.C. § 1983 are personal injury actions governed by the two-year statute of limitations set forth in W. Va. Code § 55-2-12(b)." *Rodgers v. Corp. of Harpers Ferry*, S.E.2d 358, 362 (W. Va. 1988). A Fourth Amendment claim under § 1983 based on malicious prosecution accrues when the "favorable termination" element has been met. *Lambert*, 223 F.3d at 262 n.3 (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)).

Plaintiff's claims as to the Indictment 3 felony child concealment and felony stalking charges are still viable. Defendant Eastridge's conduct is only implicated in Indictment 2 and Indictment 3. Indictment 2 was dismissed on August 21, 2019,[4] and Plaintiff filed the instant

---

[4] There is conflicting information as to when this Indictment was dismissed. Plaintiff claims it was sometime after September 21, 2019. ECF No. 4 ¶¶ 181-82. Defendants, however, contend it was dismissed on August 21, 2019. ECF No. 30-2. Because Defendant has attached a dismissal order indicating the dismissal actually occurred on August 21, 2019, the Court bases its analysis on that date.

Complaint on September 10, 2021, just a few weeks before the two-year statute of limitations ran out. As to Indictment 3, the felony child concealment and stalking charges were dismissed on July 1 and June 28, 2021, respectively, and were therefore brought within the statute of limitations.

Though the § 1983 malicious prosecution claim is not time-barred, this claim fails because the probable cause element has not been met. The Court **GRANTS** Defendant's Motion to Dismiss as to Count I.

E. Plaintiff's Fourteenth Amendment substantive due process claim fails as a matter of law.

Though Defendant argues he is entitled to qualified immunity from Plaintiff's substantive due process claim, ECF No. 16 at 13, the doctrine does not protect him from liability for the alleged fabrication of evidence. Section III.B., *supra*. However, the substantive due process claim fails because the constitutional right Plaintiff alleges was violated implicates a Fourth Amendment claim, rather than one under the Fourteenth Amendment. "Where a particular Amendment provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (internal quotations omitted); *see also Evans v. Swisher*, No. 1:15-CV-54, 2016 WL 4275748, at *4 (N.D.W. Va. Aug. 12, 2016) ("Because the Fourth Amendment—and not the Fourteenth Amendment—is the clearly established federal right to be evaluated under § 1983 in the case at hand, [Plaintiff] has not stated a claim upon which relief can be granted."). As the Fourth Circuit instructs in *Lambert*, the Fourth Amendment provides the appropriate foundation for a § 1983 claim for malicious prosecution, rather than the more generalized claim for a violation of substantive due process. 223 F.3d at 261-62; Section III.D., *supra*. The Court therefore **GRANTS** the Defendant's Motion to Dismiss as to Count II.

F. Plaintiff has not pleaded sufficient facts to establish that Defendant Eastridge is liable for negligence, gross negligence, or prima facie negligence (Counts III, IV, and V).

Plaintiff also alleges that Defendant is liable for negligence, gross negligence, and prima facie negligence under the Crime Victims' Rights Act. Defendant responds that he is entitled to qualified immunity and in the alternative, that Plaintiff has only proved intentional conduct. Historically, West Virginia has followed federal law in matters concerning immunity. *Weigle v. Pifer*, 139 F. Supp. 3d 760, 775 (S.D.W. Va. 2015) (quoting *Saint Albans v. Botkins*, 719 S.E.2d 863 (W. Va. 2011)). Because of this, the analysis carried out in Section III.B., *supra*, regarding Defendant's qualified immunity under § 1983 claims applies to his contention of immunity against state law claims.

Though Defendant Eastridge is not entitled to immunity for his alleged fabrication of evidence, he is not liable for negligence because his actions were intentional in nature. The Fourth Circuit has held that intentional acts cannot form the basis of a negligence claim. *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013). Courts look to the subjective intent of the tortfeasor to distinguish between negligent and intentional conduct. *Weigle*, 139 F. Supp. 3d at 780. Intentional torts involve an actor who intends the consequences of an act, rather than simply intending the act itself. *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).

Based on the facts laid out in the Complaint, Plaintiff has only alleged acts the consequences of which Defendant Eastridge would have intended. Plaintiff, for instance, alleges a conspiracy amongst all defendants, in which they "acted in concert to defame, maliciously prosecute, and abuse judicial process to the detriment of Plaintiff." ECF No. 4 ¶ 339. Conspiracy would require Defendant Eastridge to work towards a common goal with another individual, meaning he would intend both his actions and their consequences. Similarly, Plaintiff's allegations,

when taken as true, establish that Defendant Eastridge could not have acted without the requisite level of intent—he could not mistakenly fabricate evidence and offer false testimony as to that evidence without intending the consequences of both actions. Ultimately, while his conduct may give rise to an intentional tort, it cannot support liability based on negligence.

Thus, based on the facts set forth in the Complaint, Defendant Eastridge would have intended both his allegedly unlawful conduct as well as the consequences of that conduct. The Court therefore **GRANTS** Defendant's Motion to Dismiss as to Counts III, IV, and V.

G.  Plaintiff has not pleaded sufficient facts to establish but-for and proximate causation of her claim for Intentional Infliction of Emotional Distress (Count VI).

Plaintiff has not stated a viable claim for intentional infliction of emotional distress (IIED) against Defendant Eastridge because the Complaint does not indicate he is the proximate or but-for cause of her distress. An IIED claim comprises four elements:

> (1) that the defendant's conduct was so atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendants caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Loudin v. Nat'l Liab. & Fire Ins.*, 716 S.E.2d 696, 705 (W. Va. 2011). It only covers conduct "so outrageous in character, so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Keyes v. Keyes*, 193 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703-04 n.2 (W. Va. 1982)).

Defendant argues that Plaintiff has failed to plead facts indicating that he intentionally caused emotional distress. ECF No. 16 at 16-17. This assertion, however, ignores Plaintiff's

allegations that Defendant Eastridge fabricated evidence. In the Court's view, fabricating evidence signals intent sufficient "to state a claim to relief [for IIED] that is plausible on its face." *Twombly*, 550 U.S. at 570. Further, the Complaint sufficiently alleges injury that would cause severe distress. Plaintiff alleges that Defendant Eastridge's fabrication of evidence led to fifty-one days of imprisonment, two-hundred and sixteen days of house arrest, and loss of custodial rights to B.G. ECF No. 4 ¶¶ 232, 267. It is therefore plausible that Plaintiff suffered emotional distress so severe that no reasonable person could be expected to bear it.

However, as laid out in Section III.D., *supra*, Plaintiff has not established that Defendant Eastridge's misconduct is the but-for or proximate cause of her emotional distress. Absent facts indicating that Defendant lied to or misled the other independent decision-makers, her incarceration, arrest, and loss of custodial rights cannot be attributed to Defendant Eastridge. Rather, the actions of independent decision-makers in the judicial process would have constituted intervening and superseding causes, such that it would break the causal chain between Defendant's alleged misconduct and any distress suffered by Plaintiff.

Even taking these allegations as true and viewing them in the light most favorable to Plaintiff, Plaintiff has not stated a plausible claim for IIED. The Court **GRANTS** Defendant's Motion to Dismiss as to Count VI.

- Though the common law malicious prosecution claim (Count VII) fails because there was probable cause for the prosecution, Plaintiff has stated a viable claim for common law abuse of process (Count VIII).

While she has stated a viable claim for common law abuse of process (Count VIII), Plaintiff's common law malicious prosecution claim fails because there was probable cause for the prosecution. To establish a claim for malicious prosecution, West Virginia law requires a plaintiff

to show "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." Syl. Pt. 1, *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363 (W. Va. 2019). This claim cannot survive the motion to dismiss—for the reasons set forth in Sections III.A. and III.D., *supra*, the prosecution was supported by probable cause.

Like malicious prosecution, common law abuse of process is governed by a one-year statute of limitations. *See* Syl. Pt. 3, *Preiser v. MacQueen*, 352 S.E.2d 22 (W. Va. 1985) ("An action for abuse of process must be brought within one year from the time the right to bring the action accrued). Abuse of process requires establishing the defendant had an ulterior purpose and committed a willful act in the use of process not proper in the regular conduct of the proceeding. *Id.* at 28. The statute of limitations begins to run with the termination of "the acts constituting the abuse complained of" rather than the completion of the action the process issued. *Id.* at 29; *Saunders v. Raleigh Cnty.*, No. 5:20-CV-00221, 2020 WL 9348328, at *27 (S.D.W. Va. May 18, 2020).

There is conflicting precedent regarding when the statute of limitations for common law abuse of process begins to accrue. In *Saunders*, an abuse of process claim began to accrue as soon as a plaintiff was arrested by the defendant. 2020 WL 9348328, at *27. There, the plaintiff became aware of the alleged misconduct once his charges were filed, as he began to challenge them at that point. *Id.* However, in *Ali v. Raleigh County*, No. 5:17-CV-03386, 2018 WL 4101517 (S.D.W. Va. Aug. 28, 2018), an abuse of process claim did not accrue until the plaintiff was acquitted, because the plaintiff had alleged abuse of process not only when he was wrongfully arrested but also when government agents allegedly conspired to coordinate their testimonies and failed to disclose exculpatory evidence. *Id.* at *12. Though one case relies on acquittal for the claim to accrue and

the other does not, the two cases set forth a common rule: the statute of limitations for abuse of process begins to accrue when a plaintiff becomes aware of the allegedly abusive conduct.

Based on the Complaint, the Court cannot determine whether the alleged abuse of process occurred more than one year before the suit was filed. There is no dispute that Plaintiff filed her Complaint almost two years after Defendant Eastridge's last allegedly unlawful conduct—the false and misleading testimony as to the fabricated evidence offered to the grand jury on November 19, 2019. *See* Section III.B., *supra* at 11 (listing allegedly unlawful conduct by Defendant Eastridge). However, it is not clear when Plaintiff became aware of the allegedly fabricated evidence. It is possible she did not learn of it until around the time of the trial on Indictment 3, which began on June 28, 2021. Therefore, at this point in the proceedings, the Court cannot determine whether the action is time-barred.

Plaintiff's common law malicious prosecution claim fails because there was probable cause for the prosecution. However, while the Complaint states a valid claim for common law abuse of process based on Defendant's fabrication of evidence, Defendant may be entitled to absolute witness immunity for this conduct. *See* Section III.B.3., *supra* at 13-14. The Court thereby **GRANTS** Defendant's Motion to Dismiss as to Count VII and **DENIES** it as to Count VIII, with the caveat that the parties must provide further briefing as to whether absolute witness immunity protects Defendant Eastridge from Count VIII.

### H.  Plaintiff has not stated a claim for Loss/Impairment of Parental Consortium (Count XIV).

In the last count of the complaint, Plaintiff seeks to recover for loss of parental consortium, specifically her loss of custody and unsupervised visitation rights of B.G. West Virginia has recognized such a claim—in *Belcher v. Goins*, 400 S.E.2d 830 (W. Va. 1990), the court held that a tortfeasor who negligently injured, but did not kill, a minor child's parent was liable for loss of

-24-

parental consortium. *Id.* at Syl. Pt. 3. Some time later, in *Lucas v. United Fabricating, Inc.*, No. 5:06-cv-154, 2007 U.S. Dist. LEXIS 64269 (N.D.W. Va. 2007), this cause of action was extended even where there was no physical injury to a parent. *Id.* at *7.

Plaintiff has failed to plead any facts that establish Defendant Eastridge's conduct proximately caused an injury to her relationship with B.G. As indicated in Sections III.D. and III.G, *supra*, Defendant did not cause the loss of parental consortium. Rather, proceedings in the Magistrate and Family Courts led to her loss of custody and unsupervised visitation rights, not Defendant Eastridge's alleged fabrication of evidence. Therefore, Plaintiff's claim for loss of parental consortium against Defendant Eastridge fails, and the Court **GRANTS** his Motion to Dismiss as to Count XIV.

## CONCLUSION

Defendant Eastridge's Motion to Dismiss is thereby **GRANTED IN PART AND DENIED IN PART**. ECF No. 15. The Court dismisses all counts of the Complaint except for Count VIII.

Starting with the unsuccessful counts, Counts I and VII cannot survive the Motion to Dismiss because the probable cause element of malicious prosecution has not been met, and Count II fails as a matter of law. Nor has Plaintiff pleaded facts sufficient to establish negligence, gross negligence, or prima facie negligence (Counts III, IV, and V). Finally, Plaintiff has not pleaded sufficient causation to state a claim for IIED (Count VI) or loss/impairment of parental consortium (Count XIV).

Continuing to the count that survives, Plaintiff has stated a viable claim for common law abuse of process (Count VIII) However, the Court **DIRECTS** Defendant Eastridge to provide further briefing on whether he is entitled to absolute witness immunity as to his alleged fabrication

of evidence. Defendant should provide arguments regarding absolute witness immunity **on or before November 23, 2022,** and the Plaintiff should file a Response **on or before December 2, 2022.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          November 10, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE